Case 2:06-cv-02737-CAS-FMO   Document 35   Filed 10/30/06   Page 1 of 11   Send

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Case No. CV 06-2737 CAS (FMOx) | Date October 30, 2006 |
| Title IN RE YAHOO! LITIGATION | |

Present: The Honorable   **CHRISTINA A. SNYDER**

| CATHERINE JEANG | LAURA ELIAS | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Michael Eyerly                                           Dennis Wilson
                                                                    Emil Herich

**Proceedings:** **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** (filed August 25, 2006)

## I. INTRODUCTION

Plaintiffs allege that defendant Yahoo!, Inc. ("Yahoo!") is in the business of "operating a number of web sites and showing ads on those web sites, as well as providing ads to be shown by its various partners." Amended Complaint ¶ 16. Plaintiffs allege that defendant Overture Services, Inc. ("Overture") is a wholly-owned subsidiary of Yahoo!. Id. ¶ 12. Plaintiffs are businesses who "placed ads with Defendants and paid Defendants for the placement of those ads." Id. ¶¶ 7-10.

Plaintiffs filed the instant action against defendants, on behalf of themselves and all others similarly situated, on May 4, 2006, alleging claims for (1) breach of contract, (2) civil conspiracy, and (3) violations of Cal. Bus. & Prof. Code § 17200, et seq.[1] Plaintiffs filed a consolidated amended class action complaint on July 13, 2006. On August 25, 2006, defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted. Plaintiffs filed their opposition on September 25, 2006. Defendants filed a reply on October 16, 2006. On October 23, 2006, plaintiffs requested leave to file a surreply, which the Court granted. Defendants' motion is presently before the Court.

## II. BACKGROUND

The present case arises out of a contract between plaintiffs and defendants whereby defendants agreed to provide "pay-per-click" advertising to plaintiffs. Plaintiffs allege that defendants "place advertisements on web sites that Internet users can click on in order to be taken to the advertiser's web site. Defendants' advertising customers…pay fees to Defendants for this ad placement service." Amended Complaint ¶ 2.

---

[1] While plaintiffs do not set out unjust enrichment as a separate claim, plaintiffs assert in paragraph 6 of the complaint that they allege a claim for unjust enrichment as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 06-2737 CAS (FMOx) | Date | October 30, 2006 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

Plaintiffs contend that defendants represented that advertisements would be "highly targeted" and would appear in "'high quality' substantive sites." Id. ¶ 4. Plaintiffs allege that defendants "represent to their advertising customers that their ads are only shown to users who have shown interest in corresponding products or services (e.g., by conducting a related search)." Id. ¶ 20. According to plaintiffs, defendants offer a choice between "Sponsored Search" advertising, which is designed "to reach 'search users' who are actively engaged in searching the web," and "Content Match" advertising, which shows ads "along with relevant articles, product reviews, and more." Id. ¶ 21. Plaintiffs allege that the cost for "Sponsored Search" is higher than for "Content Match," which reflects "that ads are more valuable when shown to users who are actively engaged in searching." Id.

Plaintiffs allege that defendants "charged their advertising customers for advertising even though Defendants knew that a substantial percentage of revenue resulted from advertisements that were shown in ways that contravene Defendants' contracts with their advertising customers," such as in "pernicious spyware programs," typosquatting sites, "parking and bulk registration sites," and shown randomly rather than in a "highly targeted" manner. Id. ¶¶ 3-4, 60. Plaintiffs assert that "even when Class members choose to purchase Sponsored Search advertising, Defendants nevertheless place Class Members' ads into contexts that are more properly described as Content Match because these contexts do not reach users that are engaged in web searches." Id. ¶ 44.

### III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A court must not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996).

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   CV 06-2737 CAS (FMOx)                                    Date   October 30, 2006

Title   IN RE YAHOO! LITIGATION

Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

Defendants argue that (1) plaintiffs' claim for breach of contract must fail because defendants' alleged promises do not appear in the integrated written agreement between the parties, and such terms cannot be enforced under the implied covenant of good faith and fair dealing; (2) plaintiffs cannot maintain a claim for unjust enrichment because they are relying upon the written contract between the parties; (3) plaintiffs' claim for civil conspiracy alleges no underlying tort claims; and (4) plaintiffs' claim for unfair competition fails because they have not pled sufficient underlying claims or injury in fact, and defendants' alleged promises are "mere puffery."

