Larry W. McFarland (Bar No. 129668)
Dennis Wilson (Bar No. 155407)
David K. Caplan  (Bar No. 181174)
KEATS McFARLAND & WILSON LLP
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, California 90212
Telephone: (310) 248-3830
Facsimile:  (310) 860-0363
Emails:   lmcfarland@kmwlaw.com
              dwilson@kmwlaw.com
              dcaplan@kmwlaw.com

Counsel for Defendants
Yahoo! Inc. and Overture Services, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE YAHOO! LITIGATION | Master File No. CV 06-2737 CAS (FMOx) |
| | YAHOO! INC. AND OVERTURE SERVICES, INC.'S MEMORANDUM IN SUPPORT OF (1) MOTION TO DISMISS AND (2) MOTION FOR MORE DEFINITE STATEMENT |
| | [Fed. R. Civ. P. 12(b)(1); 12(b)(6); 12(e)] |
| | Date:          April 21, 2008<br>Time:          10:00 a.m.<br>Courtroom:  5 (Hon. Christina A. Snyder) |
| This Document Relates to All Actions | |

# TABLE OF CONTENTS

<u>Pages</u>

I.    INTRODUCTION ...................................................................................1

II.   LEGAL STANDARDS .........................................................................2

III.  ANALYSIS ...........................................................................................4

    A.   Plaintiffs Have Waived Their Right to Bring This Action as a
Class Action and Pursue Their Claims in a Consolidated
Proceeding. ...................................................................................4

        1.  The Waiver Is Not in a Consumer Contract of Adhesion....................6

        2.    Plaintiffs' Allegations Do Not "Predictably Involve Small
Amounts of Damages. ..................................................................8

        3.  Defendants Did Not "Carry out a Scheme to Deliberately Cheat
Large Numbers of Consumers Out of Individually Small Sums of
Money."......................................................................................9

    B.   The SAC Should Be Dismissed Because the Named Plaintiffs Fail
To Individually State Any Claim and Lack Standing To Sue for
Alleged Injuries To Putative Class Members. .........................................11

    C.   All Claims Based Upon Conduct by Overture Allegedly Occurring
Before Yahoo! Acquired Overture Should Be Dismissed. ......................12

    D.   Plaintiffs' Breach of Contract Claims Should Be Dismissed. .................13

        1.  Plaintiffs Have Failed to Plead How the Terms "Sponsored
Search" and "Content Match" Are "Ambiguous, and How
Extrinsic Evidence Will Clarify These Terms Without
Contradicting the Express Terms of the Agreement.............................13

        2.  The Covenant of Good Faith and Fair Dealing is Inapplicable. .........15

    E.   Plaintiffs' Common Counts Should Be Dismissed.................................18

    F.   Plaintiffs' Misrepresentation and Civil Conspiracy Claims Should
Be Dismissed.........................................................................................18

i

1                 1.  Plaintiffs Have Not Adequately Pled a Misrepresentation

2                 Claim. ................................................................................19

3                 2.  Plaintiffs Have Not Identified Any Actionable

4                 Misrepresentation ..............................................................20

5                 3.  Plaintiffs' Conspiracy Claims Likewise Fail. ...................21

6       G.     Plaintiffs' Section 17200 Claims Should Be Dismissed.........................22

7                 1.  Plaintiffs Lack Standing. ...................................................22

8                 2.  Plaintiffs Cannot Allege Causation. ...................................23

9                 3.  Plaintiffs Do Not Sufficiently Allege a Predicate Violation on

10                Which a UCL Claim Can Be Based. ...................................23

11       H.     Pursuant To Rule 12(e), Plaintiffs Should Be Required To

12               Differentiate The Group Allegations. .......................................25

13  IV.     CONCLUSION ................................................................25

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

Pages

**Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994)....................21

*Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745 (2000) ...................................................................................................................10

*Baltimore Football Club, Inc. v. Superior Court*, 171 Cal. App. 3d 352, 215 Cal. Rptr. 323 (1985) ..........................................................................................................13

*Banco Do Brasil, S.A. v. Latian, Inc.,* 234 Cal. App. 3d 973, 1000 (1991) ................14

*Bank of Am. Nat'l Trust & Sav. Ass'n v. Lamb Finance Co.*, 179 Cal. App. 2d 498 (1960) ...........................................................................................................................14

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)............2, 3

*Bly-Magee v. Cal.*, 236 F.3d 1014 (9th Cir. 2001) .......................................................19

*Brown v. Bank of America, N.A.*, 457 F. Supp. 2d 82 (D. Mass. 2006) .......................23

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 66 Cal. Rptr. 3d 543 (2007) ..........................................................................................................................19

*Byrum v. Brand*, 219 Cal. App. 3d 926, 268 Cal. Rptr. 609 (1990)............................19

*Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 272 Cal. Rptr. 387 (1990)..........................................................................................................16

*Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 6 Cal. Rptr. 2d 467 (1992) ...............................................................................................................17

*Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336 (2004)...............................................14

*Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004)....................................3

*Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101 (9th Cir. 2003) ..............................7

*Coast Bank v. Holmes*, 19 Cal. App. 3d 581, 97 Cal. Rptr. 30 (1971)........................14

*Comb v. PayPal, Inc.,* 218 F. Supp. 2d 1165 (N.D. Cal. 2002) ...................................10

*Cook Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242 (9th Cir.1990).........25

*Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 22 Cal. Rptr. 3d 189 (2004) ..............................................................................................................10

i

TABLE OF AUTHORITIES

Pages

*Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal.App.3d 758, 259 Cal. Rptr. 789 (1989) ............................................................................................................7

*Diaz v. Allstate Ins. Group*, 185 F.R.D. 581 (C.D. Cal. 1998)......................................22

*Diaz v. Federal Express Corp.*, 373 F. Supp. 2d 1034 (C.D. Cal. 2005) ......................24

*Discover Bank v. Superior Court*, 36 Cal. 4th 148, 30 Cal.Rptr.3d 76 (2005) ......4, 6, 9

*Doctor's Co. v. Superior Court*, 49 Cal. 3d 39, 260 Cal. Rptr. 183 (1989) ...........21, 22

*Dreiling v. Am. Express Co.*, 458 F.3d 942 (9th Cir. 2006) ...........................................9

*Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007).....................7, 8, 10, 11

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 254 Cal. Rptr. 211 (1988)...............16

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086 (C.D. Cal. 1999) ..........................................................................................................20

*Gonzalez v. Proctor and Gamble Co.*, 2007 WL 2700954 (S.D. Cal. 2007) ...............19

*Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987) ......................................................11

*Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 100 Cal. Rptr. 2d 352 (2003) ...................16

*Hall v. Time Inc.*, 158 Cal. App. 4th 847, 70 Cal. Rptr. 3d 466 (2008) .................22, 23

*Hamilton v. Signature Flight Support Corp.*, 2005 WL 1514127 (N.D. Cal. 2005)....25

*Hampshire Ins. Co. v. Ridout Roofing Co., Inc.*, 68 Cal. App. 4th 495, 80 Cal. Rptr. 2d 286 (1998) .........................................................................................................16

*In re Late Fee and Over-Limit Fee Litig.*, 2007 WL 4106353 (N.D. Cal. 2007)...16, 18

*Jankey v. Los Burritos, Inc.*, 2005 WL 5517233 (C.D. Cal. 2005) ................................3

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 119 Cal. Rptr. 2d 296 (2002) .............................22

*Keith v. Buchanan,* 173 Cal. App. 3d 13, 220 Cal. Rptr. 392 (1985)...........................14

*La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973) ..........................13

*Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005)........................12

*Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 61 Cal. Rptr. 3d 221 (2007)........................................................................................................22

