Paul R. Keisel, Esq. (CBN 119584)
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211
Telephone: 310/854.4444
Facsimile: 310/854.0812

**Attorneys for Plaintiffs**
**Additional Counsel Appear on Signature Page**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| IN RE YAHOO! LITIGATION | Case No.: CV-06-2737 CAS (FMOx) |
|---|---|
| | **MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT** |
| | Date:   Apr. 21, 2008 |
| | Time:   10:00 a.m. |
| | Courtroom: 5 |
| | Honorable Christina A. Snyder |

# **TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      Motions to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        B.      Motion For a More Definite Statement . . . . . . . . . . . . . . . . . . . 5

IV.     LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Yahoo's Class Action Waiver Argument Has Been
                Waived And Is Unconscionable in California . . . . . . . . . . . . . . . . . 5

        B.      Plaintiffs Have Stated Claims and Each Has Standing . . . . . . . . . 10

        C.      Plaintiffs Have Stated a Proper Claim Against Overture . . . . . . . . 11

        D.      Plaintiffs Have Pled a Claim for Breach of Contract and
                For Breach of the Implied Covenant of Good Faith and
                Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                1.      Breach of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                2.      Yahoo Improperly Seeks Reconsideration of the
                        Court's Prior Ruling Sustaining Plaintiffs' Good
                        Faith and Fair Dealing Claim . . . . . . . . . . . . . . . . . . . . . . 18

        E.      Plaintiffs Properly Pled Unjust Enrichment and Other Claims . . . . 19

        F.      Plaintiffs Adequately Plead Misrepresentation and Conspiracy . . . 20

                1.      Misrepresentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                2.      Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

G.   Plaintiffs Sufficiently Allege UCL Claims . . . . . . . . . . . . . . . . . . . . 22

H.   The SAC Adequately Alleges Defendants' Practices . . . . . . . . . . . 24

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ii

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

<u>Page No(s)</u>

*A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div.*
852 F.2d 493, 497 n.2 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Amchem Products, Inc. v. Windsor*
521 U.S. 591, 619-20 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods.*
2007 U.S. Dist. LEXIS 43681, at *10 (N.D. Cal. June 1, 2007) . . . . . . . . . . . . 17

*Assoc. of Data Processing Serv. Org., Inc. v. Camp*
397 U.S. 150, 153 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bank of the West v. Resolution Trust Corp.*
1997 U.S. Dist. LEXIS 1581, *8 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . 17

*Bly-Magee v. California*
236 F.3d 1014, 1018 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Brown v. Bank of America, N.A.*
457 F. Supp. 2d 82 (D. Mass. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bureerong v. Uvawas*
922 F. Supp. 1450, 1462 (C.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cahill v. Liberty Mut. Ins. Co.*
80 F.3d 336, 337-38 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Canyon County v. Syngenta Seeds, Inc.*
2008 U.S. App. LEXIS 5904, *13 n. 8 (9th Cir. Mar. 21, 2008) . . . . . . . . . . . . . 4

*Carnegie v. Household Intern. Inc.*
376 F.3d 656, 664 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*CP Nat. Corp. v. Bonneville Power Admin.*
928 F.2d 905, 912 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Eugene N. Gordon, Inc. v. La Z-Boy, Inc.*
2007 U.S. Dist. LEXIS 67753, *8-9 (C.D. Cal. Sept. 13, 2007) . . . . . . . . . . . . 20

*Erickson v. Pardus*
127 S. Ct. 2197, 2200 (2007) (per curiam) (quoting Bell Atlantic Corp. v.
Twombly, 127 S. Ct. 1955, 1964 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hamilton v. Signature Flight Support Corp.*
2005 WL 1514127, *8-9 (N.D. Cal. June 21, 2005) . . . . . . . . . . . . . . . . . . . . . . 25

Horizon Outdoor, LLC v. City of Industry, CA
2003 WL 25576576, * 2 (C.D. Cal. Nov. 4, 2003) . . . . . . . . . . . . . . . . . . . . . . . 22

*Integrated Health Professionals, Inc. v. Pharmacists Mut. Ins. Co.*
422 F. Supp.2d 1223 (E.D. Wash. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ismart Intern. Ltd. v. I-Docsecure, LLC*
2005 WL 588607, n.5 (N.D. Cal. Feb. 14, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jorst v. D'Ambrosio Bros. Inv. Co.*
2001 WL 969039 *9 (N.D. Cal. Aug. 13, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lectrodryer v. SeoulBank*
77 Cal. App. 4th 723, 726 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Man Fishing Prods*
2007 U.S. Dist. LEXIS 43681, at *10 (N.D. Cal. June 1, 2007) (quoting Trident
Center, 847 F.2d at 569) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Meredith v. Erath*
2001 U.S. Dist. LEXIS 16902, *2 (C.D. Cal. Sept. 19, 2001) . . . . . . . . . . . 18, 22

*McHenry v. Renne*
84 F.3d 1172 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*McPhail v. First Command Financial Planning, Inc.*
2007 WL 2207761, *6-7 (S.D. Cal. July 30, 2007) . . . . . . . . . . . . . . . . . . . . . . . 5

iv

*Miller Glen & Helen Aircraft, Inc.*
777 F.2d 496, 498 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Moore v. Kayport Package Express*
885 F.2d 531, 540 (9th Cir. 1989) (citation omitted) . . . . . . . . . . . . . . . . . . . . . . 21

*Nationwide Savings v. Perry*
11 Cal. App. 4th 1657, 1662, 1670 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Nichia Corp. v. Seoul Semiconductor Co., Ltd.*
2007 WL 2533729 *7 (N.D. Cal. Aug. 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Northrop Corp. v. McDonnell Douglas Corp.*
705 F.2d 1030, 1043 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.,
69 Cal. 2d 33, 39 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*Sagan v. Apple Computer, Inc.*
874 F. Supp. 1072, 1077 (C.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Scheur v. Rhodes*
416 U.S. 232, 236 (1974) (overruled on other grounds) . . . . . . . . . . . . . . . . . . . . 4

*Shields v. Barrow*
58 U.S. 130, 139 (1855) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Trident Center v. Conn. Gen. Life Ins. Co.*
847 F.2d 564, 569-70 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17, 18

*United States Postal Serv. v. Amer. Postal Workers Union*
893 F.2d 1117, 1122 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Veltmann v. Walpole Pharm.*
928 F. Supp. 1161, 1163-64 (M.D. Fla. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Warth v. Seldin*
422 U.S. 490, 500 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wong v. Regents of the Univ. of Cal.*
410 F.3d 1052, 1062 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## **STATE CASES**

*Allen v. Powell*
248 Cal. App. 2d 502, 509 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Bell v. Farmers Ins. Exchange*
115 Cal. App. 4th 715 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Cicone v. Urs Corp.*
183 Cal. App. 3d 194, 208 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

City & County of San Francisco v. State of California
128 Cal. App. 4th 1030, 1042 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dore v. Arnold Worldwide, Inc.*
39 Cal. 4th 384, 391 (2006) (quoting Pacific Gas, 69 Cal. 2d at 37) . . . . . . 14, 15

*Gentry v. Superior Court*
42 Cal. 4th 443, 457 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*Ghirardo v. Antonioli*
14 Cal. 4th 39, 50 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hall v. Time Inc.*
158 Cal. App. 4th 847 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hayter Trucking v. Shell W. E&P*
18 Cal. App. 4th 1, 19 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hirsch v. Bank of America*
107 Cal. App. 4th 708, 717 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Indep. Assoc. of Mailbox Ctr. Owners v. Superior Ct.*
133 Cal. App. 4th 396, 404 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Linear Tech. Corp. v. Applied Materials, Inc.*
152 Cal. App. 4th 115, 135 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Melchior v. New Line Productions, Inc.*
106 Cal. App. 4th 779 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rest. Restitution, §1 & Kossian v. Amer. Nat. Ins. Co.*
254 Cal. App. 2d 647 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rosenbluth Int'l, Inc. v. The Superior Ct. of Los Angeles County*
101 Cal. App. 4th1073 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Vasquez v. Superior Ct.*
4 Cal. 3d 800, 811 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

## STATUTES/CODES

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 12(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 19(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## OTHER

Wright & Miller, Federal Practice & Procedure
§ 1278, at 477 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

1 Witkin, Summary of California Law, Contracts
§1017 at p.1105 (10th ed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT

## I.    INTRODUCTION

Defendants improperly seek dismissal of two claims the Court has already sustained in response to Defendants' first motion to dismiss, the good faith and fair dealing claim and the UCL claim.  Defendants' *de facto* request for reconsideration should be denied.