### A. Breach of Contract

Defendants argue that plaintiffs' claim for breach of contract should be dismissed because the alleged promises that the advertisements would be "highly targeted" and shown in "high quality" sites do not appear in the integrated written agreement between the parties. Mot. at 4. Defendants also contend that the contract itself contradicts plaintiffs' claims because the contract makes clear that plaintiffs' advertisements "will be distributed throughout the Yahoo! Search Marketing Distribution Network," and that defendants' services are taken "as is." Id. at 10. Finally, defendants argue that plaintiffs cannot use the implied covenant of good faith and fair dealing to contradict the express terms of the contract. Id.

Plaintiffs respond that the "Advertiser Master Services Terms and Conditions," ("Master T&C") which defendants submit,[2] does not reflect the entire agreement between the parties. Plaintiffs contend

---

[2]The Court may properly consider documents whose contents are alleged in the complaint when their authenticity is not questioned. Marshall v. Standard Ins. Co., 214 F. Supp. 2d 1062 (C.D. Cal. 2000). Plaintiffs do not dispute the authenticity of the Agreement submitted by defendants, and the complaint apparently refers to the Agreement. "[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." Steckman v. Hart

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 06-2737 CAS (FMOx) | Date | October 30, 2006 |
| Title | IN RE YAHOO! LITIGATION | | |

that the integration clause is self-limiting because it states that the agreement constitutes the entire agreement between the parties "regarding the subject matter contained herein" only. Opp'n at 10. Plaintiffs argue that the Master T&C lacks any reference to the services to be rendered by defendants, and as such cannot constitute the entire agreement. In their surreply, plaintiffs contend that the terms "Sponsored Search" and "Content Match" are not defined in the agreement, and thus extrinsic evidence is admissible to define these terms. Surreply at 2. Plaintiffs also argue that their reference to the implied covenant of good faith and fair dealing is not improper because defendants were invested with discretionary power affecting the rights of the other party, and as such defendants should exercise that discretion in good faith. Id. at 14. The Court considers the parties' arguments regarding breach of contract and breach of the implied covenant of good faith and fair dealing separately.

### 1. Breach of the Express Contract Provisions

"The parol evidence rule generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." Alling v. Universal Manufacturing Corp., 5 Cal. App. 4th 1412, 1433 (1992). In California, the rule is embodied in Code of Civil Procedure § 1856(a), which provides that "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Section 1856(d) provides that "[t]he court shall determine whether the writing is intended by the parties as a final expression of their agreement with respect to such terms as are included therein and whether the writing is intended also as a complete and exclusive statement of the terms of the agreement."

The Master T&C, which plaintiffs concede governs their arrangement in part, provides that the Master T&C, "the terms and conditions of the Programs in which you enroll (the 'Program Terms')," and "any Insertion Order that you or one of your Affiliates complete" is known collectively as "the Agreement." Decl. of James Weiss, Ex. 1 (the "Agreement") at 1. The Master T&C also provides that "[t]he Agreement constitutes the entire agreement and understanding between the parties regarding the subject matter contained herein and supercedes all previous and contemporaneous agreements, proposals and communications in all forms of media (including all instructions, advertisements, messages and policies), written and oral, between you and Overture regarding the subject matter contained herein." Id. at 5. It appears from the Master T&C that the Master T&C, Program Terms, and any Insertion Orders constitute the entirety of the Agreement. As such, the Agreement is fully integrated, and cannot be contradicted by extrinsic evidence such as defendants' alleged advertisements or other representations.

The Court next turns to plaintiffs' argument that the Agreement does not fully specify defendants' obligations, and that other evidence of defendants' obligations is therefore admissible. Paragraph 4 of the Master T&C provides that clients "are authorized to access and use the Yahoo! Search Marketing Programs and Yahoo! Search Marketing Web Sites and the content therein and data

---

Brewing, Inc., 143 F.3d 1293 (9th Cir. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 06-2737 CAS (FMOx) | Date | October 30, 2006 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

obtained therefrom solely for internal use to manage [their] Yahoo! Search Marketing account." The Agreement at 5. This paragraph also states that the clients "understand that [their] listings may be distributed through the Yahoo! Search Marketing Distribution Network based upon certain user targeting initiatives." Id.