*Lingsch v. Savage*, 213 Cal.App.2d 729, 29 Cal. Rptr. 201 (1963) .............................19

TABLE OF AUTHORITIES

Pages

*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc*. 89 Cal. App. 4th 1042, 107 Cal.Rptr.2d 645 (2001)............................................................7

*MCA, Inc. v. Universal Diversified Enters. Corp*., 27 Cal. App. 3d 170, 103 Cal. Rptr. 522 (1972)......................................................................................................................7

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ...................................................4, 25

*Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 131 Cal. Rptr. 2d 347 (2003)........................................................................................................................18

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir.1989)......................20

*O'Shea v. Littleton*, 414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974*)*.................11

*PMC, Inc. v. Porthole Yachts, Ltd.*, 65 Cal. App. 4th 882, 76 Cal. Rptr. 2d 832 (1998) ............................................................................................................................17, 18

*Provencher v. Dell, Inc*., 409 F. Supp. 2d 1196 (C.D. Cal. 2006) ...........................5, 11

*R & B Auto Center, Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327 (2006)........19

*Rosenbluth Int'l, Inc. v. Superior Court*, 101 Cal. App. 4th 1073, 124 Cal. Rptr. 2d 844 (2002).................................................................................................................22

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987)..............4, 15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393 (9th Cir. 1986) ....20

*Shroyer v. New Cingular Wireless,* 498 F.3d 976 (9th Cir. 2007) ........................5, 8, 9

*Stansfield v. Starkey*, 220 Cal. App. 3d 59, 269 Cal. Rptr. 337 (1990)......................19

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998)...................................3

*Szetela v. Discoverbank*, 97 Cal. App. 4th 1094, 118 Cal. Rptr. 2d 862 (2002)..........10

*Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 48 Cal. Rptr. 2d 747 (1995).16

*Thomsen v. W. Elec. Co.*, 680 F.2d 1263 (9th Cir.1982)..............................................22

*Ticor Title Ins. Co. v. Rancho Santa Fe Assn.*, 177 Cal. App. 3d 726, 223 Cal. Rptr. 175 (1986)...................................................................................................................6

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003).................................................3

*Veltman v. Walpole Pharm., Inc.*, 928 F. Supp. 1161 (M.D. Fla. 1996)..................4, 25

# TABLE OF AUTHORITIES

<u>Pages</u>

*Warth v. Seldin*, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ........... 11

*Wasco Prods., Inc. v. Southall Tech., Inc.*, 435 F.3d 989 (9th Cir. 2006).................... 21


**Statutes**

Cal. Civ. Code § 1605 ................................................................................................ 18

Cal. Civ. Code § 1636 .................................................................................................. 6

Cal. Civ. Code § 1770 .................................................................................................. 5

Cal. Civ. Code §§ 1572, 1709 and 1710 .................................................................... 24

Cal. Civ. Code §1573(1) ............................................................................................. 19


**Rules**

Fed. R. Civ. P 9(b) ............................................................................................... 19, 20

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 1, 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 3

Fed. R. Civ. P. 12(e) ............................................................................................... 3, 25

# I.    INTRODUCTION

This case arises out of a contract – the Yahoo! Advertiser Master Services Terms and Conditions (hereinafter, "Master T&C") – under which Plaintiffs agreed to purchase "pay-per-click" search marketing services from Defendants to promote Plaintiffs' businesses on the Internet.  Defendants earlier moved to dismiss Plaintiffs' first amended consolidated amended class action complaint.  On October 30, 2006, the Court entered an order granting that motion in part, and denying it in part ("Order").

In its Order, the Court found that the Master T&C is the final integrated agreement between the parties, and that Plaintiffs may not introduce other contemporaneous representations or agreements as part of the contract.  (Order at 5-6.)  The Court further found that the placement of Plaintiff's ads is at Defendants' discretion, that the Master T&C does not provide that ads will not be placed in "undesirable" sites, and that Defendants "do not promise in the Agreement to use …targeting initiatives."  (Order at 6.)  The Court dismissed Plaintiffs' claims for breach of contract, unjust enrichment, and civil conspiracy, with "leave to file an amended complaint curing the defects noted."  (*Id.* at 11.)  The Court permitted Plaintiffs to proceed with claims for breach of the implied covenant of good faith and fair dealing and unfair business practices under Cal. Bus. & Prof. Code § 17200 (to the extent that Defendants allegedly distributed Plaintiffs' ads in "spyware, typosquatting sites, and in other non-targeted ways.").  (Order at 10.)

Plaintiffs later filed their Consolidated Second Amended Class Action Complaint ("the SAC"), which alleges four categories of claims: (1) breach of contract; (2) common counts for restitution, unjust enrichment and money had and received; (3) "misrepresentation and civil conspiracy"; and (4) "violations of Cal. Bus. & Prof. Code §§ 17200, *et seq*."  (SAC, filed Nov. 20, 2006.)

As argued below, this action should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6) because Plaintiffs do not have the requisite standing.  More specifically, this Court should enforce the class action waiver provision included in the Master T&C,

1    and find that Plaintiffs do not have standing to bring claims on behalf of a class.

2    Furthermore, under the standards set forth in the Supreme Court's recent

3    decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929

4    (2007) – decided after this Court last reviewed the pleadings in this case – all of

5    Plaintiffs' claims fail to pass muster.  Plaintiffs' contract claims, common counts and

6    civil conspiracy claims continue to suffer from each of the defects noted in the Court's

7    Order.  In addition, Defendants urge the Court to dismiss the claims it permitted to

8    proceed.  With more complete briefing with respect to the implied covenant of good

9    faith and fair dealing, and in light of developing law under Section 17200 in the past

10   year, neither of these claims now states a basis for relief.

11   Faced with the Order's findings regarding the Master T&C, the clear thrust of

12   Plaintiffs' claims is two-fold:  First, Plaintiffs assert that the terms "Sponsored

13   Search" and "Content Match" as used in the Master T&C are ambiguous, and may be

14   explained by extra-contractual marketing information that allegedly defines these

15   terms as "highly targeted" advertisement products.  But, just as they failed before,

16   Plaintiffs do not clarify how these terms are ambiguous or how extrinsic evidence will

17   explain them without contradicting the Master T&C's express terms.  (*See* Order at 6.)

18   Second, Plaintiffs allege that Defendants represented – outside the fully-integrated

19   terms of the Master T&C – that advertising displays would be "highly targeted."  To

20   do so, Plaintiffs disingenuously misrepresent the statements they cite.  As shown in

21   the materials Plaintiffs cited, Defendants never stated that <u>ad displays</u> would be

22   "highly targeted," only that advertisers are delivered "highly targeted <u>customer leads</u>"

23   through the advertisers' selection of key words.  This distinction is crucial.  Plaintiffs

24   have not, and cannot, allege that Defendants do not permit advertisers to target their

25   ads by selecting relevant key words or that they were unable to attract highly targeted

26   customer leads.  The SAC should be dismissed without leave to amend.

27   **II.   LEGAL STANDARDS**

28   Since this Court addressed Plaintiffs' first amended complaint, the Supreme

1  Court clarified the pleading standard under Rule 12.  Plaintiffs must allege "enough

2  facts to state a claim to relief that is plausible on its face."  *Twombly*, 127 S. Ct. at

3  1974.  In *Twombly*, the Supreme Court held that a "plaintiff's obligation to provide

4  the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions,

5  and a formulaic recitation of the elements of a cause of action will not do.  Factual

6  allegations must be enough to raise a right to relief above the speculative level."  *Id.* at

7  1959.  A Rule 12(b)(6) motion to dismiss should be granted when plaintiffs fail to

8  "[nudge] their claims across the line from conceivable to plausible."  *Id.* at 1974.