Defendants also belatedly raise, for the first time in this two-year old litigation, a class action waiver defense.  Defendants' have waived this argument because they did not raise it in its first motion to dismiss or in the related *Checkmate* litigation involving the same class and the same contract.  In addition, California law considers a class action waiver like Defendants' to be an unconscionable term.  Defendants' remaining arguments are equally untenable and should be rejected.

## II.    STATEMENT OF FACTS

Defendant Yahoo is one of the largest search engines on the Internet.  Its primary business consists of placing ads on its own and others' web sites. Defendant Overture, a wholly owned subsidiary of Yahoo (hereinafter collectively referred to as "Yahoo"), provided technology and systems for showing, tracking, and charging for search advertisements.  The Class consists of entities that paid Yahoo to place their ads on web sites visited by persons who might be interested in the advertised goods or services.  (SAC ¶¶ 20-22.)

Whether a business advertises on TV, in a newspaper, or on the Internet, the business strives to maximize the return on its advertising investment by displaying the ad in front of persons interested in the product.  Just as traditional advertising costs more in some publications or TV networks than others, so too do the prices of Internet advertising vary.  The market value of Internet ads is higher when the ads are shown to users who are, for example, actively seeking certain products or actively engaged in purchasing decisions for such products.  (*Id.* ¶¶ 3, 23.)

Yahoo offers two types of ad placement services to its customers, "Sponsored Search" and "Content Match."  Although Yahoo's contract -- a

uniform, boilerplate set of terms and conditions unilaterally imposed by Yahoo on its advertising customers -- does not define the terms "Sponsored Search" and "Content Match," those terms suggest on their face they provide targeted ad delivery. Further, Yahoo prominently promotes the two services on its web site as targeted ad placement services. Yahoo explains that Sponsored Search advertising displays ads at search engines, to reach "search users" who are actively engaged in searching the web, and that "Content Match" advertising displays ads at content sites, showing ads "along with relevant articles, product reviews, and more." (*Id.* ¶¶ 23, 25.)

Advertisers buy ads from Yahoo, at Yahoo's high prices, because Yahoo claims to offer high-quality sites with high-quality users through Sponsored Search and Content Match. Yahoo specifically touts the quality of its sites and the third party sites at which Yahoo displays ads: Yahoo describes those third party sites as "popular [and] high-quality," specifically naming such distinguished partners as Microsoft, CNN, and the Wall Street Journal. Yahoo represents to its customers that their ads are only shown to users who have shown interest in corresponding products or services (*e.g.*, by conducting a related search). (*Id.* ¶¶ 23-24.)

Yahoo's contract itself does not provide a definition of "Sponsored Search" and "Content Match," but the meaning of those services are set forth in the promotional materials Yahoo uses to attract prospective ad placement customers to purchase those services and the terms are used in the Insertion Orders that advertisers send to Yahoo to place their ads. Yahoo consistently represented ad displays would be "highly targeted," and would be shown to users "searching for what you sell." Yahoo represented that "a listing for your business will appear when Internet users enter searches related to your keywords." Yahoo further represented that "relevant listings are displayed to interested users." Yahoo thereby promised only to show class members' ads when the ads are actually

relevant to users' interests, as revealed through users' search terms or web browsing. (*Id.* ¶ 26, 29, 61.)

Despite these promises, Plaintiffs' and the other class members' ads were and are often placed in locations that have nothing to do with "sponsored searches" or "content matches." Without Plaintiffs' and the Class's authorization, Yahoo shows advertisers' ads in contexts the advertisers never agreed or wanted to be associated with, including illegal spyware, pop-ups and typosquatting sites. (*Id.* ¶ 30.)[1]

Thus, contrary to Yahoo's contractual obligations to class members, Yahoo's relationships with spyware vendors, untargeted placement providers, and other "syndication partners" have caused class members' ads to appear without *any* targeting, resulting in advertisers paying for untargeted traffic worth far less than what Yahoo charges, and far less than class members agreed to pay under the mis-portrayal that traffic would all be targeted. (*Id.* ¶ 27.) Yahoo does not tell Plaintiffs their ads are displayed on an untargeted basis; that "Sponsored Search" ads appear even when users are not conducting searches at all; and that "Content Match" ads are displayed in pages containing nothing but ads, without any "matching content." (*Id.* ¶ 28.)

As a result of Yahoo's placing its customers' ads in untargeted, unwanted and illegal locations, the Class has paid Yahoo premium prices not only for the Sponsored Search and Content Match ad placements they bargained for, but also for the odious placements for which they did not bargain, and for which market prices are far less. Yahoo and its syndication partners pocket the difference, causing class members to incur un-bargained for payments to Yahoo. (*Id.* ¶ 46.)

Plaintiffs assert claims for common law breach of contract, unjust enrichment, misrepresentation and civil conspiracy and for statutory violations under the Unfair Competition Law.

---

[1]     Detailed descriptions of illegal spyware, pop-ups, typosquatting, bulk registration and domain parking are alleged at ¶¶ 33-45 of the SAC.

1 | III.   **LEGAL STANDARDS**

2 |     **A.**   **Motions to Dismiss**

3 |     Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the

4 | claim showing that the pleader is entitled to relief." "Specific facts are not

5 | necessary; the statement need only 'give the defendant fair notice of what the ....

6 | claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct.

7 | 2197, 2200 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.

8 | Ct. 1955, 1964 (2007)).  Accordingly, to avoid a Rule 12(b)(6) dismissal, a

9 | complaint need not contain detailed factual allegations; rather, it must plead

10 | "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127

11 | S. Ct. at 1974.[2]

12 |     In considering a 12(b)(6) motion, a court assumes the truth of all of the

13 | complaint's factual allegations, including all reasonable inferences to be drawn

14 | from the facts alleged, and construes them in the light most favorable to the

15 | nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.

16 | 1996).  The court must also construe the complaint to achieve "substantial justice."

17 | *Miller Glen & Helen Aircraft, Inc.*, 777 F.2d 496, 498 (9th Cir. 1985).  The

18 | question presented by a motion to dismiss is not whether the plaintiff will prevail

19 | in the action, but whether he is entitled to offer evidence in support of the claim.

20 | *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds).

21 |

22 | ---

[2]   In *Twombly*, the Supreme Court applied a new pleading standard to a
23 | complaint that alleged an antitrust conspiracy based on nothing more than
24 | "conscious parallelism." *Id.* at 1965-69.  The concerns articulated in *Twombly* do
not exist here, and the Ninth Circuit has not ruled that *Twombly* extends beyond
25 | antitrust "conscious parallelism" cases. *See Canyon County v. Syngenta Seeds,*
26 | *Inc.*, 2008 U.S. App. LEXIS 5904, *13 n. 8 (9th Cir. Mar. 21, 2008) (declining to
decide whether *Twombly*'s pleading standard applies to a RICO complaint).  For
27 | these reasons, the pleading standard set forth in *Erickson*, a case decided two
28 | weeks after *Twombly*, applies here.  More importantly, this issue is ultimately
beside the point, as Plaintiffs' highly detailed SAC easily passes muster under any
pleading standard, including under *Twombly*.