The Agreement goes on to state that "THE FOLLOWING TERMS AND CONDITIONS APPLY TO YOUR USE OF SPONSORED SEARCH AND CONTENT MATCH (COLLECTIVELY, 'SPONSORED LISTINGS')." Id. at 7 (emphasis in original). Paragraph 1 of the "Sponsored Listings Program Terms and Conditions" ("Sponsored Listings T&C") provides that "Overture provides you access to the Sponsored Listings Marketplace…as available through the Sponsored Listings Marketplace Distribution Network." Paragraph 1 goes on to state that

> [f]or purposes of these Program Terms, the "Sponsored Listings Marketplace" is the forum where you manage your Sponsored Search and Content Match listings that are displayed in the Sponsored Listings Marketplace Results in connection with Selected Keywords….The Sponsored Listings Marketplace Results are made available in connection with the Sponsored Listings Marketplace Distribution Network, which is defined as the Yahoo! Search Marketing Web Sites and various third parties who may be authorized by Overture to make the Sponsored Listings Marketplace Results available as a link from, an add-on service to, or otherwise in connection with Third Party Products (defined as third party Web sites, content, applications and/or e-mails)….You agree that your listings, including your domain name, may be included in the Sponsored Listings Marketplace Results and made available in connection with the Sponsored Listings Marketplace Distribution Network including Third Party Products.

Id. at 7 (emphasis omitted). Paragraph 4, entitled "USE OF OVERTURE SUBMISSIONS" (emphasis in original), states that

> Overture does not guarantee that your listings will be placed in or available through the Sponsored Listings Marketplace Distribution Network, the Sponsored Listings Marketplace or the Sponsored Listings Marketplace Results, nor does Overture guarantee that your listings will appear in a particular position or rank, and Overture reserves the right to not place your listings and to stop placing or to remove your listings at any time for any reason. Final decision as to inclusion, relevancy, placement and the like is at Overture's sole discretion.

Id. at 8 (emphasis omitted). The "Local Sponsored Search Program Terms and Conditions" are essentially the same as to these terms.

Contrary to plaintiffs' argument, the Sponsored Listings T&C states defendants' obligations under the contract. Defendants agree to provide access to the Yahoo! Search Marketing Programs and the Sponsored Listings Marketplace. As such, it appears to the Court that the Agreement constitutes the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 06-2737 CAS (FMOx)                                           Date   October 30, 2006

Title   IN RE YAHOO! LITIGATION

complete, final, integrated agreement between the parties. Plaintiffs may not introduce other contemporaneous representations or agreements as parts of the contract.

Further, the promises which plaintiffs allege were made appear to be inconsistent with the terms of the Agreement. The Agreement expressly provides that the "[f]inal decision as to inclusion, relevancy, placement and the like is at Overture's sole discretion," and that defendants may authorize third parties "to make the Sponsored Listings Marketplace Results available as a link from, an add-on service to, or otherwise in connection with Third Party Products." The Agreement does not provide that advertisements will not be placed in spyware, typosquatting sites, or other such "undesirable" sites. While the Agreement states that "listings may be distributed through the Yahoo! Search Marketing Distribution Network based upon certain user targeting initiatives," defendants do not promise in the Agreement to use such targeting initiatives, as opposed to random placement.³

Plaintiffs argue in their surreply that the terms "Sponsored Search" and "Content Match" are not defined in the Agreement, and as such extrinsic evidence is admissible to interpret these terms. However, plaintiffs have not made clear in the complaint in what way these terms are ambiguous, and how extrinsic evidence will clarify these terms without contradicting the express terms of the Agreement. The Court therefore, to the extent that plaintiffs' claim is based upon defendants' alleged breach of express contract provisions in the integrated contract, GRANTS defendants' motion to dismiss plaintiffs' claim for breach of contract with leave to amend.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement....The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." <u>Carma Developers v. Marathon Dev. Calif.</u>, 2 Cal. 4th 342, 371 (1992).