9       "The court is not required to accept legal conclusions cast in the form of factual

10  allegations if those conclusions cannot reasonably be drawn from the facts alleged."

11  *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).  The Court also is

12  "not required to accept as true conclusory allegations which are contradicted by

13  documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d

14  1293, 1295-1296 (9th Cir. 1998).  "Nor is the court required to accept as true

15  allegations that are merely conclusory, unwarranted deductions of fact, or

16  unreasonable inferences."  *Cholla Ready Mix*, 383 F.3d at 973.  Courts may consider

17  "documents incorporated by reference in the complaint, or matters of judicial notice."

18  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  As this Court noted in its

19  Order, "Plaintiffs do not dispute the authenticity of the Agreement submitted by

20  defendants, and the complaint apparently refers to the Agreement."  (Order at 3 n.2.)

21       Rule 12(b)(1) requires the Court to dismiss an action in the absence of subject

22  matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The burden of establishing subject

23  matter jurisdiction rests on the nonmoving party.  *Jankey v. Los Burritos, Inc.*, 2005

24  WL 5517233 *1 (C.D. Cal. 2005).

25       When a complaint makes only general allegations against the defendants as a

26  group and does not differentiate between the conduct of the defendants, the complaint

27  is impermissibly vague and ambiguous, and the plaintiff may be required under Rule

28  12(e) to "separate each act by each defendant into individually numbered paragraphs"

3

1    so that the defendants can "ascertain from the Complaint which defendant committed

2    which alleged act." *Veltman v. Walpole Pharm., Inc.*, 928 F. Supp. 1161, 1164 (M.D.

3    Fla. 1996); *see also McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996). Where an

4    amended pleading does not cure deficiencies found in an earlier pleading, "the district

5    court could reasonably conclude that further amendment would be futile" and may

6    "deny[] leave to amend a second time." *Rutman Wine Co. v. E. & J. Gallo Winery*,

7    829 F.2d 729, 738 (9th Cir. 1987).

8    **III.   ANALYSIS**

9            **A.      Plaintiffs Have Waived Their Right to Bring This**

10                   **Action as a Class Action and Pursue Their Claims in a**

11                   **Consolidated Proceeding.**

12           The Master T&C, which Plaintiffs allege forms the contractual relationship with

13   Defendants and provides the basis for their claims, contains an express class action

14   waiver provision governed by California law:

15                   Any dispute referring or relating to the Agreement or between the parties
                     shall be governed by the laws of the State of California, without regard to its
16                   conflict of laws principles. You agree to submit to the exclusive jurisdiction
                     of the state and federal courts located in the County of Los Angeles,
17                   California or another location designated by Overture. Any claim against
18                   Overture arising from the Agreement <u>shall be adjudicated on an individual
                     basis, and shall not be consolidated in any proceeding with any claim or</u>
19                   <u>controversy of any other party</u>. (Weiss Decl., Ex. 1, ¶ 13 (emphasis added).)
20

21           In *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76

22   (2005), the California Supreme Court made clear that there is no blanket policy in

23   California against class action waivers in the consumer context. *Id.* at 162. It held

24   that class action waivers were only unenforceable in those limited circumstances

25   where the "waiver is found in a consumer contract of adhesion in a setting in which

26   disputes between the contracting parties predictably involve small amounts of

27   damages, and when it is alleged that the party with the superior bargaining power has

28   carried out a scheme to deliberately cheat large numbers of consumers out of

1  individually small sums of money." *Id.* at 162-63; *see also Shroyer v. New Cingular*

2  *Wireless,* 498 F.3d 976, 983 (9th Cir. 2007) (applying *Discover Bank*, also in the

3  consumer context, and holding this test should be applied "whether the consumer is

4  being asked to waive the right to class action litigation or the right to classwide

5  arbitration").

6      Subsequent to the California Supreme Court's decision in *Discover Bank*, in

7  *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196 (C.D. Cal. 2006), the court enforced a

8  class action waiver coupled with an arbitration clause in a suit brought by the

9  purchaser of a Dell computer in which he purported to represent a nationwide class of

10  similarly situated consumers.  In *Provencher*, the Court noted that class action waiver

11  provisions must be considered in the light cast by Congress' findings in enacting the

12  Class Action Fairness Act of 2005.  "Specifically, Congress noted that abuses of the

13  class action device have harmed class members with legitimate claims by limiting

14  their recovery while awarding counsel large fees, harmed defendants that have acted

15  responsibly, adversely affected interstate commerce, and undermined public respect

16  for the judicial system." *Provencher*, 409 F.2d at 1200 n.3 (citing Class Action

17  Fairness Act of 2005, Pub. L. No. 109-2, § 2, 119 Stat. 4 (2005)).

18      This case is markedly different than *Discover Bank*, *Shroyer*, *Provencher*, and

19  the numerous cases addressing whether to enforce a class action waiver in the

20  consumer context.  As this Court previously found, <u>the Master T&C is strictly a</u>

21  <u>commercial contract executed only by business entities</u>.[1]  This distinction is critical

22  because the two prominent public policies underpinning decisions such as *Discover*

23  *Bank* not to enforce a class action waiver consistently are consumer protection and

24  preventing businesses from insulating themselves from potential liability.  *Discover*

---

[1] Order at 1 ("Plaintiffs are businesses. . . ."), 11 (dismissing Plaintiffs' claims under
the CLRA, Cal. Civ. Code § 1770, on the ground that Plaintiffs are not consumers);
*see also* SAC ¶¶ 12-15 (alleging each named plaintiff is a business entity).

1  *Bank*, 36 Cal. 4th at 161, 162-63.  As discussed below, neither of those policies is

2  implicated here or warrants any deviation from the expectation and strong

3  presumption in commercial contracts that an agreement's express provisions should be

4  given effect by the courts unless they are unlawful.  Cal. Civ. Code § 1636; *Ticor Title*

5  *Ins. Co. v. Rancho Santa Fe Assn.*, 177 Cal. App. 3d 726, 730, 223 Cal. Rptr. 175

6  (1986).  The representative Plaintiffs are, therefore, impermissibly attempting to avoid

7  the Master T&C by bringing class claims as well as their own in one action.

8        To the extent applicable,[2] the <u>consumer</u>-focused inquiry in *Discover Bank*

9  (which must be more protective than the <u>commercial</u>-focused inquiry here) warrants

10  enforcement of the waiver clause in the Master T&C.  The business relationship

11  between the parties is governed by a contract in which advertisers agree to waive the

12  right to bring claims consolidated with other advertisers.

13        **1.**    **The Waiver Is Not in a Consumer Contract of Adhesion.**

14        The Master T&C is not a consumer contract.  It is a "business-to-business"

15  contract by its express terms.  Each Plaintiff, in entering into the Master T&C,

16  unequivocally agreed to a representation and warranty that provides in plain English:

17  "You represent, warrant, and covenant that . . . you are a <u>business</u>, <u>not a consumer</u>,

18  and that your use of Yahoo! Search Marketing's services is <u>solely</u> for lawful

19  <u>commercial and business purposes</u>."  (Weiss Decl. ¶ 7 (emphases added).)  Because

20  the waiver is not found in a consumer contract, this case is outside the limited

21  circumstances described by the California Supreme Court in *Discover Bank* in which a

22  class action waiver should not be enforced.  To the contrary, it should be enforced.

23        Moreover, "[a] contract is not one of adhesion simply because it is a form

24  contract.  Courts have recognized the prevalence and importance of standardized

25  contracts in people's everyday lives."  *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229,

26

27  [2] Defendants are not aware of any reported decision finding unenforceable a class

28  action waiver provision in the context of a purely commercial agreement.