### B.   Motion For a More Definite Statement

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). "The situations in which a Rule 12(e) motion is appropriate are very limited." 5A Wright & Miller, Federal Practice and Procedure § 1377 (1990). A motion for a more definite statement must be considered in light of the liberal pleading standards of Rule 8(a). *See* Fed. R. Civ. P. 8(a)(2) (a complaint need only include a "short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (explaining that motions for a more definite pleading are "viewed with disfavor"). A motion for a more definite statement should be denied "unless the defendant literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1462 (C.D. Cal. 1996).

## IV.   LEGAL ARGUMENT

### A.   Yahoo's Class Action Waiver Argument Has Been Waived And Is Unconscionable in California.

Yahoo contends, incorrectly, that a class action waiver clause in the Master Terms and Conditions Agreement ("T&C") with class members bars Plaintiffs' claims.

First, Yahoo's class waiver argument is, by any other name, a motion to strike the class allegations pursuant to Rule 12(f). A defendant is required under Rule 12(f) to timely file a motion to strike related to class allegations. *See McPhail v. First Command Financial Planning, Inc.*, 2007 WL 2207761, *6-7 (S.D. Cal. July 30, 2007) ("More than a year after plaintiffs filed the CSAC, defendants now move to strike the class allegations . . . . [T]he Court finds the motion to strike these class allegations untimely" under Rule 12(f)). The class waiver cannot apply to Plaintiffs' individual claims, and must be directed solely at

the class allegations. Yahoo was required to raise this argument within 20 days after service of the complaint.  Fed. R. Civ. P. 12(f).  However, Yahoo made a calculated litigation decision on its first motion to move only against Plaintiffs' claims on substantive grounds, so as to bind effectively all class members.  In doing so, it chose to forgo -- and thereby waived -- its class waiver defense by waiting more than one year to challenge the class allegations.[3]

Second, Yahoo raised multiple contract arguments based on the same T&C in its first motion to dismiss without ever mentioning the class action waiver. Yahoo's delay in raising what amounts to a Rule 8(c) affirmative defense has prejudiced Plaintiffs, resulting in a waiver of the defense.  *See* 5 Wright & Miller, Federal Practice & Procedure § 1278, at 477 ("Generally, a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case."); *United States Postal Serv. v. Amer. Postal Workers Union*, 893 F.2d 1117, 1122 (9th Cir.1990) (failure to plead six-month statute of limitations, or otherwise assert the defense in district court, waived the defense).  A defendant who neglects to raise an affirmative defense in its first responsive motion may raise that argument for the first time in a subsequent motion, but "only if the delay does not prejudice the plaintiff."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Magana v. Commw. of the N. Mariana Islands*, 107 F.3d 1436 (9th Cir. 1997)).

Here, Plaintiffs have been prejudiced by Yahoo's late assertion of waiver. *See Jorst v. D'Ambrosio Bros. Inv. Co.*, 2001 WL 969039 *9 (N.D. Cal. Aug. 13, 2001) (failure to raise contractual limitations defense prejudiced plaintiff where "parties have proceeded through almost a year of litigation, including the depositions of multiple witnesses and preparing the summary judgment motions."); *Integrated Health Professionals, Inc. v. Pharmacists Mut. Ins. Co.*, 422 F. Supp.2d 1223 (E.D. Wash. 2006) (undue delay in raising affirmative

---

[3]    That Yahoo has waived its class waiver defense is also evidenced by Yahoo's conduct in *Checkmate Strategic Group, Inc. v. Yahoo* (No. 05-4588) ("*Checkmate*").  *See* pages 7-8 *infra*.

defense of estoppel prejudiced plaintiff).  Plaintiffs (and the Court) have labored over multiple motions, engaged in multiple case management and scheduling conferences, served and reviewed settlement purposes discovery, participated in expensive and protracted mediation, and modified the prior *Checkmate* settlement to preserve Plaintiffs' claims in this case.  *See Nichia Corp. v. Seoul Semiconductor Co., Ltd.*, 2007 WL 2533729 *7 (N.D. Cal. Aug. 31, 2007) ("Violations of … agreed to or court-imposed case limitations have a prejudicial cascading effect on the rest of the case:  the remainder of the schedule laid out by the court months in advance, and understood by the parties, would have to be altered as well. Such disruption is not harmless.") (citing *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005)).

Third, Yahoo is judicially estopped from asserting the class waiver clause because it stipulated to class certification in the *Checkmate* click fraud litigation, which involved the same class of customers and the same T&C as in this case. Indeed, Yahoo expressly agreed to exempt the present class's claims from the release in *Checkmate* in exchange for Plaintiffs' withdrawal of their objections to the *Checkmate* settlement.

The United States Supreme Court has held that in order to be certified, a class must satisfy the requirements of Rule 23 (except with respect to issues concerning manageability at trial), regardless of whether class certification is for purposes of settlement or trial.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997).  Having stipulated to a class in *Checkmate*, Yahoo is judicially estopped from arguing here that the same contractual bar in *Checkmate* now precludes Plaintiffs' claims on behalf of the same class.  *See Carnegie v. Household Intern. Inc.*, 376 F.3d 656, 664 (7th Cir. 2004) (where the defendant has stipulated to class certification for settlement purposes but the settlement is disapproved, that defendant is judicially estopped from challenging certification on the merits).  As Judge Posner observed in *Carnegie*, the defendant "[was an] enthusiastic proponent[] of class treatment until [its] opportunistic change of

1      heart." *Id.* Yahoo has been equally opportunistic. Because Yahoo (1) stipulated

2      to certification of the *Checkmate* settlement class in the face of the class action

3      waiver clause, (2) failed to assert the clause in response to the objections in

4      *Checkmate*, and (3) supported the *Checkmate* settlement and release embracing the

5      same class members before this same Court, Yahoo is estopped from taking the

6      inconsistent position that the clause should now, for the very first time, apply to

7      the same class members.

8      Fourth, Yahoo's class action waiver is unconscionable under controlling

9      California precedent. In *Gentry v. Superior Court*, 42 Cal. 4th 443, 457 (2007),

10      the California Supreme Court reaffirmed the rule that class action waiver clauses

11      are unconscionable and void as against public policy when their practical effect is

12      to exculpate a defendant from its unlawful conduct. Despite this clear holding,

13      Yahoo nonetheless mistakenly says the class action waiver is enforceable.

14      Yahoo relies almost exclusively on the California Supreme Court's earlier

15      decision in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005). Yahoo

16      interprets *Discover Bank* as holding that California only disfavors class action

17      waiver clauses where damages are miniscule and the party with superior

18      bargaining power engages in a scheme to cheat a large number of unsophisticated

19      consumers. *See* Def. Mem. at 4. Yahoo quotes a passage from *Discover Bank* but

20      fails to advise this Court that the California Supreme Court in *Gentry* expressly

21      rejected Yahoo's interpretation of the passage. Contradicting Yahoo's argument,

22      the *Gentry* court explained:

> 23 [T]he above quoted passage in *Discover Bank* was not intended to
> 24 suggest that consumer actions involving minuscule amounts of
> damages were the only actions in which class action waivers would
> 25 not be enforced. Rather, *Discover Bank* was an application of a more
> general principle: that although "[c]lass action and arbitration waivers
> 26 are not, in the abstract, exculpatory clauses," such a waiver can be
> 27 exculpatory in practical terms because it can make it very difficult for
> 28 those injured by unlawful conduct to pursue a legal remedy.