---

³Defendants also argue that other provisions in the Agreement bar plaintiffs' claims. The Agreement requires that plaintiffs pay for "all charges to [their] account[s] for any Program in which [they] enroll" and that plaintiffs "agree to submit any disputes regarding any charge to [their] account in writing to Overture within 60 days of such charge, otherwise such dispute will be waived and such charge will be final and not subject to challenge." Agreement at 1. The Agreement also provides that defendants' advertising services are provided on an "as is" basis, without any express or implied warranties. <u>Id.</u> at 4. Finally, the Agreement provides that defendants cannot be held responsible for "THE SELECTION OR RETENTION OF, OR ANY ACTS, ERRORS, OR OMISSIONS BY, ANY THIRD PARTY IN CONNECTION WITH THE AGREEMENT, INCLUDING WITH RESPECT TO CLICKS BY ANY THIRD PARTY ON YOUR LISTING(S)." <u>Id.</u> (emphasis in original). The Court concludes that the record is not yet sufficiently developed to determine the effect of these contract provisions. The provisions are sufficiently ambiguous at this stage that the Court cannot decide their impact as a matter of law without further evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | October 30, 2006 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

The Agreement provides defendants with sole discretion to make the "[f]inal decision as to inclusion, relevancy, placement and the like." Defendants have a duty to exercise good faith in their use of such discretion. Plaintiffs allege that defendants have breached the duty of good faith "by collecting revenues for placements they knew, or reasonably should have known, were illegal." Amended Complaint ¶ 62. Defendants are correct that "no covenant of good faith and fair dealing can be implied which forbids such acts authorized by the express provisions of the contract." Carma Developers, 2 Cal. 4th at 374 (1992). However, given the liberal pleading standard under the Federal Rules of Civil Procedure, plaintiffs have stated a claim for breach of the implied covenant of good faith and fair dealing that does not necessarily conflict with express provisions of the contract. To the extent that plaintiffs' claim for breach of contract is based upon breach of the implied covenant of good faith and fair dealing, defendants' motion to dismiss plaintiffs' breach of contract claim is DENIED.

### B. Unjust Enrichment

Defendants contend that plaintiffs may not bring an unjust enrichment claim because plaintiffs rely upon their written contract with defendants. Defendants rely upon California Medical Ass'n v. Aetna U.S. Healthcare of California, Inc., 94 Cal. App. 4th 151, 172 (2001), which states that "as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." Plaintiffs respond that they are merely pleading a claim for unjust enrichment in the alternative, should their claim for breach of contract fail.

While the Court recognizes that plaintiffs may plead alternative legal theories, plaintiffs here appear to assert that defendants' alleged promises, even if not enforceable in contract, are still actionable in a claim for unjust enrichment. However, their theory would contradict the express terms of the Agreement that it constitutes the final, complete, integrated agreement between the parties. "Contractual terms regarding a subject are not implicitly missing when the parties have agreed on express terms regarding that subject. A quantum meruit analysis cannot supply 'missing' terms that are not missing." Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th 1410, 1419-1420 (1996); see also Wagner v. Glendale Adventist Medical Center, 216 Cal. App. 3d 1379, 1393 (1989) (noting that there can be no implied contractual term completely at variance with an express term of a contract). Accordingly, the Court GRANTS defendants' motion to dismiss plaintiffs' unjust enrichment claim with leave to amend.

### C. Civil Conspiracy

Defendants next contend that plaintiffs do not sufficiently plead a claim for civil conspiracy because plaintiffs allege no underlying, independent tort claims. "Strictly speaking, there is no separate tort of civil conspiracy....Thus, there is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed and damage results from that act." Witkin, Summary of California Law (10th ed.), Torts § 45. Plaintiffs assert that they base their civil conspiracy on defendants' commission of "Syndication Fraud," which consists of causing defendants' ads to appear in spyware and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 06-2737 CAS (FMOx) | Date | October 30, 2006 |
| Title | IN RE YAHOO! LITIGATION | | |

typosquatting sites, the use of which plaintiffs allege violates federal law, and causing defendants' ads to appear without any targeting. Complaint ¶¶ 24-39. However, plaintiffs do not plead a separate claim for fraud, or for any other tort. Plaintiffs cannot maintain an action for civil conspiracy without sufficiently pleading the elements of an underlying, independent tort claim. The Court therefore GRANTS defendants' motion to dismiss plaintiffs' claim for civil conspiracy with leave to amend.