6

241 (E.D. Pa. 2007) (applying California law); *see also MCA, Inc. v. Universal Diversified Enters. Corp.*, 27 Cal. App. 3d 170, 175, 103 Cal. Rptr. 522 (1972).  In *Feldman*, a case in which California law was applied to a strikingly similar contract to the one at issue here – Google's AdWords Agreement (also for business-to-business pay-per-click advertising) – a sole practitioner who used Google to promote his personal injury law practice by bidding on keywords such as "Vioxx," "Bextra" and other pharmaceuticals challenged the enforceability of several provisions in Google's AdWords Agreement.  The Court roundly rejected those challenges – including the plaintiff's argument that "the AdWords Agreement was a contract of adhesion because it was not negotiated at arms length and was offered on a 'take it or leave it' basis, without an opportunity to bargain." *Feldman*, 513 F. Supp. 2d at 240.  The court reasoned that plaintiff was a sophisticated purchaser who had full notice of the AdWords Agreement's terms, accepted those terms, and did not allege that Google engaged in any high-pressure tactics or external pressure to induce him to enter into the agreement.  *Id.* The court further reasoned that the plaintiff had alternative advertising options – he "could have rejected the [AdWords] Agreement with impunity." *Id.* at 241.[3]

In addition to the inescapable conclusion that the Master T&C is <u>not</u> a consumer contract, it is important to consider that Plaintiffs here (1) have alleged no high-pressure tactics or external pressure to accept the Master T&C; (2) have not alleged that they were not fully capable of reading and understanding its terms before

---

[3] *See also Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.* 89 Cal. App. 4th 1042, 1053-56, 107 Cal. Rptr. 2d 645 (2001) (holding procedural unconscionability limited because the plaintiff was sophisticated and had choice in selecting providers and had in fact done business with ten other firms); Relevant factors include the buyer's sophistication, opportunity to negotiate, oppressive tactics, pressure to induce acceptance, and availability of alternative sources of supply. *See Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106-07 (9th Cir. 2003); *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 767-768, 259 Cal. Rptr. 789 (1989).

1   accepting; (3) could have ceased advertising with Defendants without penalty at will;

2   and, (4) as in *Feldman* and *Marin Storage*, had a myriad of other alternatives available

3   to promote their Web sites – including print, television, billboard, and other Internet

4   advertising firms who are competitors of Defendants.  As in *Feldman*, Plaintiffs

5   "could have rejected the [a]greement with impunity." 513 F. Supp. 2d at 241.

### 2.   Plaintiffs' Allegations Do <u>Not</u> "Predictably Involve Small Amounts of Damages."

8       California courts consider whether an agreement occurs "in a setting in which

9   disputes between the contracting parties predictably involve small amounts of

10  damages," reasoning that actions to address small damages are unlikely to be brought

11  individually.  *Shroyer*, 498 F.3d at 983.  Plaintiffs make no allegation that they

12  suffered small damages making individual actions unlikely.  Instead, they mimic a

13  legal conclusion by alleging "relatively small" damages, but fail to state any facts

14  supporting that conclusion or identifying – even approximately – how much

15  monetarily they believe they have been harmed.  While Plaintiffs allege that "it would

16  be virtually impossible for the class members individually to effectively redress the

17  wrongs done to them," this is precisely the type of allegation questioned by *Twombly*.

18  It tracks the language of the law, without any factual support.

19      More to the point, these conclusory, boilerplate allegations ready-made for any

20  consumer class action complaint are belied by the nature of the commercial contract

21  and service Plaintiffs have put at issue here – Internet advertising – as well as the only

22  other visible members of their purported class of "[a]ll persons (including companies)

23  who contracted with one or more Defendants for advertising at any time in the six (6)

24  years preceding the filing of the first Class Action Complaint in this action."  (SAC ¶

25  48.)  Plaintiffs purport to represent "thousands of class members dispersed

26  geographically throughout California and the country."  (*Id.* ¶ 49.)  Included among

27  those advertisers are some of the world's largest corporations, who are capable of

28  effectively bringing individual claims if they believe they have been aggrieved.

8

For example, Plaintiffs allege that Expedia.com – a business with revenue of over $2.2 billion in 2006 alone, was an advertiser damaged by Defendants' alleged wrongdoing. (*Id.* ¶ 44; Expedia Inc. 2006 Annual Report, Wilson Decl., Ex. 5).[4] Ford – another large corporation using Defendants' services to advertise for its trucks and automobiles – is also referenced. (*Id.* ¶ 3.) Billion dollar businesses can and do address their rights without need of a class action. More important, based on Plaintiffs' allegations, the Court plainly can see that Plaintiffs' claims do not "predictably involve small amounts of damages." *Discover Bank*, 36 Cal. 4th at 162.

### 3. Defendants Did <u>Not</u> "Carry out a Scheme to Deliberately Cheat Large Numbers of Consumers Out of Individually Small Sums of Money."

The final part of the *Discover Bank* test requires a court to consider whether it is "allege[d] that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 36 Cal. 4th at 162-63. Plaintiffs cannot ever satisfy this prong because it is undisputed that they are not consumers, nor are the businesses they purport to represent as a nationwide class. Further, as discussed above, considering the businesses Plaintiffs purport to represent, they cannot allege that their case involves "individually small sums of money" – this is not a case where Plaintiffs are seeking to recoup a hidden, nominal uniform charge or service fee wrongfully imposed on a vast sea of consumers. *See e.g.*, *Discover Bank*, 36 Cal. 4th at 154 ($29 fee for late payments and finance charge); *Shroyer*, 498 F.3d at 984 ($59 service fee).

Defendants anticipate Plaintiffs will argue that the provision is unconscionable. A contract provision is enforceable unless the party seeking to avoid enforcement establishes its procedural and substantive unconscionability. *Shroyer*, 498 F.3d at 981

---

[4] The court may, and is requested to, take judicial notice of this annual report filed with the SEC. *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006).

1   (citing *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 114, 99

2   Cal. Rptr. 2d 745 (2000)).[5]   Further, a contract found to be procedurally

3   unconscionable is still enforceable if its substantive terms are reasonable.  *Comb v.*

4   *PayPal, Inc.,* 218 F. Supp. 2d 1165, 1173 (N.D. Cal. 2002).  Plaintiffs bear the burden

5   of establishing unconscionability – Defendants need not disprove it.  *Crippen v.*

6   *Central Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1165, 22 Cal. Rptr. 3d 189

7   (2004).

8            In *Feldman*, the case most factually analogous here, the court analyzed an array

9   of challenged provisions in Google's AdWords Agreement and found that the

10  agreement was neither procedurally nor substantively unconscionable under California

11  law.  *Feldman*, 513 F. Supp. 2d at 243.  No different result is compelled in this case.

12  As in *Feldman*, advertisers sign up online and accept the Master T&C before they

13  may commence their advertising campaigns – with full and fair notice of the Master

14  T&C's terms, no obligation to accept them, no obligation to do business with

15  Defendants, no external influences, no penalty for ceasing to do business with

16  Defendants for any reason, and every opportunity to do business advertising with one

17  of Defendants' competitors if they do not wish to agree.  (Procedural

18  unconscionability, and an extended discussion of *Feldman*, is more thoroughly

19  addressed above, Part III.A.1, *supra*.)  Plaintiffs do not allege otherwise.

20           Further, the class waiver itself is not substantively unconscionable.  It does not

21  operate, as in *Discover Bank*, to effectively insulate Defendants from liability.

22  Moreover, *Discover Bank* makes clear that there is nothing inherently unconscionable

23  about a waiver of the right to pursue claims as a class representative.  All advertisers

24  _____

25  [5] Procedural unconscionability addresses the "manner in which agreement to the
    disputed term was sought or obtained."  *Szetela v. Discoverbank*, 97 Cal. App. 4th

26  1094, 1099, 118 Cal. Rptr. 2d 862 (2002).  Substantive unconscionability refers to the

27  "impact of the term itself."  *Id.*  Courts apply a sliding scale to weigh procedural and

28  substantive unconscionability.  *Armendariz,* 24 Cal. 4th at 114.