*Gentry*, 42 Cal. 4th at 457 (quoting *Discover Bank*, 36 Cal. 4th at 161).

The *Gentry* court held that its earlier ruling on unconscionability in *Discover Bank* was not limited to cases where the recovery available to an individual plaintiff would be "minuscule." Indeed, the court stressed that even a recovery in the tens of thousands of dollars[4] may be insufficient to make a class action waiver enforceable. The court rejected the argument that a class action waiver is unenforceable only when class actions are "essential" to the preservation of a statutory right. Rather, the court held, the issue is whether prohibiting class actions would make it "significantly" harder to vindicate the plaintiffs' rights. *Id.* at 450 n.7. Thus, the *Gentry* test is a practical one, examining whether the class action ban would pose a real world economic or technical impediment to pursuit of the claims by some or all of the class members. *See id.*

Here, the class waiver in the T&C is precisely the type of exculpatory clause envisioned in *Gentry*. By contractually banning class claims, Yahoo effectively insulates itself from virtually any attack regarding its practices. For the vast majority of Yahoo's advertisers, the ban presents a real world practical bar, because their individual claims are far too modest when compared with the cost, time commitment and effort required to establish each claim. In fact, most of Yahoo's advertisers lack the technical and financial wherewithal to recognize, investigate, document and support their claims. Given the technical complexity of internet advertising and of proving the illegality of Yahoo's untargeted ad placement practices, very few of Yahoo's advertisers would have sufficient incentive to finance and pursue an individual claim. Indeed, the claims here differ from the more traditional face-to-face contractual dispute, because Yahoo is in exclusive possession of the internet traffic history and advertising partner records necessary to support each claim, which magnifies the difficulty and expense of individual litigation. Thus, here, the widespread and diffuse nature of the claims, coupled with the complexity of the subject matter and the practical difficulty of

---

[4] The *Gentry* court cited *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2005), for the proposition that an award as large as $37,000 may not be "ample incentive" to pursue an individual suit. *Gentry*, 42 Cal. 4th at 458.

facing a pre-armed adversary, all demonstrate the exculpatory character of the class action ban, just as was the case with the ban found to be unconscionable by the court in *Gentry*. *Id.* at 458.

Yahoo claims these public policies are less important in the commercial context, implying small businesses and other advertisers can "stick up for themselves." But the unconscionability test for class waivers has been extended to commercial agreements. In *Indep. Assoc. of Mailbox Ctr. Owners v. Superior Ct.*, 133 Cal. App. 4th 396, 404 (2005), a class of franchisees challenged the class action waiver in the arbitration clauses of their respective individual commercial agreements with their franchisor. The class argued that the ban on class wide arbitration was unconscionable because it "would lead to costly and duplicative proceedings." *Id.* The court of appeals agreed, relying on *Discover Bank* and emphasizing that an "important policy reason for allowing class actions is to promote judicial economy and streamline the litigation process in appropriate cases, involving common issues of law and fact." *Id.* at 405. Yahoo's class waiver clause is exculpatory pursuant to *Gentry* and, therefore, unconscionable and unenforceable.

## B.    Plaintiffs Have Stated Claims and Each Has Standing.

The SAC alleges that "Yahoo has been charging [Plaintiffs] premium prices for placing ads completely outside of Yahoo's Sponsored Search and Content Match services (as Yahoo itself describes those products)." (SAC ¶ 9.) Yahoo does not (and cannot) deny that it charged and collected from each individual Plaintiff for such ad placements. In fact, in its two motions to dismiss, Yahoo contends it was ***entitled*** to collect these extra-contractual payments from Plaintiffs, because it never promised to provide the targeted advertising Plaintiffs say they were promised. In other words, Plaintiffs have paid Yahoo for a benefit of the bargain they never received, which Yahoo says it never agreed to provide, and Plaintiffs all suffered a personal injury as a result. Nothing more is required to set forth a "case or controversy" within the meaning of Article III of the Constitution.

1    Despite this clear controversy, Yahoo alleges Plaintiffs lack standing

2    because "[a]ll of the claims are based upon injuries allegedly suffered by putative

3    class members." Def. Mem. at 12. Yahoo is mistaken. Named Plaintiffs

4    individually paid inflated prices for what Yahoo promised to be targeted ads (SAC

5    ¶ 9) when in fact Yahoo delivered (and says it was free to deliver) untargeted ads.

6    It is well-settled that standing to challenge the legality of an act does not

7    depend on the ultimate merits of the plaintiffs' contentions nor the size of the

8    harm, see *Warth v. Seldin*, 422 U.S. 490, 500 (1975), but only on whether the

9    interest sought to be protected is within the zone of interest to be protected by the

10   law in question. *Assoc. of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S.

11   150, 153 (1970). In contrast with the indirect discrimination or environmental

12   claims in Yahoo's cases, each of the named Plaintiffs here have alleged a classic

13   contract and deceit claim in which they personally were overbilled for inflated

14   advertising prices for targeted advertising Yahoo says it was not obligated to

15   deliver. The fact that Yahoo says it was entitled to charge and collect these

16   inflated charges is irrelevant to the question of standing. Yahoo admits that

17   Plaintiffs all paid money to Yahoo for advertising. Plaintiffs' express allegation

18   that they were all overbilled satisfies the personal injury component of standing.[5]

19   **C.    Plaintiffs Have Stated a Proper Claim Against Overture**

20   The T&C, by its express terms, makes Overture a necessary party to this

21   action. Yahoo's argument that Overture should not be a defendant ignores the

22   T&C and is untimely. Yahoo should have raised the point in its earlier motion.

23   An entity is a necessary party if in its absence complete relief cannot be

24   accorded among those already parties. Fed. R. Civ. P. 19(a)(1)(A). The

25   "complete relief" clause of Rule 19(a) addresses the interest in comprehensive

26   resolution of a controversy and the desire to avoid multiple lawsuits regarding the

27   same cause of action. *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d

28

---

[5]    Yahoo has exclusive possession of records reflecting that it billed Plaintiffs
(and class members) for ad displays on spyware, typosquatting and parking sites.

1030, 1043 (9th Cir. 1983). Status as a "necessary" party is not judged by any prescribed formula, but instead "can only be determined in the context of particular litigation." *CP Nat. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (citations omitted). Necessary parties are those "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." *Id.* (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1855)).

The T&C is permeated with references to Overture as a party to the contract.[6] Since Plaintiffs allege Overture's breach of the agreement, Overture's absence would obstruct complete relief between the parties. The fact that Plaintiffs seek restitution for amounts paid to Overture further supports Overture's status as a necessary party. *See Ismart Intern. Ltd. v. I-Docsecure, LLC*, 2005 WL 588607, n.5 (N.D. Cal. Feb. 14, 2005) (joint company is likely a necessary party to the action if plaintiff is to be entitled to restitution as "it is the general rule that a judgment may not be entered against a person who is not a party to the litigation, and any judgment which does so is void to that extent.").

---

[6]    For example, the agreement states that while Overture "operates as a separate business entity," it provides "access" to Yahoo's programs. Ex. 1 to Def. Mem. ¶ 1. Under the T&C, Plaintiffs were required "to pay Overture all charges to your account for any Program in which you enroll," *id.* ¶ 2, and to "direct all communication relating to any Program … directly to Overture and not to any other entity." *Id.* ¶ 15. Further, even prior to Yahoo's acquisition of Overture in late 2003, Overture itself was the party to the ad placement contracts with Plaintiffs and the Class. (SAC ¶¶ 12-15 ("At all relevant times, [Plaintiff] placed ads with Defendants and paid Defendants for the placement of those ads." Plaintiff has confirmed that at least two of the Plaintiffs, Metrodate and Mika's Wedding, placed ads with Overture prior to the acquisition.).)