### D. Unfair Business Practices Under § 17200 et seq.

Plaintiffs' amended complaint provides that defendants' "acts and practices have and/or are likely to deceive members of the consuming public," and "are unlawful because they violate [Cal.] Civ. Code §§ 1572, 1709, 1710, 1770(a)(5), 1770(a)(7) and 1770 (a)(9)," as well as Cal. Bus. & Prof. Code § 17500 et seq. Amended Complaint ¶¶ 72-73.

Defendants argue that plaintiffs attempt to "plead around an absolute bar to relief by recasting the cause of action as one for unfair competition." Mot. at 15 (quoting Chebner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000)). Defendants also argue that plaintiffs' unfair competition claim must fail because the complaint fails to allege harm to the public, fails to allege injury in fact as required by Proposition 64, and because plaintiffs have failed to satisfy the statutory requirements to bring a claim for violation of Cal. Civ. Code § 1770. Finally, defendants contend that the alleged promises constitute mere puffery, and thus cannot be actionable as false advertising.

Plaintiffs assert that defendants "falsely advertised [their] ad placement services" and placed "plaintiffs' ads in illegal and unsavory, low-quality web locations…in contravention of its contractual obligations" and in violation of several statutes "more often at times when it needed to meet earnings projections." Opp'n at 18. Plaintiffs contend that an injury in fact, that plaintiffs "were unlawfully charged for services that Defendants did not provide or for which plaintiffs and the Class did not agree to pay," resulted from these alleged acts by defendants. Id. at 20-21. Plaintiffs also argue that reliance is presumed, and that they have standing under Proposition 64 to bring suit. Finally, plaintiffs argue that they need not satisfy the statutory requirements for a suit under Cal. Civ. Code § 1770 because they have not brought a claim under that statute, but rather have alleged a violation of that statute as a basis for their unfair competition claim.

Cal. Bus. & Prof. Code § 17204, which governs standing to sue under § 17200, previously provided that "any person acting for the interests of itself, its members or the general public" could bring a claim for unfair business practices under § 17200. However, after the enactment of Proposition 64, § 17204 now provides that a claim for unfair business practices can be maintained "by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Proposition 64 also requires private representative actions to meet the requirements for a class action. "Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure." Cal Bus. & Prof. Code § 17203. California Code of Civil Procedure § 382 states that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 06-2737 CAS (FMOx)                    Date  October 30, 2006

Title   IN RE YAHOO! LITIGATION

it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

Defendants rely upon Rosenbluth International, Inc. v. Superior Court, 101 Cal. App. 4th 1073, 1077 (2002) for the proposition that an unfair competition action "based on a contract is not appropriate where the public in general is not harmed by defendants' alleged unlawful practices." However, Rosenbluth was decided before the adoption of Proposition 64, when § 17204 allowed any person to bring suit on behalf of himself or the general public. After Proposition 64, the amended statutes do not appear to require that plaintiffs allege harm to the public in general. In any event, plaintiffs allege that defendants' practices include allowing plaintiffs' advertisements to be posted in spyware and typosquatting sites, which are widely recognized as confusing and annoying to consumers. Indeed, Congress prohibited typosquatting or cybersquatting when it passed the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), as an amendment to the Lanham Act.

Section 17204 also requires that plaintiffs allege that they suffered an injury in fact "as a result of" defendants' practices. According to the California Court of Appeal, "[i]nherent in Proposition 64's requirement that a plaintiff suffered 'injury in fact...as a result of' the fraudulent business practice or false advertising is that a plaintiff actually relied on the misrepresentation and as a result, was injured thereby." Pfizer Inc. v. Superior Court, 141 Cal. App. 4th 290, 305 (2006).[4] Further, plaintiffs' underlying claims for violations of Cal. Civ. Code § 1572 (actual fraud), § 1709 (deceit), and § 1710 (deceit) also require that plaintiffs establish that they reasonably relied upon defendants' alleged misrepresentations or material omissions. See City Solutions, Inc. v. Clear Channel Communications, 365 F.3d 835, 840 (9th Cir. 2004) ("Under California law, a complete causal relationship between the fraud or deceit and the plaintiff's damages is required....An essential element in recovery for deceit is proof of the plaintiff's justifiable reliance on the defendant's fraudulent representations." (citations and internal quotation marks omitted)).