1    are provided the opportunity to litigate any of their claims in the state and federal

2    courts in Los Angeles.  Commercial entities have opted to determine the method of

3    litigating their business disputes – and there is no sound reason to prohibit them from

4    doing so.  *See Provencher*, 409 F. Supp. 2d at 1203 ("the parties' arbitration provision

5    and class action waiver here do not exempt Dell from the consequences of its alleged

6    wrongdoing. . . .  They only limit the means by which [plaintiff] can enforce his

7    substantive rights against Dell."); *Feldman*, 513 F. Supp. 2d at 241-43.

8    **B.    The SAC Should Be Dismissed Because the Named**

9    **Plaintiffs Fail To Individually State Any Claim and**

10    **Lack Standing To Sue for Alleged Injuries To Putative**

11    **Class Members.**

12    To establish Article III standing in a class action, named plaintiffs "must allege

13    and show that they personally have been injured, not that injury has been suffered by

14    other, unidentified members of the class to which they belong and which they purport

15    to represent."  *Warth v. Seldin*, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d 343

16    (1975).  "[I]f none of the named plaintiffs purporting to represent a class establishes

17    the requisite of a case or controversy with the defendants, none may seek relief on

18    behalf of himself or any other member of the class."  *O'Shea v. Littleton*, 414 U.S.

19    488, 494-495, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974*).*

20    Because Article III standing is required in all cases, "a plaintiff cannot include

21    class action allegations in a complaint and expect to be relieved of personally meeting

22    the requirements of constitutional standing, 'even if the persons described in the class

23    definition would have standing themselves to sue.'"  *Griffin v. Dugger*, 823 F.2d

24    1476, 1483 (11th Cir. 1987).  "A named plaintiff in a class action who cannot

25    establish the requisite case or controversy between himself and the defendants simply

26    cannot seek relief for anyone – not for himself, and not for any other member of the

27    class."  *Id.*  "Moreover, it is not enough that a named plaintiff can establish a case or

28    controversy between himself and the defendant by virtue of having standing as to just

11

1  one of many claims he wishes to assert.  Rather, <u>each claim must be analyzed</u>

2  <u>separately</u>, and a claim cannot be asserted on behalf of a class unless at least one

3  named plaintiff has suffered the injury that gives rise to that claim." *Id.* (emphasis

4  added).

5       Applying these jurisprudential rules, Plaintiffs lack standing to pursue any

6  claim in the SAC.  All of the claims are based upon injuries allegedly suffered by

7  putative class members.  None of the Plaintiffs states any claim individually.  With

8  respect to their contract and tort claims, although the Plaintiffs allege that they placed

9  ads with Defendants and that they paid for those ads, none alleges that it was actually

10 charged for clicks displayed by so-called "spyware" or appearing on "typosquatting,"

11 "parking," or "bulk registration" websites or that any of their own ads were displayed

12 on allegedly "untargeted" websites.  Likewise, although they allege that Defendants

13 "misrepresented the nature of [their] contractual commitment[s] and products [they]

14 offered and [were] offering," none of the named plaintiffs alleges that it relied on

15 these alleged misrepresentations, that its reliance was reasonable, or that its reliance

16 was detrimental to its own pecuniary interests. (SAC ¶ 79.)

17      As in *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal.

18 2005), the Plaintiffs here fail to allege they "actually relied on false or misleading

19 advertisements."  Indeed, the allegations in this action mirror the allegations which

20 were found lacking in *Laster*, as Plaintiffs herein fail to allege "that they saw, read, or

21 in any way relied on the advertisements." *Id.* at 1194.

22  **C.  All Claims Based Upon Conduct by Overture Allegedly**

23      **Occurring Before Yahoo! Acquired Overture Should Be**

24      **Dismissed.**

25      The same Article III standing requirements compel dismissal of all claims based

26 upon alleged conduct by Overture occurring prior to Overture's acquisition by

27 Yahoo!.  If the class representative only has a personal cause of action against one

28 defendant, and never had any claim of any kind against the remaining defendants, his

12

1    claim is not typical of the class and, therefore, the named plaintiff may not maintain

2    an action on behalf of a class against that particular defendant.  *Baltimore Football*

3    *Club, Inc. v. Superior Court*, 171 Cal. App. 3d 352, 359, 215 Cal. Rptr. 323 (1985);

4    *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 464 (9th Cir. 1973) (named

5    plaintiffs are not entitled to bring a class action against defendants with whom they

6    had no dealing).  Indeed, "[i]n the absence of a conspiracy between all of the

7    defendants, California has adopted the rule that a class action may only be maintained

8    against defendants as to whom the class representative has a cause of action."

9    *Baltimore Football Club, Inc.,* 171 Cal. App. 3d. at 359.  In this case, Plaintiffs have

10   not alleged any conspiracy between defendants Yahoo! and Overture, nor can they, as

11   discussed below, and none of the named plaintiffs' advertising contracts is alleged to

12   have predated Yahoo!'s acquisition of Overture.  Therefore, none of the claims in the

13   SAC is allegedly based upon conduct by Overture occurring prior to its acquisition.

14   Consequently, the named plaintiffs lack standing to pursue claims based upon any pre-

15   acquisition conduct by Overture, and those claims must be dismissed.

16        **D.    Plaintiffs' Breach of Contract Claims Should Be**

17               **Dismissed.**

18               **1.    Plaintiffs Have Failed to Plead How the Terms "Sponsored**

19                      **Search" and "Content Match" Are "Ambiguous, and How**

                       **Extrinsic Evidence Will Clarify These Terms Without**

20                     **Contradicting the Express Terms of the Agreement."**

21        In its Order, the Court found that the Master T&C is integrated and granted

22   Defendants' motion to dismiss Plaintiffs' contract claims "based upon defendants'

23   alleged breach of express contract provisions in the integrated contract."  (Order at 6.)

24   Among other things, the Court concluded that the allegations that Defendants made

25   false promises about their performance under the parties' Master T&C "appear to be

26   inconsistent with the terms of the Agreement" (and thus are barred by the parol

27

28

                                          13

1    evidence rule[6]) and that, in fact, "[t]he Agreement does not provide that

2    advertisements will not be placed in spyware, typosquatting sites, or other such

3    'undesirable' sites."  (*Id*. at 6.)  The Court, however, granted Plaintiffs leave to amend

4    so that they could attempt to allege "in what way" the terms "Sponsored Search" and

5    "Content Match" are "ambiguous, and how extrinsic evidence will clarify these terms

6    without contradicting the express terms of the Agreement."  (*Id*. at 6.)

7    In support of their breach of contract claim, Plaintiffs now allege that "Yahoo

8    promised to deliver its advertising customers two products: 'Sponsored Search' and

9    'Content Match.'"  (SAC ¶ 57.)  Plaintiffs allege that those terms are ambiguous, and

10   may be explained by extra-contractual statements made in marketing materials that

11   purportedly refer to these terms as "highly targeted" advertisement products.[7]

12   However, Plaintiffs have identified no ambiguity in the SAC as to the meaning of

13   these terms – they are simply "names Yahoo has given to its" products.  (SAC ¶ 25.)

14   And, as the Master T&C and the SAC reflect, Defendants promised no more than to

15   deliver its products to Plaintiffs.  In fact, the Court has already found that "defendants

16   do <u>not</u> promise in the Agreement to use such targeting initiatives, as opposed to

17   random placement," and acknowledged that the "Master T&C, Program Terms and

18   _____

19   [6] The parol evidence rule "generally prohibits the introduction of any extrinsic

20   evidence, whether oral or written, to vary, alter or add to the terms of an integrated

     written instrument."  *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343, 9 Cal. Rptr.