### D.   Plaintiffs Have Pled a Claim for Breach of Contract and For Breach of the Implied Covenant of Good Faith and Fair Dealing.

#### 1.   Breach of Contract

In ruling on Yahoo's first motion to dismiss, the Court dismissed Plaintiffs' claim for breach of contract with leave to amend to clarify how the terms "Sponsored Search" and "Content Match" are "ambiguous, and how extrinsic evidence will clarify these terms without contradicting the express terms of the Agreement." (Oct. 30, 2006 Order at 6.)[7] In view of the clarified allegations in the SAC, Yahoo's motion to dismiss the breach of contract claim should be denied.  Additionally, under controlling precedent, because Plaintiffs allege extrinsic evidence in the SAC, Plaintiffs' breach of contract claim cannot be resolved at the motion to dismiss stage. *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div.*, 852 F.2d 493, 497 n.2 (9th Cir. 1988); *Trident Center v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 569-70 (9th Cir. 1988).

Yahoo's promise to provide Sponsored Search and Content Match targeted advertising services is central to this case, and the meaning of those two terms goes to the heart of Plaintiffs' claim for breach of contract.  (SAC ¶¶ 6-10, 23, 25, 28, 30, 42-43, 46, 50, 55-70.)  Sponsored Search and Content Match are the sole services Yahoo sells pursuant to the T&C, and every Insertion Order sets out the class member's purchase of Sponsored Search, Content Match, or both.  (SAC ¶ 60-61.)[8] Notwithstanding the critical importance of these terms, which were

---

[7]   Yahoo's statement "Plaintiffs have identified no ambiguity in the SAC" regarding the meaning of the terms "Sponsored Search" and "Content Match" is flat-out incorrect. Def. Mem. at 14. The SAC alleges those terms are undefined in the T&C, and that the meaning of those terms comes from the descriptions given to them in marketing and promotional materials. (SAC ¶¶ 60-61.)

[8]   SAC ¶ 61 provides: "Yahoo has admitted that its advertising customers' Insertion Orders are part of their contracts with Yahoo…. The Insertion Orders pertain only to the two products entitled Sponsored Search and Content Match – proper noun terms Yahoo itself created, for which Yahoo's own statements are the best authority as to what the parties intended …."

coined by Yahoo, nowhere are they defined in the T&C.  (*Id.* ¶¶ 60-61.)  These services are, however, defined in Yahoo's marketing and promotional materials. When read alongside the T&C, those materials confirm that Yahoo agreed to place class members' ads using one or both these products, in exchange for payment at premium rates.  (*Id.* ¶¶ 7, 59-60, 67.)

As the California Supreme Court explained in *Pacific Gas*, the "meaning of a writing can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words." *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968) (Traynor, C.J.) (citations omitted).  Further, "[t]he exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended."  *Id.*  It follows that "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Dore v. Arnold Worldwide, Inc.,* 39 Cal. 4th 384, 391 (2006) (*quoting Pacific Gas*, 69 Cal. 2d at 37); *accord Hayter Trucking v. Shell W. E&P,* 18 Cal. App. 4th 1, 19 (1993) (a court's determination that a writing appears to have only one interpretation, of itself, does not bar consideration of extrinsic evidence relevant to interpretation).

Here, extrinsic evidence in the form of advertising and promotional materials is relevant to determine the intent of the parties that entered into Yahoo's advertising agreement.  The T&C provides only general terms concerning payment and licensing, yet nowhere describes the advertising products Yahoo will provide. *See* Ex. 3 to Def. Mem., pp. 1-8.  Thus, essential terms of the T&C – *i.e.*, the meaning of "Sponsored Search" and "Content Match" – are missing.  And yet thousands of customers purchase those two services precisely because Yahoo touts their great targeted ad benefits in Yahoo's marketing and promotional materials.

Because the T&C does not define these essential terms, the T&C is ambiguous and its meaning must be determined by reference to extrinsic evidence. *See Dore*, 39 Cal. 4th at 391; *Pacific Gas*, 69 Cal. 2d at 37.

Yahoo's website represents that Sponsored Search advertising displays ads at search engines, to reach "search users" who are actively engaged in searching the web. (SAC ¶ 25.) Yahoo's website represents that Content Match advertising displays ads at content sites, showing ads "along with relevant articles, product review, and more." (*Id.*) As described in Yahoo's marketing and promotional materials, these services are "highly targeted." (*Id.* ¶ 60.) Yahoo's descriptions of "Sponsored Search" and "Content Match" provide necessary substance to the T&C by defining the services the class agreed to purchase and Yahoo promised to provide.

In the face of its myriad representations concerning its "highly targeted," "high quality" ad placements, and in the face of online advertising industry usage and custom, Yahoo takes the remarkable position that it is free to place ads ***anywhere***, and charge a premium for them, without breaching the contract. Yahoo's argument rests on the following inapposite disclaimer:

> Overture does not guarantee that your listing will be placed in or available through Sponsored Listings Marketplace Distribution Network, the Sponsored Listings Marketplace or the Sponsored Listings Marketplace Results, nor does Overture guarantee that your listings will appear in a particular position or rank, and Overture reserves the right to not place your listings and to stop placing or to remove your listings at any time for any reason. Final decision as to inclusion, relevancy, placement and the like is at Overture's sole discretion.

(*Id.* ¶ 63.) Yahoo argues that this language grants it discretion to place ads in any manner it chooses, ***even entirely at random***, notwithstanding the fact that it is charging for what it represented to be targeted ad placements.

Yahoo's self-serving interpretation of the disclaimer is incorrect. The disclaimer merely gives Yahoo the discretion not to display Plaintiffs' ads at all.

There may be legitimate reasons to exercise this discretion. For example, Yahoo may experience a technical failure that prevents it from placing certain ads. The disclaimer merely grants Yahoo the ability to decline to place ads, in which case Plaintiffs are not charged, and Yahoo forgoes associated per click payments. (*Id.* ¶ 64.) Yahoo's disclaimer also avoids "guaranteeing" an ad will receive a "particular" rank or position, and it affords Yahoo "sole discretion" with respect to "inclusion, relevancy, placement and the like." This portion of the disclaimer may mean that placing an order for a Sponsored Search ad, for example, does not guarantee a class member's ad will appear first (or second, third, etc.) in the list of ads that appear when a certain search is run on Yahoo's web site. But no fair reading of the disclaimer, in light of the rest of the T&C, can possibly mean Yahoo is free to deliver untargeted advertising or to deliver advertising other than the Sponsored Search and Content Match services specified in the corresponding Insertion Orders.[9]

The T&C is clear about one thing, and is entirely consistent with Yahoo's promotional materials: If Yahoo elects to deliver any advertising at all, it must deliver the Sponsored Search and/or Content Match services set forth in Yahoo's Insertion Orders.[10] For these reasons, extrinsic evidence clarifies the meaning of

---

[9]     Similarly, the "as-is" and "third party" disclaimer language in sections 9 and 10 of the T&C is not inconsistent with Yahoo's promise to provide targeted advertising services. (SAC ¶ 68.) The Court has ruled that this provision is ambiguous and that further evidence is needed to determine the impact of these provisions. (Oct. 30, 2006 Order at 6 n. 3.)