Plaintiffs contend that defendants made affirmative representations that advertisements would be "highly targeted," and would appear in "high quality," "substantive" sites, as well as material omissions as to the fact that plaintiffs' advertisements would appear in spyware and typosquatting sites. "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct

---

[4] The court in Pfizer interpreted the "as a result of" language to mean that a plaintiff seeking to certify a class action must show that each purported class member relied upon the alleged misrepresentation or omission. Another court in this district came to a different conclusion in Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133 (C.D. Cal. 2005). In Anunziato, the court declined to read a reliance requirement into the "as a result of" language in either section 17200 or section 17500. In other cases, courts "have essentially presumed misrepresentations detrimentally affected all class members on an equal basis" when all class members are exposed to the same or similar misrepresentations. In re Tobacco II Cases, 142 Cal. App. 4th 891 (2006). For the purposes of this motion, the Court need not determine whether plaintiffs must establish reliance as to each purported class member, or whether reliance can be presumed in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 06-2737 CAS (FMOx) | Date | October 30, 2006 |
| Title | IN RE YAHOO! LITIGATION | | |

which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." City Solutions, Inc., 365 F.3d at 840. "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1239 (1995).

To the extent plaintiffs purport to have relied upon on defendants' alleged promises to place advertisements in "high quality," "substantive," or "popular" sites, such reliance is unreasonable. These statements constitute "mere puffery," which is not actionable. See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134 (9th Cir. 1997). "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (holding that the word "quality" is non-actionable puffery). However, defendants' alleged statement that the advertisements would be "targeted" is not so vague and unspecified that it amounts to puffery. Rather, plaintiffs allege in the amended complaint that the term "targeted" has a specific meaning in the context of internet advertising.

The Court concludes that plaintiffs have alleged sufficient facts to establish an injury in fact as a result of defendants' alleged practices. In McCollum v. Xcare.net, Inc., 212 F. Supp. 2d 1142 (2002), the plaintiff entered into a contract with defendant that contained forfeiture provisions, which, according to plaintiff, resulted in defendant keeping earned, but unpaid commissions without justification, and therefore constituted a violation of § 17200. Id. at 1154. Stating that the forfeiture provisions "permit Defendant to frustrate the legitimate expectations of its employees," the court held that such provisions "may be deemed an unfair practice under § 17200." Id.

Accordingly, under the reasoning of McCollum, even an express contract provision may constitute an unfair business practice under § 17200. As such, plaintiffs may base their unfair business practices claim upon the contract provisions which allow defendants to authorize third parties to use plaintiffs' ads in "unsavory" spyware, typosquatting sites, and in other non-targeted ways. Plaintiffs allege that defendants intentionally failed to disclose that plaintiffs' advertisements would potentially appear in spyware, typosquatting sites, and non-targeted sites. Plaintiffs also allege that defendants used these methods "more often at times when it needed to meet earnings projections." Plaintiffs contend that defendants' practices "were made in the form of common misrepresentations of material facts" and omissions "upon which persons, including members of the Class, could be expected to rely." Amended Complaint ¶ 73. Accordingly, in light of the liberal notice pleading standard under the Federal Rules of Civil Procedure, the Court finds that plaintiffs have sufficiently stated a claim for relief pursuant to § 17200 for unfair business practices.

However, plaintiffs may not base their unfair business practices claim upon violations of Cal. Civ. Code § 1770 (the Consumer Legal Remedies Act, or "CLRA"). The CLRA provides that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person." Cal. Civ. Code § 1780. "Consumer" is defined as "an individual who seeks or acquires, by purchase or lease, any

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-2737 CAS (FMOx) | Date | October 30, 2006 |
| Title | IN RE YAHOO! LITIGATION | | |

goods or services for personal, family, or household purposes." Plaintiffs are not "consumers" as defined by the statute, and thus may not bring a claim for violation of the CLRA. See Von Grabe v. Spring PCS, 312 F. Supp. 2d 1285, 1303 (S.D. Cal. 2003). To the extent that plaintiffs' unfair business practices claim is not premised upon violations of CLRA, defendants' motion to dismiss plaintiffs' § 17200 claim is DENIED.

## V.  CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS in part and DENIES in part defendants' motion to dismiss for failure to state a claim. Plaintiffs are granted leave to file an amended complaint curing the defects noted herein within 20 days hereof.

IT IS SO ORDERED.

: 4

Initials of Preparer