21   3d 97 (2004).  It also precludes "promissory fraud claims premised on prior or

22   contemporaneous statements at variance with the terms of a written integrated

     agreement.  *Casa Herrera*, 32 Cal. 4th at 346; *see also Banco Do Brasil, S.A. v.*

23   *Latian, Inc.*, 234 Cal. App. 3d 973, 1000, 285 Cal. Rptr. 870 (1991); *Coast Bank v.*

24   *Holmes*, 19 Cal. App. 3d 581, 590, 97 Cal. Rptr. 30 (1971) .

25   [7] Plaintiffs cite *Keith v. Buchanan,* 173 Cal. App. 3d 13, 220 Cal. Rptr. 392 (1985) to

26   argument that extra-contractual marketing materials "can be basis of the bargain."

     (SAC ¶ 60.)  *Keith* is inapplicable because it concerned a breach of warranty claim

27   under Cal. Uniform Comm. Code § 2313.  Here, Plaintiffs allege no breach of

28   warranty claim and the Court already has found that the contract is fully integrated.

1    any Insertion Orders constitute the entirety of the Agreement,[and] [a]s such, the

2    Agreement is fully integrated."  (Order at 4-6.)  As the Court established, the

3    integrated Master T&C provides Yahoo! complete discretion as to how its products

4    deliver the advertisements.  (Id.)

5        As in their prior pleading, "plaintiffs have not made clear in the SAC how the[]

6    terms ['Sponsored Search' and 'Content Match'] are ambiguous, and how extrinsic

7    evidence will clarify these terms without contradicting the express terms of the

8    Agreement."  (Order at 6.)  Accordingly, all of Plaintiffs' contract claims based upon

9    alleged breaches of the express terms of the Master T&C should be dismissed and

10   leave to amend a second time should be denied.  *Rutman Wine*, 829 F.2d at 738.

11              **2.  The Covenant of Good Faith and Fair Dealing is Inapplicable.**

12       The Court denied Defendants' first motion to dismiss to the extent that

13   plaintiffs' contract claim was based upon breach of the implied covenant of good faith

14   and fair dealing.  (Order at 7.)  Defendants now having an opportunity to brief this

15   issue, it is clear that Plaintiffs may not use the implied covenant to circumvent what

16   they expressly agreed to in the Master T&C.[8]

17       Plaintiffs allege in conclusory fashion that Yahoo! breached the covenant "by

18   collecting revenue [Yahoo!] knew, or reasonably should have known, were illegal as

19   well as violative of its contracts with advertisers."  (SAC ¶ 69.)  This claim must be

20   rejected.  Plaintiffs' allegation that Yahoo!'s placement of advertisements is in breach

21   of the implied covenant focuses upon the exact same conduct which forms the basis of

22   the breach of contract claim.  "A claim that merely realleges [a breach of contract] as

23   a violation of the covenant is superfluous."  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317,

24

25   _____

26   [8] Neither party dedicated any significant briefing to the issue on Defendants' first
     motion – the "claim" was not set forth as a separate claim at all, but rather, one throw-
27   away, boilerplate allegation at the end of Plaintiffs' breach of express contract count
     that Plaintiffs still have not attempted to plead as a separate claim.  (SAC ¶ 69.)  In
28   addition to the reasons set forth above, it fails under *Twombly* for insufficient facts.

352, 100 Cal. Rptr. 2d 352 (2003); *accord*, *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395, 272 Cal. Rptr. 387 (1990).  Because Plaintiffs' claim for breach of the covenant merely restates Plaintiffs' breach of contract claim, Plaintiffs have failed to state a valid independent claim for breach of the covenant.[9]

Further, under controlling California law, courts "are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement." *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808, 48 Cal. Rptr. 2d 747 (1995); *see also Hampshire Ins. Co. v. Ridout Roofing Co., Inc.*, 68 Cal. App. 4th 495, 505, 80 Cal. Rptr. 2d 286 (1998) (court would not impose covenant because it would limit express provisions which provided for insurer to settle cases at its discretion).  In *Third Story Music*, the court refused to invoke the covenant to second guess a production company's decision whether to market an artist's music where an agreement expressly allowed the defendant discretion to do so. *Id.* at 808-09.  The Court held that the defendant's obligations under the contract were not "illusory" because the defendant gave other adequate consideration – a promise to pay a guaranteed minimum amount no matter what marketing efforts were undertaken. *Id.* at 808.  Accordingly, the court held that the defendant owed no duty to act in good faith when exercising the discretion expressly granted to it by the contract. *Id.*; *see*

---

[9] The covenant is typically read into contracts "in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690, 254 Cal. Rptr. 211 (1988).  Moreover, "[the covenant] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349-50.  It is a "well-settled principle that the implied covenant cannot prohibit that which the contract specifically permits." *In re Late Fee and Over-Limit Fee Litig.*, 2007 WL 4106353 *11 (N.D. Cal. 2007).

16

*also PMC, Inc. v. Porthole Yachts, Ltd.*, 65 Cal. App. 4th 882, 891-92, 76 Cal. Rptr. 2d 832 (1998) (contract providing that buyer could terminate purchase agreement at will was not illusory because the agreement required the buyer to deposit money and incur costs which was adequate consideration for its discretionary termination power).

As the court made clear in *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376, 6 Cal. Rptr. 2d 467 (1992), it is axiomatic that a party cannot violate the implied covenant by doing something expressly allowed by a contract:

> We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms. The general rule [regarding the covenant] is plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing. *Id.* at 373-74.

The Master T&C explicitly and unequivocally provides Defendants with discretion to determine ad placement and position. (Weiss Decl., Ex. 1 ¶ 4, Sponsored Listings Program Terms and Conditions.) Indeed, the Court recognized, "the Agreement provides Defendants with sole discretion to make the '[f]inal decision as to inclusion, relevancy, placement and the like.'" (Order at 7.) In spite of this clear discretionary power, Plaintiffs assert that the covenant should be applied to impose on Defendants an obligation not to place Plaintiffs' advertisements in certain locations. Such application of the covenant directly contradicts the agreement's express terms.[10]

---

[10] As in *Third Story Music* and *PMC*, the Master T&C is not illusory because adequate consideration is provided. Advertisers have discretion to select the amount they are willing to pay for clicks (by bidding on keywords), and may change their bid at will. Defendants only receive payment by advertisers – at the amount selected by the advertiser – when an Internet user clicks on an ad. *See e.g., Feldman*, 513 F. Supp. 2d at 232, 238-239. And, under the Master T&C, advertisers may cease advertising at any time in their discretion or modify their bid amounts. (Wilson Decl., Ex. 3). Because Yahoo!'s discretion is subject to the advertisers' ability to reduce bid amounts at any

### E.    Plaintiffs' Common Counts Should Be Dismissed.

In an attempt to plead around the Court's dismissal of their contract claims, Plaintiffs allege "extra-contractual" common counts for restitution, unjust enrichment,[11] and money had and received.  To do so, they rely on promises that Defendants allegedly made regarding placement of ads.  However, as the Court correctly held in its Order, Defendants cannot be liable on a common count based upon a promise or obligation that varies, alters, or adds to the terms of the parties' integrated Agreement.  (Order at 7.)

In the Order, the Court found that the Master T&C "does not provide that advertisements will not be placed in spyware, typosquatting sites, or other such [allegedly] 'undesirable' sites" and that instead "[t]he Agreement provides defendants with sole discretion to make the '[f]inal decision as to inclusion, relevancy, placement and the like.'"  (*Id*. at 6-7.)  The Court rejected Plaintiffs' common count for unjust enrichment, holding that no equitable obligation regarding ad placement could be implied to vary the express terms of the Master T&C.  (*Id.* at 7.)  Plaintiffs' amended pleading compels no different finding now.