[10]     "[A] contract should receive an interpretation that, among other things, renders it reasonable and capable of being put into effect." *Marathon Steel Co. v. Tilley Steel, Inc.*, 66 Cal. App. 3d 413, 417 (Cal. Ct. App. 1977) (*citing* Cal. Civ. Code, § 1643 ("A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.")). Yahoo's arguments run afoul of this rule. If the disclaimer were interpreted to allow Yahoo to charge full price for placing ads in unwanted, untargeted sites that do not conform to the

the agreement without contradicting its express terms, and Plaintiffs have alleged a breach of contract insofar as Yahoo received payment for, but failed to deliver, its "Sponsored Search" and "Content Match" products.  (SAC ¶¶ 55-70.)

Yahoo's motion also must be denied because the interpretation of the T&C cannot be decided at this stage of the proceedings.  Under the California Supreme Court's opinion in *Pacific Gas*, "[i]t is not up to the Court to determine whether the language of the contract is on its face clear and unambiguous…. [T]he Court must consider whether extrinsic evidence proffered by plaintiff is relevant to 'prove a meaning to which the language of the instrument is reasonably susceptible.'"  *Bank of the West v. Resolution Trust Corp.*, 1997 U.S. Dist. LEXIS 1581, *8 (N.D. Cal. 1997) (*quoting Pacific Gas*, 69 Cal. 2d at 37).

Likewise, the Ninth Circuit has explained:

> Under *Pacific Gas*, it matters not how clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor how squarely it addresses the issue before the court:  the contract cannot be rendered impervious to attack by parol evidence.  If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court must consider extrinsic evidence of possible ambiguity.

*Trident Center*, 847 F.2d at 570.  Addressing this issue again in *A. Kemp Fisheries*, the Ninth Circuit held, "*courts may not dismiss on the pleadings* when one party claims that extrinsic evidence renders the contract ambiguous."  852 F.2d 497 n.2 (emphasis added).  Rather, "[t]he case must proceed beyond the pleadings so that the court may consider the evidence."  *Id.*

This is a hard-and-fast rule.  "Even if Defendant is correct that the language of the contract supports its interpretation, not Plaintiff's, the Ninth Circuit requires that the Court give Plaintiff 'an opportunity to present extrinsic evidence as to the intention of the parties in drafting the contract.'"  *Applied Elastomerics, Inc. v. Z-*

---

targeting instructions specified in the Insertion Orders, the agreement would be unconscionable and illusory.  (SAC ¶ 65.)

1  *Man Fishing Prods.*, 2007 U.S. Dist. LEXIS 43681, at *10 (N.D. Cal. June 1,

2  2007) (*quoting Trident Center*, 847 F.2d at 569).  Thus, under controlling

3  authority, Plaintiffs' breach of contract claim cannot be dismissed prior to the

4  development of the factual record.

### 2. Yahoo Improperly Seeks Reconsideration of the Court's Prior Ruling Sustaining Plaintiffs' Good Faith and Fair Dealing Claim.

7  In its first motion to dismiss, Yahoo sought dismissal of Plaintiffs' good

8  faith and fair dealing claim.  Plaintiffs opposed the dismissal, and Yahoo

9  addressed their argument in its reply.  The Court denied dismissal on this ground

10  in its October 30, 2006 Order:  "To the extent that plaintiffs' claim for breach of

11  contract is based upon the breach of the implied covenant of good faith and fair

12  dealing, defendants' motion to dismiss plaintiffs' breach of contract claim is

13  DENIED."  Oct. 30, 2006 Order at 7.

14  The SAC includes no new allegations concerning the good faith and fair

15  dealing claim.  *Compare* SAC ¶ 69 with Plaintiffs' Consolidated Amended

16  Complaint ¶¶ 61-62, Docket No. 13.  Nevertheless, Yahoo seeks another bite at the

17  apple, asserting that "[n]either party dedicated any significant briefing to the issue

18  on Defendants' first motion," Def. Mem. at 15 n.3.  Yahoo, however, had every

19  opportunity in its initial motion to address this issue as fully as it saw fit.  By

20  challenging the same allegations a second time, Yahoo untimely seeks

21  reconsideration of the Court's October 30, 2006 Order.  Motions for

22  reconsideration are governed by Local Rule 7-18 and must be brought within a

23  "reasonable" time.  *Meredith v. Erath*, 2001 U.S. Dist. LEXIS 16902, *2 (C.D.

24  Cal. Sept. 19, 2001).

25  It is equally clear the Court's ruling was correct.  As the Court explained,

26  "Plaintiffs allege that defendants have breached the duty of good faith 'by

27  collecting revenues for placements they knew, or reasonably should have known,

28  were illegal.'"  (Oct. 30, 2006 Order at 7.)  Although Yahoo argues the covenant

cannot be implied to prohibit acts expressly authorized by the contract, Plaintiffs

demonstrate above that, to the contrary, the T&C does not give Yahoo any such authorization, and that Plaintiff is entitles to prove as much to a fact finder. Further, Yahoo's argument ignores a key allegation, which the Court recognized in its Order – that Yahoo has breached the implied covenant by collecting revenues for ad placements that Yahoo knows, or reasonably should know, are illegal. There is no provision in the contract (nor could there be one, without violating public policy) that grants Yahoo this authority.

### E.    Plaintiffs Properly Pled Unjust Enrichment and Other Claims

Yahoo next erroneously claims there is no cause of action for unjust enrichment under California law.  Def. Mem. at 18 & n.11.  However, in *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657 (1992), on a claim for unjust enrichment, the trial court had sustained a demurrer without leave to amend.  The Court of Appeal reversed, holding the complaint could be amended to state a valid cause of action for unjust enrichment.  *Id.* at 1662, 1670; *see also Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 717 (2003); *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  In *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996), the California Supreme Court cited *First Nationwide Savings* with approval in the course of holding a plaintiff was "entitled to seek relief under traditional equitable principles of unjust enrichment,"  thus recognizing unjust enrichment as a viable theory of recovery and a viable cause of action.  *Id.*; *see also* 1 Witkin, *Summary of California Law*, Contracts §1017 at p.1105 (10th ed. 2005) (citing *Rest. Restitution*, §1 & *Kossian v. Amer. Nat. Ins. Co.*, 254 Cal. App. 2d 647 (1967)).

Yahoo's reliance on *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779 (2003), is misplaced.  The actual holding in *Melchior* is that causes of action for conversion and unjust enrichment were preempted by the Copyright Act.  *Id.* at 793.  The further observation that there "is no cause of action in California for unjust enrichment" is *obiter dicta*.  This Court should not rely on such *dicta* in the face of clear contrary authority by a court of superior jurisdiction.

1   *City & County of San Francisco v. State of California*, 128 Cal. App. 4th 1030,

2   1042 (2005).

3   **F.   Plaintiffs Adequately Plead Misrepresentation and Conspiracy**

4   **1.   Misrepresentation**

5   Plaintiffs have pled all the elements of misrepresentation (a predicate for

6   civil conspiracy, see October 30, 2006 Order at 7-8) with particularity.[11]  Yahoo's

7   challenge to Plaintiffs' pleading of reliance is ill-founded.  Plaintiffs have alleged

8   reliance by alleging that "advertisers buy ad placements from Yahoo precisely

9   because of Yahoo's promise, and contractual obligation, to deliver targeted

10  advertising through its Sponsored Search and Content Match products."  (SAC ¶

11  8.)  By paying Yahoo premium rates for what turned out to be untargeted and

12  illegal ad placements, Plaintiffs and the other members of the Class have been

13  damaged by Yahoo's material misrepresentations and omissions.  (*Id.* ¶ 87.)