### F.    Plaintiffs' Misrepresentation and Civil Conspiracy Claims
Should Be Dismissed.

In its Order, the Court dismissed Plaintiffs' civil conspiracy claim, finding Plaintiffs "cannot maintain an action for civil conspiracy without sufficiently pleading

---

time or cease advertising, Yahoo!'s promise to place ads is not illusory.  *See PMC*, 65 Cal. App. 4th at 891 (financial detriment to buyer was sufficient consideration even when the detriment did not benefit the other party); Cal. Civ. Code § 1605 ("Any benefit conferred, or agreed to be conferred, upon the promisor … or any prejudice suffered, or agreed to be suffered … as an inducement to the promisor, is a good consideration for a promise").

[11] There "is no cause of action in California for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (2003); *see also In re Late Fee and Over-Limit Fee Litig.*, 2007 WL 4106353 *11 (N.D. Cal. 2007).

18

the elements of an underlying, independent tort claim" and Plaintiffs did not "plead a separate claim for fraud, or for any other tort."  (Order at 8.)  Plaintiffs attempt to cure this defect by adding in the SAC a claim for misrepresentation, but their current allegations fail to state a claim for misrepresentation or for conspiracy.

### 1.  Plaintiffs Have Not Adequately Pled a Misrepresentation Claim.

As a threshold matter, Plaintiffs have not alleged that they, or class members, relied upon any misrepresentation, that such reliance was reasonable and justifiable, or that such reliance was detrimental or otherwise injurious in fact.  Such allegations are required to state an intentional or negligent misrepresentation claim.  *See R & B Auto Center, Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327, 378, 44 Cal. Rptr. 3d 426 (2006); *Gonzalez v. Proctor and Gamble Co.*, 2007 WL 2700954 *5-6 (S.D. Cal. 2007); 5 Witkin, SUMMARY OF CAL. LAW (10th ed. 2005) Torts, § 772, at 1121.) [12]

Plaintiffs also fail to satisfy the particularity requirements of Fed. R. Civ. P 9(b).  Rule 9(b) requires that "the circumstances constituting fraud … be stated with particularity."  "This particularity requirement necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'"  *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 73, 269 Cal. Rptr. 337 (1990).  Consequently, where a plaintiff alleges an intentional or negligent misrepresentation claim, the plaintiff must state precisely the time, place and specific content of the allegedly misleading representations and the identities of the persons who allegedly made the misrepresentations.  *See Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th Cir. 2001); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th

---

[12] To the extent Plaintiffs claim fraud by omission, they do not allege that Defendants owed a duty to disclose.  *See Byrum v. Brand*, 219 Cal. App. 3d 926, 937-939, 268 Cal. Rptr. 609 (1990); *See also*, *Lingsch v. Savage*, 213 Cal. App. 2d 729, 735, 29 Cal. Rptr. 201 (1963); Cal. Civ. Code §1573(1).  Claims for fraud by omission are also subject to actual reliance, which Plaintiffs have failed to allege. *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 808, 66 Cal. Rptr. 3d 543 (2007).

Cir.1989) ("[M]ere conclusory allegations of fraud are insufficient."); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1400-01 (9th Cir. 1986). Moreover, "[t]o allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

Plaintiffs have not identified the times, places and content of the alleged misrepresentations.  Nor have they identified the misrepresentations upon which they or class members relied.  Although Plaintiffs do refer to certain statements appearing on Yahoo!'s website, they fail to specify when those statements appeared or whether any plaintiff or class member saw them and reasonably relied upon them.  Based on the requirements of Rule 9(b), Plaintiffs' allegations do not state a claim.

### 2.  Plaintiffs Have Not Identified Any Actionable Misrepresentation

The statements Plaintiffs identify are not actionable because they are both mere puffery and inconsistent with the Master T&C (and therefore barred by the parol evidence rule).  As the Court held in its Order, "[g]eneralized, vague and unspecified assertions" that Defendants allegedly promised to place class members' ads in "high quality," "substantive," or "popular" sites are "mere puffery."  (Order at 10.)

Faced with this, Plaintiffs allege that Defendants represented that Yahoo! promised "highly targeted" ads.  (SAC ¶ 24-26.)  The actual statement cited by Plaintiff, however, is critically different than what they represent. Yahoo! said it delivers highly targeted <u>customer leads</u>, not highly targeted <u>ads</u>:  "Yahoo!'s flagship product Sponsored Search delivers highly targeted customer leads to your business by allowing you to control placement within sponsored search results across the Web." (Wilson Decl., Exh. 4.)  If Yahoo! promised highly targeted ads, arguably it was promising a certain type of placement – but it did not promise this.

In context with the remainder of the Web page cited by Plaintiffs in their complaint, the distinction is that Defendants' products allow <u>advertisers</u> to target their

ads by selecting keywords relevant to what they are trying to promote or sell.  As the cited statement explains:  "Advanced match type enables [an advertiser] to target additional customers … [by] provid[ing] search users with relevant listings, even when the bidded keyword does not match word-for-word with the search query" and that "the Advanced match type also offers Excluded Words, which are words or phrases [the advertiser] choose[s] to prevent a listing from matching [an] irrelevant search query."  (*Id.*)  As these quotes make clear, the statements referenced in the SAC do <u>not</u> promise that Yahoo! will place ads in "highly targeted" places on the Internet.  Rather, they state that Yahoo! <u>allows advertisers</u> to obtain targeted <u>leads</u> (*i.e.*, potential customers) by bidding on terms most likely to drive users to see – and potentially click on – those ads.  Nowhere in the SAC is any explanation as to why these statements, considered in context, are misleading.  Plaintiffs do not allege that advertisers are unable to choose keywords targeting their ads to consumers, or that they received poorly targeted customer leads.  Therefore, they fail to state a claim.

### 3.  Plaintiffs' Conspiracy Claims Likewise Fail.

As Plaintiffs have not sufficiently alleged any predicate tort claim, Plaintiffs' civil conspiracy allegations fail.  The conspiracy claim also fails because the allegations are insufficient.  "A cause of action for civil conspiracy may not arise … if the alleged conspirator … was not personally bound by the duty violated by the wrongdoing and was acting only as the agent …of the party who did have that duty."  *Doctor's Co. v. Superior Court*, 49 Cal. 3d 39, 44, 260 Cal. Rptr. 183 (1989); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) (coconspirator must "owe[] a duty to plaintiff recognized by law" and be "potentially subject to liability for breach of that duty.")

Here, Plaintiffs have not sufficiently pled "an agreement" among the alleged co-conspirators. *See Wasco Prods., Inc. v. Southall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).  Further, Plaintiffs have not alleged any independent "wrongful conduct" by the persons who allegedly are Defendants' co-conspirators.  None of the John Doe

1  Companies who allegedly conspired with Defendants is alleged to have participated

2  in any false or misleading statement made to Plaintiffs; nor did they allegedly violate

3  any duty owed toward Plaintiffs or class members.[13]  In the absence of an independent

4  breach of duty, the John Doe Companies cannot be liable for civil conspiracy.

5  *Doctor's Co.*, 49 Cal. 3d at 44.  Therefore, Defendants also cannot be liable.

6        **G.    Plaintiffs' Section 17200 Claims Should Be Dismissed.**

7        In its Order, the Court found Plaintiffs' allegation that Defendants had

8  distributed ads in "non-targeted ways" to state a claim under Cal. Bus. & Prof. Code

9  § 17200 (the "UCL"). (Order at 10.)  As detailed above, it is now apparent that the

10 basis for this allegation was a misrepresentation of Defendants' statements.