14  Likewise, Yahoo's argument that Plaintiffs have failed to plead actionable

15  misrepresentation is without merit.  Where, as here, a defendant makes false

16  statements without reasonable grounds for such belief, the defendant may be held

17  liable for misrepresentation.  *Cicone v. Urs Corp.*, 183 Cal. App. 3d 194, 208

18  (1986); *see also*, *Vasquez v. Superior Ct.*, 4 Cal. 3d 800, 811 (1971)

19  (misrepresentations were actionable where plaintiffs alleged that "[f]reezers were

20  of high quality and guaranteed for a lifetime, and that they were sold at a

21  reasonable retail price," when they were not).  This Court recognized the specific

22

---

23  [11]   The elements of a claim for intentional misrepresentation are (1) a

24  misrepresentation, (2) made with knowledge of its falsity and (3) with an intent to
    defraud or induce reliance, (4) justifiable reliance, and (5) resulting damage. (5

25  Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 772, p. 1121).  The
    elements of a claim for negligent misrepresentation are similar: (1) a

26  misrepresentation of material fact, (2) made without any grounds for believing it to

27  be true, (3) with the intent that plaintiff rely on it, (4) reliance on the
    misrepresentation, unaware of its falsity, and (5) resulting damages. *Eugene N.*

28  *Gordon, Inc. v. La Z-Boy, Inc.*, 2007 U.S. Dist. LEXIS 67753, *8-9 (C.D. Cal.
    Sept. 13, 2007).

terms used by Yahoo to promote its advertising services, such as "targeted," "Sponsored Search" and "Content Match" have identifiable characteristics and measurable meaning within the advertising and Internet industries -- thus, the terms are actionable misrepresentations.

These allegations more than satisfy the specificity requirement of Rule 9(b). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express,* 885 F.2d 531, 540 (9th Cir. 1989) (citation omitted). Where, as here, the case involves corporate fraud, "the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded." *Id.*

Here, Plaintiffs have identified *verbatim* the content of the materially misleading statements and omissions made by Yahoo. (SAC ¶¶ 23-26.) Plaintiffs also have explained in detail how Yahoo's material misrepresentations are misleading and the specific material omissions that render Yahoo's representations false. (*Id.* ¶¶ 27-30.) Plaintiffs have even identified where Yahoo made the material misrepresentations: in promotional materials on its website (*id.* ¶¶ *23-30*) and in bills tendered to Plaintiffs and the other members of the Class (*Id.* ¶¶ 83-84).[12]

### 2.    Conspiracy

To state a cause of action for civil conspiracy, facts must be alleged that show the formation and operation of a conspiracy, the wrongful act of any of the conspirators and resulting damage. *Allen v. Powell*, 248 Cal. App. 2d 502, 509

---

[12]    In contrast, in *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001), on which defendants here rely, the court held that the plaintiff's False Claims Act claim did not satisfy Rule 9(b) where the allegations merely recited the elements of the claim and failed to put defendant on notice as to what specific claims were false and why. The plaintiff in *Bly-Mage*e alleged only that one defendant "concealed the fraudulent submission of false claims . . . to avoid repayment of funds to the United States" and conspired with other defendants to "defraud the United States by obtaining payment of fraudulent claims." *Id.*

1   (1967).  Here, Plaintiffs allege that Yahoo and its syndication partners agreed to

2   distribute Plaintiffs' and the Class's advertisements through illegal typosquatting

3   sites and spyware.  (SAC ¶¶ 33-34, 84-85.)  Plaintiffs have been damaged by

4   paying Yahoo top dollar for, but not receiving, highly targeted ad placements.  (*Id.*

5   ¶¶ 39, 46.)

6        Yahoo argues Plaintiffs have not alleged an agreement.  To the contrary, the

7   SAC alleges "Yahoo had syndication agreements with certain Third Party partners

8   that have engaged in (and continue to engage in) nefarious and predatory web

9   practices such as typosquatting, [and] spyware."  (SAC ¶ 84.)  It is through these

10  syndication agreements that Yahoo and its Third Party partners have placed

11  Plaintiffs' and the other class members' advertisements in spyware and on

12  typosquatting sites.  (*Id.* ¶¶ 39, 85.)  *See Allen*, 248 Cal. App. 2d at 509 ("general

13  allegations of agreement have been held sufficient").  Further, Plaintiffs allege that

14  the use of spyware and typosquatting sites is illegal.  (SAC ¶¶ 33-44.)

15       **G.    Plaintiffs Sufficiently Allege UCL Claims**

16       Yahoo argues Plaintiffs may not seek relief under the UCL because they are

17  corporations, Plaintiffs did not rely on any statement made by Yahoo, and that its

18  statements are mere puffery.  Def. Mem. at 22-25.  But those arguments were

19  already rejected by the Court in its earlier findings that: (i) Plaintiffs had standing

20  (Order at 8-9), (ii) Plaintiffs have alleged injury in fact (Order at 9-10, n.4), and

21  (iii) "targeted" advertising has a specific meaning and is not puffery (Order at 10).

22  Yahoo offers no change in the law to justify reconsideration of its previously

23  rejected arguments.  Such a late, improperly framed, and untimely motion for

24  reconsideration should be denied out of hand.  *See Horizon Outdoor, LLC v. City

25  of Industry, CA*, 2003 WL 25576576, * 2 (C.D. Cal. Nov. 4, 2003); *Meredith*,

26  2001 U.S. Dist. LEXIS 16902 at *2.

27

28

The UCL applies here[13] and prohibits "any unlawful, unfair or fraudulent business act or practice." Bus & Prof Code § 17200. Any one of the three prohibited practices is a violation of the UCL. As alleged, Yahoo violated the UCL in all of these ways. (SAC ¶¶ 90-93.)

Even if the standards invented by Yahoo governed, Yahoo's argument fails. Yahoo claims Plaintiffs have failed to plead two elements: reliance and Yahoo's intention not to perform as promised. Regarding reliance, this Court earlier noted that Yahoo's misrepresentations and omissions are ones on which Plaintiffs and other customers "could be expected to rely." (October 30, 2006 Order at 10.) Reliance may be presumed under the circumstances. *See Vasquez*, 4 Cal.3d at 814 (*quoting* 12 Williston on Contracts 480 (3d ed. 1970) ("Where representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed that the representations were relied on")). Regarding Yahoo's "intention," the SAC speaks of planning on the part of Yahoo, stating "Yahoo knowingly has manipulated that

---

[13] Yahoo cites *Rosenbluth Int'l, Inc. v. The Superior Ct. of Los Angeles County*, 101 Cal. App. 4th1073 (2002), for the proposition that the UCL does not apply to corporations. However, that court found on a summary judgment motion that:

> undisputed evidence established that its [Rosenbluth's] only customers are sophisticated corporations, most in the Fortune 1000, each of which negotiates contracts individually with Rosenbluth and each of which presumably has the resources to seek damages or other relief from Rosenbluth should it choose to do so.

*Id.* at 1077-78. Here, by contrast, Yahoo unilaterally imposes on all its advertising customers the same boilerplate terms and conditions. These terms and conditions leave no room for Plaintiffs to individually negotiate their contracts with Yahoo. Yahoo's ad placement services are offered to anyone that wishes to advertise on the Internet, from Dell Computer to Crafts By Veronica.

    Yahoo also incorrectly claims that *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007), provides a basis for reconsideration. Def. Mem. at 22. But *Linear* did nothing to change or expand the holding of *Rosenbluth*.

1   system [of advertising] for its own benefit." (SAC ¶ 31.) Besides, Yahoo's
2   contract arguments admit intent.