11 Defendants never represented that ad displays would be targeted, but rather that

12 Plaintiffs may target their ads by choosing keywords.  (Wilson Decl., Exh. 4.)

13 Moreover, since the Order, two cases discussed below have made it clear that

14 Plaintiffs' claim is not viable under the UCL.  *See Linear Tech. Corp. v. Applied*

15 *Materials, Inc.*, 152 Cal. App. 4th 115, 61 Cal. Rptr. 3d 221 (2007) and *Hall v. Time*

16 *Inc.*, 158 Cal. App. 4th 847, 70 Cal. Rptr. 3d 466 (2008).  Under *Twombly*'s clarified

17 pleading standard, this Court should dismiss Plaintiffs' section 17200 claim.

18        **1.  Plaintiffs Lack Standing.**

19        The UCL protects consumers and competitors from unlawful, unfair or

20 fraudulent business practices.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949, 119 Cal. Rptr.

21 2d 296 (2002).  Unless they are competitors of the defendant, corporate plaintiffs may

22 not rely on the UCL.  *See Linear Tech.*, 152 Cal. App. 4th at 135; *see also Rosenbluth*

23 *Int'l, Inc. v. Superior Court*, 101 Cal. App. 4th 1073, 1078, 124 Cal. Rptr. 2d 844

24 (2002) (UCL does not apply to "sophisticated corporations" who "presumably ha[ve]

25 the resources to seek damages or other relief from [defendant]").  Plaintiffs may not

26

27 [13] Overture is a wholly owned subsidiary of Yahoo!; the two cannot have conspired as a matter of law.  *See Thomsen v. W. Elec. Co.*, 680 F.2d 1263, 1265-66 (9th Cir.1982);

28 *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 591 (C.D. Cal. 1998).

1    bring a UCL claim as they are neither competitors of Defendants nor consumers, and

2    do not allege to be either.

3                        **2.  Plaintiffs Cannot Allege Causation.**

4           Dismissal is also warranted because the Plaintiffs have not asserted the

5    causation required under the UCL.  In *Hall*, a case decided after this Court issued its

6    Order, the court found that Proposition 64 requires Plaintiffs to establish a "causal

7    connection or reliance on the alleged misrepresentation."  *Hall*, 158 Cal. App. 4th at

8    855.  In *Brown v. Bank of America, N.A.*, 457 F. Supp. 2d 82 (D. Mass. 2006), a case

9    that *Hall* found to be correctly decided, the bank's customers claimed they were

10   damaged because they had received insufficient notice of ATM fees.  The court held

11   that the plaintiffs could not establish causation because the customers were required to

12   accept the imposition of an additional fee by means of an on-screen prompt during the

13   ATM transaction.  *Id.* at 89.  Specifically, the court held that the customers "cannot

14   establish loss causation because the click-through screen breaks the causal connection

15   between the [allegedly] defective notice and the payment of the fee."  *Id.*

16          Here, as in *Brown*, Plaintiffs cannot allege the requisite causation because

17   Plaintiffs set the prices they are willing to pay, the keywords to which their ads are

18   matched, and they are charged money only after an Internet user clicks on an ad.  Any

19   causal connection is broken when the advertiser submits its bids.  That is, like the

20   ATM user who could simply reject the fee, if Plaintiffs find inadequate the value of

21   the clicks they are receiving, they may change their bids or stop advertising.  Keeping

22   bids at the levels Plaintiffs allege were injurious is analogous to the decision of ATM

23   users to accede to an on-screen prompt.  As in *Brown*, any allegedly excessive

24   payment was due to Plaintiffs' decision to pay the price-per-click that they set.

25   Because Plaintiffs have failed to allege the requisite causation, their UCL claim fails.

26                  **3.  Plaintiffs Do Not Sufficiently Allege a Predicate Violation on**
                         **Which a UCL Claim Can Be Based.**
27

28          Still further, Plaintiffs have not sufficiently alleged that Defendants have

                                              23

1    engaged in any (1) unfair business activity, (2) fraudulent business activity, or (3)

2    which law, statute or regulation Defendants have violated.[14]

3           With respect to unfair business activities, the Court found that Plaintiffs

4    sufficiently alleged unfair business practices by their allegation that Defendants

5    warranted that Plaintiffs' ads would be "targeted" and that "the term 'targeted' has

6    a specific meaning in the context of internet advertising."  (Order at 10.)  However, as

7    discussed above, Plaintiffs have misrepresented what Yahoo! actually said in the

8    statement they rely on, warranting dismissal.  (*See* Part F.2, *supra*.)

9           With respect to fraudulent activities, Plaintiffs' cite to Civil Code §§ 1572,

10   1709 and 1710.  However, to establish claims for actual fraud, fraudulent deceit and

11   deceit under those statutes, Plaintiffs must show: (1) misrepresentation, i.e., false

12   representation, concealment, or nondisclosure; (2) knowledge of falsity or scienter; (3)

13   intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting

14   damage.  *See Diaz v. Federal Express Corp.*, 373 F. Supp. 2d 1034, 1066-1067 (C.D.

15   Cal. 2005).  Plaintiffs have not sufficiently alleged the elements of fraud.

16   Specifically, Plaintiffs have failed to allege that they relied upon any purported

17   misrepresentations made by Defendants.  Plaintiffs have not alleged that Defendants

18   intended to not perform the terms of its Agreement.  Rather, the Court has already

19   recognized that "defendants do not promise in the Agreement to use such targeting

20   initiatives, as opposed to random placement" and that "the Agreement provides

21   Defendants with sole discretion to make the '[f]inal decision as to inclusion,

22   relevancy, placement and the like.'" (Order at 6-7.)

23          With respect to their allegation under Cal. Bus. Prof. Code § 17500 that

24   members of the public are likely to be deceived by Defendants' purported promises of

25

26   [14] While Plaintiffs allege that Defendants placed listings in typosquatting and spyware
     sites, Plaintiffs do not allege facts which support their standing to make this claim.
27   Plaintiffs do not allege that their own protected trademarks were typosquatted or that
     their computers or information was at risk by reason of spyware sites.
28

24

"highly targeted" services, in addition to mischaracterizing Defendants' statements as detailed above, Plaintiffs have failed to show that any reasonable business would rely on any purported representations.  See *Cook Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 245-246 (9th Cir.1990) (advertisements that amount to "mere" puffery not actionable because no reasonable consumer relies on puffery).

### H.   Pursuant To Rule 12(e), Plaintiffs Should Be Required To Differentiate The Group Allegations.

Fed. R. Civ. P. 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  The SAC is impermissibly vague and ambiguous because it makes only general allegations against all defendants as a group.  The SAC does not differentiate between the conduct of each defendant or explain how its alleged conduct injured each named plaintiff.  Before Defendants should be required to answer any pleading in this case, Plaintiffs should be required to "separate each act by each defendant into individually numbered paragraphs" so that Defendants may "ascertain from the Complaint which defendant committed which alleged act."  *Veltman*, 928 F. Supp. at 1164; *see also Hamilton v. Signature Flight Support Corp.*, 2005 WL 1514127 *4 (N.D. Cal. 2005); *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996).  Plaintiffs also should be required to separately state their own claims individually so that their individual claims may be assessed as well as their standing to sue on behalf of putative class members.

## IV.   CONCLUSION

The Court should dismiss Plaintiffs' claims without further leave to amend.

Dated: February 29, 2008                    /s/_____

                                            Dennis L. Wilson
                                            KEATS MCFARLAND & WILSON LLP
                                            Counsel for Defendants,
                                            Yahoo!, Inc. and Overture Services, Inc.

25