3        Finally, Yahoo argues it caused Plaintiffs no harm. As discussed above,
4   Yahoo misrepresented the nature of the advertising it contractually promised its
5   customers. By this action, Plaintiffs and other customers paid far too much for the
6   advertising Yahoo actually provided. Further, Yahoo subjected its advertisers, like
7   Plaintiffs, to placement in undesirable and illegal locations, while still charging
8   premium prices. Yahoo never disclosed the true nature of the advertising
9   provided, and never obtained Plaintiffs' or the class' authorization for such
10  placements. (SAC ¶¶ 28, 30.)

11       Yahoo offers the recent *Hall* and *Brown* cases in support of its argument.[14]
12  *See Hall v. Time Inc.*, 158 Cal. App. 4th 847 (2008); *Brown v. Bank of America,*
13  *N.A.*, 457 F. Supp. 2d 82 (D. Mass. 2006). While *Hall* states that Proposition 64
14  requires plaintiffs to establish a "causal connection or reliance on the alleged
15  misrepresentation" – Plaintiffs' UCL claims are not based exclusively on
16  misrepresentations, but include the entirety of Yahoo's conduct in violation of its
17  contractual promises as well as Yahoo's placement of ads in illegal locations.
18  *Hall.*, 158 Cal. 4th at 855. Moreover, this very standard allows Plaintiffs to
19  proceed simply on a proof of reliance *or* causation. Plaintiffs have adequately
20  alleged both. *Brown* is equally inapposite, because the customer's consent there
21  was received before any fee was levied. *See Brown*, 457 F. Supp. 2d at 89. Here,
22  while Plaintiffs choose and bid on search terms, they do so only for targeted ads
23  (hence the reason for bidding on search terms), and have never authorized Yahoo
24  to place ads randomly or on illegal sites.

25  **H.   The SAC Adequately Alleges Defendants' Practices**

26       Asserting incorrectly that the SAC is "impermissibly vague," Yahoo argues
27  the SAC should be revised to differentiate between the conduct of Yahoo and

28
────────────────
[14]    While neither decision was available prior to Yahoo's earlier Motion to
Dismiss, they also offer no new legal standard.

Overture.  Def. Mem. at 25.  Yahoo cites three cases -- none of which involved claims against a parent corporation and its wholly-owned subsidiary, as is the case here (SAC ¶¶ 16-17), in which the subsidiary is the contracting party.  Each case is inapposite.  First, *McHenry v. Renne,* 84 F.3d 1172 (9th Cir. 1996), considered a complaint against twenty different defendants, with all claims listed in a single sentence thirty lines long.  *Id*. at 1174.  Second, in *Veltmann v. Walpole Pharm.,* 928 F. Supp. 1161, 1163-64 (M.D. Fla. 1996), the court dismissed a *pro se* plaintiff's complaint against eight different defendants that failed in multiple respects to comply with federal pleading requirements.  Third, *Hamilton v. Signature Flight Support Corp.*, 2005 WL 1514127, *8-9 (N.D. Cal. June 21, 2005), actually supports Plaintiffs' position – the court denied the defendant's 12(e) motion.  The detailed SAC thoroughly apprises Yahoo and Overture of the claims against them.  Thus, this argument should be rejected as well.

## V.   CONCLUSION

For the foregoing reasons, Yahoo's motion to dismiss should be denied.

Respectfully submitted,

Dated:  March 28, 2008

**KIESEL, BOUCHER & LARSON**
Paul R. Kiesel
8648 Wilshire Blvd.
Beverly Hills, CA 90211
(310) 854-4444
**Liaison Counsel for Plaintiffs**

**BONI & ZACK LLC**
Michael J. Boni
15 St. Asaphs Road
Bala Cynwyd, PA 19004
(610) 822-0200

**DONOVAN SEARLES, LLC**
Michael D. Donovan
1845 Walnut Street, Suite 1100

Philadelphia, PA 19103
(215) 732-6067

**LAW OFFICES OF BENJAMIN EDELMAN**
Benjamin G. Edelman
27A Linnaean Street
Cambridge, MA 02138
(617) 379-0820

**Co-Lead Counsel for Plaintiffs**

**PROOF OF SERVICE**

STATE OF CALIFORNIA                    ) ss:
COUNTY OF LOS ANGELES )

     I am employed in the City and County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action. My business address is 8648 Wilshire Boulevard, Beverly Hills, California 90211-2910.

     On March 28, 2008, I served the foregoing document(s) described as: **MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT** on the interested parties by placing ( ) the original ( X ) a true and correct copy thereof in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

[X] **VIA OVERNIGHT MAIL:**

VIA : By delivering such documents to an overnight mail service or an authorized courier in an envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

[ ] **VIA U.S. MAIL:**

I am readily familiar with the firm's practice for collection and processing of correspondence for mailing.  Under that practice such envelope(s) would be deposited with the U.S. postal service with postage thereon fully prepaid, at Beverly Hills, California.

[ ] **VIA PERSONAL DELIVERY:**

I personally delivered such envelope(s) by hand to the offices of the addressee pursuant to CCP § 1011.

[ ] **VIA FACSIMILE:**

The interested parties receiving the above-referenced document via facsimile have agreed to accept same via facsimile transmission, and the facsimile transmission report indicated that the transmission was complete and without error.  A copy of that report, which was properly issued by the transmitting machine, is attached hereto.

[ ] **STATE:**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] **FEDERAL:**

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     I declare under penalty of perjury under the laws of the state of California that the above is true and correct and was executed on March 28, 2008, at Beverly Hills, California.

Julissa E. Salgueiro

PROOF OF SERVICE

<u>In Re Yahoo! Litigation</u>
United States District Court, Central District of California, Western Division
Master File No. CV06-2737 CAS (FMOx)

Michael D. Donovan, Esq.
DONOVAN SEARLES, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: 215/732.6067
Facsimile: 215/732.8060
Co-Counsel for Plaintiffs

Marc Edelson, Esq.
EDELSON & ASSOCIATES
45 West Court Street
Doylestown, PA 18901
Telephone: 215/230.8043
Facsimile: 215/230.8735
Co-Counsel for Plaintiffs

Alan M. Feldman, Esq.
Thomas More Marrone, Esq.
FELDMAN, SHEPHERD,
WOHLGELERNTER &
TANNER
1845 Walnut Street, 25th Floor
Philadelphia, PA 19103
Telephone: 215/567.8300
Facsimile: 215/567.8333
Co-Counsel for Plaintiffs

Dennis L. Wilson, Esq.
Emil W. Herich, Esq.
KEATS, MCFARLAND & WILSON LLP
9720 Wilshire Boulevard
Penthouse Suite
Beverly Hills, CA 90212
Telephone: 310/248.3830
Facsimile: 310/860.0363
Counsel for Defendants

Jonathan Shub, Esq.
SHELLER, LUDWIG & BADEY, P.C.
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102
Telephone: 215/790.7300
Facsimile: 215/546.0942
Co-Counsel for Plaintiffs

Oren Giskan, Esq.
GISKAN, SOLOTAROFF & ANDERSON
11 Broadway, Suite 2150
New York, New York 10004
Telephone: (212) 847-8315
Facsimile: (646) 520-3235
Co-Counsel for Plaintiffs

Lisa J. Rodriguez, Esq.
Donna Siegel Moffa, Esq.
TRUJILLO RODRIGUEZ & RICHARDS
LLC
8 Kings Highway West
Haddonfield, NJ 08033
Telephone: 856/795.9002
Facsimile: 856/795.9887
Co-Counsel for Plaintiffs

dms @PFDesktop\::ODMA\GRPWISE\KANDL_DOM.KANDL_PO.Lib-1.162159.1

PROOF OF SERVICE