1  Larry W. McFarland (Bar No. 129668)
   Dennis Wilson (Bar No. 155407)
2  David K. Caplan (Bar No. 181174)
   KEATS McFARLAND & WILSON LLP
3  9720 Wilshire Boulevard
   Penthouse Suite
4  Beverly Hills, California  90212
   Telephone:  (310) 248-3830
5  Facsimile:  (310) 860-0363
   Emails:  lmcfarland@kmwlaw.com
6          dwilson@kmwlaw.com
           dcaplan@kmwlaw.com
7
   Attorney for Defendants
8  Yahoo! Inc. and Overture Services, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12

13

14  IN RE YAHOO! LITIGATION,            Master File No. CV 06-2737 CAS
15                                      (FMOx)

16                                      REPLY TO PLAINTIFFS'
                                        MEMORANDUM OF LAW IN
17                                      OPPOSITION TO DEFENDANTS'
                                        MOTION TO DISMISS AND MOTION
18                                      FOR MORE DEFINITE STATEMENT

19                                      Date:       April 21, 2008
                                        Time:       10:00 a.m.
20                                      Courtroom:  5 (Hon. Christina A. Snyder)

21  This Document Relates to All Actions

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION.................................................................................1

II.  ANALYSIS .....................................................................................3

    A.   The Class Action Waiver Bars Plaintiffs From Pursuing their
        Claims as a Class Action..................................................................3

        1.   Plaintiffs' Procedural Arguments Lack Merit. ................................4

        2.   That Yahoo! Did Not Seek to Enforce the Class Action
              Waiver in the Checkmate Litigation Is Irrelevant. .........................5

        3.   The Class Action Waiver Is Not Unconscionable............................8

    B.   Plaintiffs' Allegations in the SAC Are Insufficient to State Any
        Individual Claim, and the Named Plaintiffs Lack Standing to Sue
        for Alleged Injuries to Putative Class Members.....................................11

    C.   Plaintiffs Lack Standing to Assert Individual or Class Claims
        Against Overture Based on Overture's Actions Prior to its
        Acquisition by Yahoo!.....................................................................12

    D.   Plaintiffs Fail to State a Claim for Breach of Contract or Breach of
        the Implied Covenant of Good Faith and Fair Dealing. .........................12

        1.   Plaintiffs Fail to Show How Yahoo!'s Product Names Are
              Ambiguous or How Extrinsic Evidence Would Clarify Them
              Without Contradicting the Express Terms of the Agreement. ......12

        2.   Pacific Gas Does Not Allow Plaintiffs to Avoid Dismissal..........14

        3.   Plaintiffs Cannot Sustain a Claim for Breach of the Implied
              Covenant of Good Faith and Fair Dealing. ...................................15

              a.   Plaintiffs Cannot Allege Breach of the Covenant to
                    Avoid the Defects in their Breach of Contract Claim.........16

b.  Plaintiffs' Claim for Breach of the Covenant Based on "Illegal" Ad Placement Fails As Plaintiffs Do Not Sufficiently Allege That The Ad Placements Were Illegal. ............................................................................16

E.  Plaintiffs Cannot Rely on Common Counts to Plead Around the Court's Dismissal of Their Contract Claims.................................17

F.  Plaintiffs' Attempt to Resurrect Their Civil Conspiracy Claim by Summarily Alleging Misrepresentation Fails. .........................................18

1.  Plaintiffs Do Not Allege A Viable Misrepresentation Claim........18

2.  Plaintiffs Misrepresent the Statements Upon Which They Base Their Claim. ........................................................................19

3.  Plaintiffs' Claim for Conspiracy Fails Because It Is Insufficiently Pled and Because Yahoo!'s Alleged Co-Conspirators Owed No Duty to Plaintiffs. .....................................20

G.  Plaintiffs Cannot Sustain a Section 17200 Claim Against Yahoo!. ........21

1.  Plaintiffs Lack Standing Because They Are Neither Consumers Nor Yahoo!'s Competitors. .........................................21

2.  Lack of Causation Is Fatal to Plaintiffs' Claim. .............................22

3.  Plaintiffs' Allegations of Yahoo!'s Unfair Business Practices Are Belied by the Marketing Materials They Cite.........23

H.  Plaintiffs Fail to Comply with Rule 8(c) or Rule 12(e). ...........................24

1.  The Court Must Analyze Yahoo!'s Motion Based on the Twombly Standard...............................................................................24

2.  Plaintiffs Have Not Met Rule 12(e)'s Specificity Requirement.......................................................................................24

III.  CONCLUSION ..............................................................................................25

# TABLE OF AUTHORITIES

**Page (s)**

## Cases

*A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Division*, 852 F.2d 493 (9th Cir. 1988)..................................................................................14

*Abouab v. City & County of San Francisco*, 141 Cal. App. 4th 643 (2006)..................7

*Allen v. Powell*, 248 Cal. App. 2d 502 (1967)..............................................................21

*Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995)....................................................4

*Applied Elastromerics, Inc. v. Z-Man Fishing Prods., Inc.*, 2007 WL 1593212 (N.D. Cal. June 1, 2007).........................................................................................14

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ...................20

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) ...............9

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)...............................................15, 24

*Bennett v. Mueller*, 364 F. Supp. 2d 1160 (C.D. Cal. 2005) ..........................................4

*Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002) ...........................6, 7

*Brown v. Bank of Am., N.A.*, 457 F. Supp. 2d 82 (D. Mass. 2006) ..............................22

*Carma Developer (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (1992).....16

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004)...................................7

*Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336 (2004)..............................................13

*Cicone v. URS Corp.*, 183 Cal. App. 3d 194 (1986) .....................................................20

*Cohen v. Blockbuster Entm't, Inc.*, 376 Ill. App. 3d 588 (2007)...................................8

*Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593 (1981)...........20

*Discover Bank v. Sup. Ct.*, 36 Cal. 4th 148 (2005).......................................................8

*Doctor's Co. v. Sup. Ct.*, 49 Cal. 3d 39 (1989) ...........................................................21

*E. S. Bills, Inc. v. Tzucanow*, 38 Cal. 3d 824...............................................................8

*Erickson v. Pardus*, 127 S. Ct. 2197 (2007)...............................................................24

*Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007)..................................10

*Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571(2007)........................................9

*Gentry v. Sup. Ct.*, 42 Cal. 4th 443 (2007) .................................................9, 10

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086

(C.D. Cal. 1999).........................................................................................19

*Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987) .......................................11, 12, 25

*Hall v. Time Inc.*, 158 Cal. App. 4th 847 (2008)...........................................22

*Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910 (9th Cir. 2001)...................................5

*Indep. Ass'n of Mailbox Ctr. Owners v. Sup. Ct.*, 133 Cal. App. 4th 396 (2005)..........8

*Jorst v. D'Ambrosio Bros. Inv. Co.*, 2001 WL 969039 (N.D. Cal. Aug. 13, 2001).......5

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) .................................................21

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) .............................................15

*Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005)..................12, 18

*Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007)......21, 22

*McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142 (N.D. Cal. 2002) ..................23, 24

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 2008 WL 852186

(9th Cir. Apr. 1, 2008) ...............................................................................24

*Meredith v. Erath*, 2001 WL 1729626 (C.D. Cal. Sept. 19, 2001) ...........................15

*Morrison v. Mahoney*, 399 F.3d 1042 (9th Cir. 2005) .......................................4

*N.H. v. Maine*, 532 U.S. 742 (2001)............................................................6

*Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) ......20, 21

*O'Brien v. Camisasca Auto. Mfg., Inc.*, 2008 WL 802350 (Cal. App. 2d Dist. Mar. 27,

2008)........................................................................................................12, 21

*Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012 (N.D. Cal. 2008)............................10, 11

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33

(1968) .....................................................................................................14

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998)............................................15

*Perretta v. Prometheus Dev. Co.*, 2008 WL 795353 (9th Cir. Mar. 27, 2008)..........5, 6

*Poweragent, Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187 (9th Cir. 2004)...................6

*Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196 (C. D. Cal. 2006) ................................9

*Rosenbluth Int'l., v. Sup. Ct.*, 101 Cal. App. 4th 1073 (2002) ......................................22

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987)...................13

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998)...........................20, 23

*U.S. v. Valdez*, 195 F.3d 544 (9th Cir. 1999) ................................................................5

*Veltman v. Walpole Pharm., Inc.*, 928 F. Supp. 1161 (M.D. Fla. 1996).....................25

*Warth v. Selden*, 422 U.S. 490 (1975).........................................................................11

*Wasco Prods., Inc. v. Southall Tech., Inc.*, 435 F.3d 989 (9th Cir. 2006) ..................20

*Zenger-Miller, Inc. v. Training Team, GMBH*, 757 F. Supp. 1062
(N.D. Cal. 1991) ..........................................................................................................14

**Other Authorities**

15 U.S.C. § 1125(d)(1)(D)...........................................................................................17

Cal. Bus. & Prof. Code § 17200 ..................................................................................21

**Rules**

Fed. R. Civ. P. 12(e) ..........................................................................................17, 24, 25

Fed. R. Civ. P. 12(f)........................................................................................................4

Fed. R. Civ. P. 8(a) ......................................................................................................24

Fed. R. Civ. P. 8(c) .........................................................................................................4

Fed. R. Civ. P. 9(b)........................................................................................................19

# I.    INTRODUCTION

In its last ruling on this matter in 2006, the Court held that the Yahoo! Advertiser Master Services Terms and Conditions ("Master T&C") between Plaintiffs and Overture Services, Inc., a wholly-owned subsidary of Yahoo! Inc. (collectively "Yahoo!") is a valid agreement containing an unambiguous and enforceable integration clause. In its prior order ("Order"), the Court looked within the four corners of the Master T&C and held that Plaintiffs could not rely on extrinsic evidence to impose obligations on Yahoo! that contradicted the Master T&C's explicit terms. In their Second Amended Complaint ("SAC"), Plaintiffs proffer marketing materials – selected pages from Yahoo!'s website – to once again argue that Yahoo! is subject to obligations that contradict the clear terms of the integrated agreement. This attempt to vary the contractual language must again fail.

Moreover, even if the Court were to consider the extrinsic marketing materials submitted by Plaintiffs, the SAC misrepresents what Yahoo! actually said. The materials submitted do not contain a "promise" that Yahoo! will deliver targeted ad placements as Plaintiffs allege in the SAC. Rather, they state that businesses can obtain targeted customer leads by choosing their own keywords and deciding for themselves how much they will bid (and consequently how much they will pay) for clicks.[1] In their Opposition, Plaintiffs do not dispute that the SAC misrepresents Yahoo!'s statements. This defect destroys the entire basis for Plaintiffs' claims.

---

[1] Plaintiffs repeatedly and disingenuously allege that Yahoo! has charged them "premium" or "high" prices for its search marketing services. *See, e.g.,* SAC at ¶¶ 3, 4, 9, 10, 46, 67; Memorandum in Opposition to Defendant's Motion To Dismiss and Motion for More Definite Statement ("Opposition" or "Opp.") at 2, 3, 14. Although the issue of pricing is not currently before the Court, Yahoo! notes that that Plaintiffs themselves, not Yahoo!, set their prices for search advertisements by bidding on keywords in an auction-based system. *See* Decl. of D. Wilson ("Wilson Decl."), Exh. 4, pp. 31-33 at ¶¶ 2, 3.

1      If they thought this fatal flaw could be corrected, Plaintiffs could have used

2  their Opposition to ask for yet another chance to re-plead their allegations about

3  Yahoo!'s alleged "promise."  But Plaintiffs do not ask to re-plead, perhaps because

4  analyzing customer lead quality would necessarily involve highly individualized

5  issues specific to each Yahoo! advertiser that would impose a barrier to class

6  certification even greater than those they already face.  In any event, Plaintiffs' claims

7  must again be dismissed, whether because of the clear language of the integrated

8  contract, or because of their bold misrepresentations.

9      Yahoo!'s motion also asks this Court to enforce a provision of the Master T&C

10 in which the contracting businesses waived the ability to bring claims as a class

11 regarding Yahoo!'s search marketing offerings.  Like the integration provision,

12 Plaintiffs do not and cannot claim that the class waiver provision is ambiguous.

13 Rather, Plaintiffs argue in their Opposition that the class waiver provision should not

14 be enforced because (1) they would be prejudiced if the class waiver were enforced at

15 this point in the litigation, and (2) Yahoo!'s advertisers are small businesses akin to

16 powerless consumers.  The truth is that Plaintiffs would not be prejudiced by

17 enforcement of the Master T&C because they have not engaged in any discovery,

18 depositions, summary judgment motions or any significant litigation activity, other

19 than attempting to advance their defective complaint beyond the pleading stage.

20 Furthermore, Plaintiffs' claim that Yahoo!'s advertisers are unsophisticated and must

21 be protected from the clear language of the contract directly contradicts their other

22 submissions, in which the only putative class members they identify are sophisticated

23 corporations such as Expedia, Dell and Hewlett-Packard.  In the final analysis, the

24 Court should dismiss Plaintiffs' class claims based on the unambiguous language of

25 the integrated, business-to-business agreement.

26

27

28

## II.    ANALYSIS

### A.    The Class Action Waiver Bars Plaintiffs From Pursuing their Claims as a Class Action.

In its Memorandum in Support of its Motion to Dismiss ("Memorandum" or "Memo."), Yahoo! explained that the express class action waiver in the Master T&C prevents Plaintiffs from bringing their claims as a class action or joining their individual claims in a single action. Memo. at 4. Plaintiffs have responded with an inaccurate discussion of California unconscionability law and a flurry of meritless procedural arguments. Before addressing each of these arguments in detail, it is useful to consider this issue in the broader context of this litigation.

In 2006, the Court recognized this matter as a dispute over a complete, final and fully integrated agreement (the Master T&C) between contracting businesses. Order at 4-6. The Master T&C discloses Yahoo!'s obligations with respect to its online search marketing offerings and lets Plaintiffs themselves decide how much to bid and pay for clicks on their advertisements. It permits Plaintiffs to terminate their ads, as well as their contract with Yahoo!, for any reason at any time without penalty. *See* Wilson Decl., Exh. 4, pp. 31-35 at ¶¶ 2, 3, 11. The Master T&C also contains common, unambiguous language regarding standard issues such as integration and dispute resolution. These terms were not hidden, nor are they presumptively unfamiliar to the corporate Plaintiffs.

When Plaintiffs initiated this case in 2006, they sought to disregard the integration clause and piece together a different contract based on excerpts from Yahoo's marketing materials. This Court properly ruled that Plaintiffs may not unilaterally reform the contract. Order at 4-6. In their Opposition, Plaintiffs once again urge this Court to let them disregard an unambiguous term of the integrated Master T&C. Plaintiffs do not allege, and in light of the Order cannot allege, that the class waiver provision is ambiguous or that they did not agree to it. They merely argue that they should not have to comply with it because it would prevent them from

asserting claims on behalf of putative class members, including the commercial sophisticates they have used as examples: Expedia, Dell and Hewlett-Packard. SAC at ¶ 44; Decl. of B. Edelman in Supp. of Pls' Mot. for Class Cert. ("Edelman Cert. Decl.") at ¶¶ 4(a)-(e). Notwithstanding the infirmities of Plaintiffs' individual arguments, the Court should once again hold Plaintiffs to their agreement.

### 1. Plaintiffs' Procedural Arguments Lack Merit.

Plaintiffs assert two procedural arguments that Yahoo! waived its right to enforce the class waiver. Both misapply basic procedural rules. First, Plaintiffs argue that Yahoo!'s motion to dismiss based on the class action waiver should be treated as a motion to strike the class allegations under Federal Rule of Civil Procedure ("Rule") 12(f), and dismissed as "untimely" under that Rule. Opp. at 5. This argument is meritless, as there is no basis for the proposition that enforcement of a class action waiver must be treated as a motion to strike, which motions are limited to matters that are "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Plaintiffs also misstate Rule 12(f)'s timing requirements when they suggest that Yahoo! was obligated to invoke the class action waiver within "20 days after service of the complaint." *Id.* at 6. The Rule states that a motion to strike must be filed "either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading." *Id.* (emphasis added). To date, Yahoo! has not responded to the SAC. *See Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1530 (9th Cir. 1995) ("A motion to dismiss for failure to state a claim is not a responsive pleading."). Rule 12(f) has no bearing on this motion.

Next, Plaintiffs suggest that Rule 8(c) bars Yahoo! from enforcing the waiver provision. Opp. at 6-7. Rule 8(c) lists affirmative defenses that a defendant must raise in a responsive pleading. Fed. R. Civ. P. 8(c); *see also Morrison v. Mahoney,* 399 F.3d 1042, 1046 (9th Cir. 2005). But, "[a] motion to dismiss is not a responsive pleading within the meaning of the Federal Rules of Civil Procedure." *Id.* at 1046; *see also Bennett v. Mueller,* 364 F. Supp. 2d 1160, 1162 (C.D. Cal. 2005) ("[F]ailure to

1  raise an affirmative defense in a motion to dismiss does not mean that the defense has

2  been waived.") (citing *U.S. v. Valdez*, 195 F.3d 544, 548 (9th Cir. 1999)).[2]  Yahoo!

3  has not yet filed an answer because Plaintiffs have failed to move the case past the

4  initial pleading stage.  Yahoo! cannot therefore have waived its affirmative defenses.

5       Plaintiffs also superficially allege that they have suffered some unnamed

6  prejudice, citing *Jorst v. D'Ambrosio Bros. Inv. Co.*, 2001 WL 969039, at *1 (N.D.

7  Cal. Aug. 13, 2001).  Opp. at 6.  That case confirms that Plaintiffs herein have not been

8  prejudiced.  The parties in *Jorst* had "proceeded through almost a year of litigation,

9  including the depositions of multiple witnesses and preparing the summary judgment

10  motion." *Id.* at *9 (emphasis added).  Plaintiffs herein have proceeded through no

11  discovery, no depositions and no summary judgment motions.  The mere passage of

12  time does not create prejudice when all that has occurred are attacks on Plaintiffs'

13  defective pleadings, settlement discussions and a motion for disqualification of one of

14  Plaintiffs' attorneys/witnesses.[3]

15          **2.**     **That Yahoo! Did Not Seek to Enforce the Class Action Waiver**

16                 **in the *Checkmate* Litigation Is Irrelevant.**

17       Plaintiffs also erroneously ask this Court to rule that that Yahoo! is judicially

18  estopped from enforcing the waiver provision in the instant case because it stipulated

19  to class certification in *Checkmate Strategic Group, Inc. v. Yahoo! Inc., et al.*, Case

20  No. CV 05-4588 CAS(FMOx) ("*Checkmate*").  Opp. at 7-8.  Judicial estoppel

21  generally "'prohibits a litigant from asserting inconsistent positions in the same

22  litigation.'" *Perretta v. Prometheus Dev. Co.*, 2008 WL 795353, at *4 (9th Cir. Mar.

23  27, 2008) (quoting *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 917 (9th Cir.

24

25  [2] Each of the seven cases Plaintiffs cite for this argument involved assertion of an
   affirmative defense after the answer. *See* Opp. at 6-7 and authority cited therein.

26

27  [3] A significant reason for the pace of this litigation has been the parties' diligent, now-
   terminated settlement discussions that occurred in 2007.  It is disingenuous for

28  Plaintiffs to now use those discussions as a ruse for alleging nonexistent prejudice.

2001)).  The doctrine can also apply in limited circumstances when different matters involve the same dispute.  *Poweragent, Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1192-93 (9th Cir. 2004).

Judicial estoppel does not apply when a defendant agrees to a class settlement in one case but seeks to enforce a class waiver in a later case involving different class members and different claims.  The court ruled on this precise issue under similar facts in *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002).  In that case, the defendant had previously settled a class action alleging fraud.  In a later class action for antitrust violations allegedly involving the same class members, it moved to enforce the arbitration clause in its service contract.  The plaintiffs argued that both waiver and judicial estoppel precluded the defendant from enforcing the arbitration clause based on its settlement of the previous litigation.[4]  *Id.* at 1113-14.

The court ruled that it was proper for the defendant to enforce its agreement even though it had consented to certification in the previous case.

> Plaintiffs acknowledge that the claims in the two lawsuits are not identical.  The only similarity that Plaintiffs refer to is the fact that the two suits arise from the same set of customer agreements....  In addition, to hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd.

*Id.* at 1113.  The court also noted that preclusion was inappropriate because the two

---

[4] The tests for applying waiver and judicial estoppel are substantially the same for purposes of the relevant issues in this case. *Compare Perretta*, 2008 WL 795353, at *4 (factors informing whether to apply judicial estoppel: "(1) whether the two positions are 'clearly inconsistent,' (2) whether the party was successful in asserting the earlier position, and (3) whether the party seeking to assert the position would derive an unfair advantage or impose an unfair detriment upon the opposing party.") (citing *N.H. v. Maine,* 532 U.S. 742, 750-51 (2001)), *with DirecTV*, 180 F. Supp. 2d at 1112 ("To establish waiver, plaintiffs must prove (1) DirecTV's knowledge of the right to compel arbitration, (2) acts inconsistent with that right, and (3) resulting prejudice to the party opposing the arbitration.").

1    classes involved different members. *Id.* Ultimately, it found no basis to apply judicial

2    estoppel. "Aside from the fact that Plaintiffs have failed to provide the Court with any

3    examples of a party being estopped from enforcing its arbitration rights in one case

4    because the party decided to settle a second factually and legally dissimilar case, the

5    Court finds that estopping DirecTV from enforcing its arbitration clause will not serve

6    to protect the integrity of the judicial process." *Id.* at 1114.

7        *DirecTV* is powerful authority that the court should not apply judicial estoppel

8    in this case. As in *DirecTV*, Plaintiffs in this case admit – as they must to prevent

9    their claims being barred or at least significantly impaired by an overlapping class-

10   wide release – that their claims are different from those asserted in *Checkmate*.[5] This

11   case also involves different class members than *Checkmate*. *Compare* SAC at ¶48

12   (putative class period started May 4, 2000) *with Checkmate*, Dkt. #51(Plaintiff's

13   Memorandum of Points and Authorities in support of Plaintiff's Motion for

14   Preliminary Approval of Class Action Settlement) at Exh.1 (*Checkmate* class period

15   started January 1, 1998 and concluded July 31, 2006). Yahoo! has as much right to

16   enforce the waiver in this case as DirecTV had. To hold otherwise would discourage

17   settlements in contravention of strong public policy. *See Abouab v. City & County of*

18   *San Francisco*, 141 Cal. App. 4th 643, 673 (2006).

19       *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) (Opp. at 7-8) is

20   not relevant. The defendant in *Carnegie* urged the court to certify a settlement class,

21   which it then used to enjoin several other pending actions. When the proposed

22   settlement was disapproved under suspicion of collusion between the defendant and

23   class counsel, the defendant resisted certification of the same class for litigation. *Id.* at

24   659-60. Under those circumstances, judicial estoppel was appropriate as an

25

---

26   [5] *See* SAC at ¶ 32 ("Yahoo's conduct alleged herein, and Plaintiffs' claims generally,
     comprises separate and distinct unlawful practices distinguishable from click fraud,
27   which is the subject of other litigation, including *Checkmate*, but not this litigation.").

28

1  "antifraud" tool.  *Id.*  There is no analogy between *Carnegie* and this case.[6]

2  ### 3.    The Class Action Waiver Is Not Unconscionable.

3  This Court should enforce the class waiver as it does not implicate any of the

4  issues that must be weighed to determine whether enforcement of such a provision is

5  unconscionable:  (1) whether the contract is a contract of consumer adhesion; (2)

6  whether the dispute predictably involves small amounts of damages; and (3) whether

7  there are allegations that the party with superior bargaining power has carried out a

8  scheme to deliberately cheat large numbers of consumers out of individually small

9  sums of money.  *See Discover Bank v. Sup. Ct.*, 36 Cal. 4th 148, 162-63 (2005).

10  Yahoo! has noted that even the *Discover Bank* standard may be too stringent in

11  this commercial case based on the lack of reported decisions finding unenforceable a

12  class action waiver provision in a purely commercial agreement.  Memo. at 6, n.2.

13  Plaintiffs' citation to *Indep. Ass'n of Mailbox Ctr. Owners v. Sup. Ct.*, 133 Cal. App.

14  4th 396 (2005) (Opp. at 10), does not undermine that analysis because *Mailbox*

15  *Owners* involved franchise agreements, which are not comparable to commercial

16  services agreements.  In fact, the *Mailbox Owners* court explicitly stated that the facts

17  before it were "comparable" to "consumer credit card agreements."  *Id.* at 400.  To the

18  extent the consumer contract analogy was imperfect, the court equated the franchise

19  agreements to employment agreements because they affected the franchisees'

20  livelihoods.  *Id.* at 410; *see also E. S. Bills, Inc. v. Tzucanow*, 38 Cal. 3d 824, 835-36

21  (Mosk., J. concurring) (noting the high probability of abuse in franchise agreements

22  and the unique vulnerability of franchisees).  As discussed below, the commercial

23  services agreement in this case is critically different from a franchise/employment

24

25  ─────────────────
[6] Even the Illinois Appellate Court has declined to apply *Carnegie* in a case like the
26  one at bar.  *See Cohen v. Blockbuster Entm't, Inc.*, 376 Ill. App. 3d 588 (2007) (ruling
27  judicial estoppel pursuant to *Carnegie* is not appropriate where the case at bar
involves different claims and different class members from the prior settled case).
28

1   agreement.  *Mailbox Owners* is not relevant here.

2        If the Court applies *Discover Bank*, the class waiver provision must be

3   enforced.  Plaintiffs do not dispute this, nor can they in light of *Provencher v. Dell,*

4   *Inc.*, 409 F. Supp. 2d 1196 (C. D. Cal. 2006), which enforced a class waiver in a

5   consumer contract with many of the same characteristics as this case, including the

6   fact that the plaintiff could have chosen to do business with any of the defendant's

7   competitors if he objected to the terms of the defendant's contract.  *See id.* at 1201-04.

8   Rather, they argue that *Gentry v. Sup. Ct.*, 42 Cal. 4th 443 (2007), replaced the

9   *Discover Bank* test with a standard of "whether the class action ban would pose a real

10  world economic or technical impediment to pursuit of the claims by some or all of the

11  class members."  Opp. at 9.  Plaintiffs allege that this wholesale abandonment of

12  *Discover Bank* is to be found in Footnote 7 of the *Gentry* opinion.  *Id.*  Their argument

13  does not withstand scrutiny.

14       Unlike *Discover Bank*, which dealt with consumer contracts generally, *Gentry*

15  dealt with the specialized field of employee wage and hour suits.  *See Gentry*, 42 Cal.

16  4th at 450-53.  It is well established that employment contracts implicate much

17  different policy considerations even than consumer service contracts, much less

18  commercial service contracts like the Master T&C:

19       [A]dhesive contracts of employment present very different policy

20       considerations from the adhesive consumer contract for a service such as a cell

21       phone. Employment contracts that contain mandatory arbitration clauses are

22       especially susceptible to being oppressive because "in the case of pre-

23       employment arbitration contracts, the economic pressure exerted by employers

24       … may be particularly acute, for the arbitration agreement stands between the

25       employee and necessary employment, and few employees are in a position to

26       refuse a job because of an arbitration requirement."

27  *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 598 (2007) (Jones, P.J.,

28  concurring in part and dissenting in part) (quoting *Armendariz v. Found. Health*

*Psychcare Servs., Inc.*, 24 Cal. 4th 83, 115 (2000)).  In this case, Yahoo! was not in a position to exert <u>any</u> pressure on Plaintiffs, who were under no pressure to sign up to advertise with Yahoo! for search marketing; could have signed up with a Yahoo! competitor; decided for themselves how much or little they wished to bid and pay for any single click on their ads; could have decided to spend no money on Yahoo! search marketing services even after they signed up; and were free to stop advertising with Yahoo! at any time for any reason without penalty.  *See* Wilson Decl., Exh. 4, pp. 31-35 at ¶¶ 2, 3, 11; *see also Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 240 (E.D. Pa. 2007) (rejecting the argument that provisions of Google's AdWords Agreement were unconscionable under California law, noting that a search marketing advertiser was under no pressure to accept the terms of Google's pay-per-click advertising service and was free to terminate the contract with impunity, as Plaintiffs were here).  By nature of the specific type of agreement, the services provided, and the customer base, *Feldman* is by far the most analogous case on point and should be followed in any analysis of unconscionability under California substantive law.

Moreover, the *Gentry* court emphasized that its analysis was guided by the need to ensure that employment contracts do not "undermine the vindication of the employees' unwaivable statutory rights."  *Gentry*, 42 Cal. 4th at 450.  The very Footnote 7 that Plaintiffs rely on states that the court applied a modified standard in that case because "*Armendariz* makes clear that for public policy reasons we will not enforce provisions contained within arbitration agreements that pose significant obstacles to the vindication of employees' statutory rights."  *Id.* at 463, n.7.  No such unwaivable statutory rights are implicated here, and *Gentry* is therefore inapplicable.

In fact, there is authority for limiting *Gentry* to the employment context.  In *Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012 (N.D. Cal. 2008), the plaintiff class cited *Gentry* for the same argument Plaintiffs make here.  The court concluded that *Gentry* did not modify *Discover Bank* outside of the employment context:

*Gentry* is in a category by itself, as it is a case involving class arbitration of wage and hour claims. It's hard to say how *Gentry* could be viewed as changing the law in the consumer class action context, as at least two of the three factors cited by the court in *Gentry* do not apply here--the factor that a current employee who sues his employer is at greater risk of retaliation, and the factor that some individual employees might not sue because they are unaware that their employer is required to pay them overtime wages.

*Id.* at 1041. This Court should follow *Omstead*'s reasoning and decline to apply *Gentry* outside of its limited, employment-related context.

Finally, Plaintiffs suggest that the class waiver unconscionably exculpates Yahoo! from liability with regard to the Master T&C because most of its advertisers cannot vindicate their rights. Opp. at 9. The SAC does not allege such helplessness among the class members. Rather, the only class members Plaintiffs have identified are corporations like Expedia, Dell, and Hewlett Packard – large, sophisticated entities which are more than capable of vindicating their own rights.

### B.  Plaintiffs' Allegations in the SAC Are Insufficient to State Any Individual Claim, and the Named Plaintiffs Lack Standing to Sue for Alleged Injuries to Putative Class Members.

There is no dispute that Plaintiffs must have individual standing to assert their claims on behalf of the putative class. *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987). Standing requires Plaintiffs to allege facts showing that they personally suffered an injury. *Warth v. Selden*, 422 U.S. 490, 502 (1975).

With respect to the contract claims, Plaintiffs lack standing because they fail to allege that they were individually charged for clicks on advertisements that appeared in spyware, typosquatted websites, or other locations Plaintiffs allege are outside the scope of their Agreement with Yahoo!. Plaintiffs cite to SAC ¶ 9 (*see* Opp. at 10), but that paragraph is inapposite because it alleges that Yahoo! charged Plaintiffs for ad "placement," not for clicks. Elsewhere, Plaintiffs have acknowledged that Yahoo!

does <u>not</u> charge them for ad placement.  *See* SAC ¶ 62.  Thus, SAC ¶ 9 does not cure the insufficiency on which Yahoo!'s motion is based.

With respect to misrepresentation, Plaintiffs lack standing because none of them alleges actual reliance or detriment.  That omission prevents them from proving actual injury.  *See, e.g., Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005); *O'Brien v. Camisasca Auto. Mfg., Inc.*, 2008 WL 802350, at *4 (Cal. App. 2d Dist. Mar. 27, 2008).  Plaintiffs do not address this defect in their Opposition.  Their claims should be dismissed for lack of standing.

**C.      Plaintiffs Lack Standing to Assert Individual or Class Claims Against Overture Based on Overture's Actions Prior to its Acquisition by Yahoo!.**

Plaintiffs misstate Yahoo!'s argument as to claims against Overture.  Absent a conspiracy between Yahoo! and Overture (which Plaintiffs do not allege), a class representative with claims only against one defendant lacks standing to assert class claims against another defendant.  *See* Memo. at 12 and authority cited therein.  In this case, Plaintiffs purport to allege claims against both Yahoo! and Overture for a period of time that pre-dates Yahoo!'s acquisition of Overture.  SAC at ¶ 48.  Yahoo! does not object on this ground to allegations occurring after it acquired Overture.  But, claims against Overture prior to its acquisition by Yahoo! are defective because none of the named plaintiffs allege that they contracted with or had any other dealings with Overture prior to its acquisition by Yahoo!.  *See Griffin*, 823 F.2d at 1483.

**D.      Plaintiffs Fail to State a Claim for Breach of Contract or Breach of the Implied Covenant of Good Faith and Fair Dealing.**

**1.      Plaintiffs Fail to Show How Yahoo!'s Product Names Are Ambiguous or How Extrinsic Evidence Would Clarify Them Without Contradicting the Express Terms of the Agreement.**

As they did in 2006, Plaintiffs allege that Yahoo! is contractually bound to use targeting initiatives every time it places one of their advertisements.  This Court has already ruled that such an obligation would contradict the terms of the Master T&C:

While the Agreement states that "listings <u>may</u> be distributed through the Yahoo! Search Marketing Distribution Network based upon certain user targeting initiatives," defendants <u>do not</u> promise in the Agreement to use such targeting initiatives, as opposed to random placement.

Order at 6 (emphasis added). This ruling precludes Plaintiffs from introducing any parol evidence suggesting that Yahoo! was obligated to "target" ad placement. *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004) (The parol evidence rule "generally prohibits the introduction of any extrinsic evidence … to vary, alter or add to the terms of an integrated written instrument.").

In 2006, Plaintiffs tried to evade this fatal problem by arguing that two product names – "Sponsored Search" and "Content Match" – were ambiguous because they were not defined in the Master T&C and that they should be clarified by parol evidence in the form of marketing statements on Yahoo!'s website. *See* Plaintiffs' Sur-Reply Brief in Opposition to Defendants' Motion to Dismiss at 2-3. This Court rejected their argument but gave them leave to re-plead with a more comprehensive explanation of "in what way these terms are ambiguous, and how extrinsic evidence will clarify these terms without contradicting the express terms of the Agreement." Order at 6.

Plaintiffs have re-pled, but they have not cured the problem. They continue to allege that the product names are ambiguous simply because they are not defined in the Master T&C – even though the Master T&C explicitly defines Yahoo!'s obligations with respect to both products. Plaintiffs argue in their Opposition that the Master T&C "provides only general terms concerning payment and licensing." Opp. at 14. But this Court has already rejected that argument. *See* Order at 5 ("Contrary to plaintiffs' argument, the Sponsored Listings T&C states defendants' obligations under the contract"). Their claim should now be dismissed with prejudice. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (court may deny leave to amend a second time when amendment fails to cure defects).

1    Furthermore, the only parol evidence Plaintiffs present contradicts the express

2   terms of the Agreement.  This Court previously ruled that the Master T&C contains no

3   "promise … to use … targeting initiatives, as opposed to random placement."  Order

4   at 6.  Yet Plaintiffs still seek to present parol evidence of alleged promises (albeit

5   misrepresented by Plaintiffs) that Yahoo! would use targeting initiatives to place their

6   ads.  *See* SAC at ¶¶ 10, 24, 26, 59-60, 67-68, 80-81, 93.  There is no way to reconcile

7   these alleged representations with the express terms of the Master T&C, and the claim

8   must be dismissed today for the same reason it was dismissed in 2006.

9              **2.  *Pacific Gas* Does Not Allow Plaintiffs to Avoid Dismissal.**

10    Plaintiffs erroneously cite *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage &*

11  *Rigging Co.*, 69 Cal. 2d 33 (1968), to argue that "the interpretation of the T&C cannot

12  be decided at this stage of the proceedings" because they have alleged the existence of

13  parol evidence.  Opp. at 17-18.  *Pacific Gas* requires the court to "preliminarily

14  consider" whether proffered parol evidence renders the contract "fairly susceptible of

15  two interpretations."  *Zenger-Miller, Inc. v. Training Team, GMBH*, 757 F. Supp.

16  1062, 1067-68 (N.D. Cal. 1991); see *also A. Kemp Fisheries, Inc. v. Castle & Cooke,*

17  *Inc., Bumble Bee Seafoods Division*, 852 F.2d 493, 496 (9th Cir. 1988).  A court can

18  grant a motion to dismiss under *Pacific Gas* if the alleged parol evidence is already

19  before the court.[7]  *See, e.g., Zenger-Miller*, 757 F. Supp. at 1068 (ruling on motion to

20  dismiss that proffered extrinsic evidence "is not sufficient to render the contract

21  susceptible of two interpretations"); *see also Applied Elastromerics, Inc. v. Z-Man*

22  *Fishing Prods., Inc.*, 2007 WL 1593212, at *3-4 (N.D. Cal. June 1, 2007).  *Pacific*

23  *Gas* does not help Plaintiffs in this case because the parol evidence they allege is

24  already before the Court.

25    It is settled that for motions to dismiss, the "Court may properly consider

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [7] Dismissal is appropriate if the extrinsic evidence "advances an interpretation to
    which the language of the contract is not reasonably susceptible[.]"  852 F. 2d at 496.

1  documents whose contents are alleged in the complaint when their authenticity is not

2  questioned." Order at 3, n.2. The Court may also consider documents whose contents

3  are not explicitly alleged in the complaint if the claims rely on them and the defendant

4  attaches them to its motion. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005);

5  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (superseded by statute on

6  other grounds). Plaintiffs herein allege parol evidence in the form of written

7  marketing materials, the content of which they expressly cite in their pleading (SAC at

8  ¶¶ 23-29), and which Yahoo! attached to its second motion to dismiss. *See* Wilson

9  Decl. at Exh. 4. Furthermore, Plaintiffs claim that the substance of the parol evidence

10  has been presented to the Court "verbatim" (Opp. at 21) and that the material was

11  "presented identically to all of Yahoo's advertising customers." Edelman Cert. Decl.

12  at ¶¶ 1-3. There is no dispute as to authenticity. Thus, the Court can grant Yahoo!'s

13  motion if the parol evidence does not render the Master T&C reasonably susceptible

14  of two different interpretations (which it does not – *see* discussion, *supra*).

15  
### 3.   Plaintiffs Cannot Sustain a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.
16  

17  Plaintiffs' claim for breach of the implied covenant of good faith and fair

18  dealing must also be dismissed.[8] Plaintiffs' superficial allegation that the covenant is

19  implicated by "placements [Yahoo!] knew, or reasonably should have known were

20  illegal as well as violative of its contracts with advertisers" encompasses several

21  _____

22  [8] There is no merit to the suggestion that Yahoo! is time-barred from challenging this

23  claim. *See* Opp. at 18. The allegations throughout the SAC are different than those before the Court on the previous motion to dismiss; these issues were not previously

24  fully briefed; and the pleading standard has changed since Yahoo!'s previous motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

25  Moreover, *Meredith v. Erath*, 2001 WL 1729626, *1 (C.D. Cal. Sept. 19, 2001) (Opp.

26  at 18), undermines Plaintiffs' position because in that case the defendants were prejudiced by having conducted discovery in reliance on the order to which the

27  motion to reconsider related. *Id*. In this case, there can be no prejudice because there

28  has been no discovery or other litigation since 2006.

1   discrete issues, each of which supports dismissal. *See* SAC at ¶ 69.

2          **a.     Plaintiffs Cannot Allege Breach of the Covenant to**
3          **         Avoid the Defects in their Breach of Contract Claim.**

4          This Court previously dismissed the claim that Yahoo! breached the covenant

5   by placing ads in violation "of its contracts with advertisers," because that claim

6   merely duplicated the defective claim for breach of contract. "[N]o covenant of good

7   faith and fair dealing can be implied which forbids such acts authorized by the express

8   provisions of the contract.'" Order at 7 (quoting *Carma Developer (Cal.), Inc. v.*

9   *Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992)). Plaintiffs have re-pled that

10  basis for their claim (SAC at ¶ 69), though they do not explain why it should not be

11  dismissed on the same grounds as before. Insofar as the Master T&C grants Yahoo!

12  sole discretion to determine when, where, how and whether to place ads, Plaintiffs

13  have no basis to allege a breach of the covenant based on Yahoo!'s decisions

14  regarding such placement. That eliminates substantially all of Plaintiffs' alleged

15  grounds for asserting this claim.

16         **b.     Plaintiffs' Claim for Breach of the Covenant Based on**
17         **         "Illegal" Ad Placement Fails As Plaintiffs Do Not**
           **         Sufficiently Allege That The Ad Placements Were Illegal.**

18         In their Opposition, Plaintiffs distill their claim for breach of the covenant to the

19  allegation that Yahoo! used "placements Yahoo knows, or reasonably should know,

20  are illegal." Opp. at 19. This allegation refers to ad placement in allegedly "illegal"

21  spyware and typosquatting sites. SAC at ¶¶ 33-45.[9]

22         With respect to spyware, Plaintiffs allege that Yahoo! acted illegally because it

23  "caused class members' ads to appear in spyware-delivered windows without the

24

25

26

27  ―――――――――――――――
    [9] Plaintiffs also reference "'Parking' and Bulk Registration Sites" but do not allege
    any basis for Yahoo!'s alleged use of those sites to be illegal.

28

labeling and disclosures required by applicable regulations."[10]  SAC at ¶ 38.  But they fail to allege what labels and disclosures Yahoo! has omitted, and fail even to allege which "applicable regulations" they are invoking.  The vague reference to unspecified FTC regulations from 2002 fails under any pleading standard.  *See* SAC at ¶ 38.  Per Rule 12(e), Plaintiffs should be required to identify the alleged regulations and labeling requirements sufficiently to allow Yahoo! to frame a responsive pleading.

With respect to typosquatting sites, Plaintiffs allege that "Yahoo's use of typosquatting sites violates … both settled trademark law and the ACPA [Anti-cybersquatting Consumer Protection Act]."  SAC at ¶ 43.  The allusion to "settled trademark law" should be dismissed out of hand.  The only allegations in the SAC that implicate trademark law are those that discuss the ACPA.  *See* SAC at ¶¶ 41-43.  Plaintiffs do not allege any other violation of trademark law.  The allegation that Yahoo! has violated the ACPA by "using typosquatting sites" fails because the ACPA specifies that "a person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee."  15 U.S.C. § 1125(d)(1)(D) (emphasis added).  Plaintiffs do not allege that Yahoo! has registered typosquatted domain names or that it is the authorized licensee of typosquatting registrants.  Thus, the ACPA cannot form the basis for a breach of the covenant.  Without a valid basis to allege "illegal" ad placement, Plaintiffs' claim for breach of the covenant based on illegality must be dismissed.

### E.  Plaintiffs Cannot Rely on Common Counts to Plead Around the Court's Dismissal of Their Contract Claims.

This Court has already ruled that Plaintiffs cannot recover in quasi-contract for conduct expressly authorized by the Master T&C.  Order at 7.  There is no basis to change that holding now.  Plaintiffs devote their Opposition entirely to arguing

---

[10] Trespass and computer tampering (SAC at ¶ 34) do not support the claim because Plaintiffs do not allege that Yahoo! installed spyware on users' computers.

1    academically that a freestanding cause of action for unjust enrichment exists in
2    California. *See* Opp. at 19-20. Yahoo! disagrees with Plaintiffs on this score, but the
3    academic question is irrelevant. For purposes of this motion, the significant (and
4    uncontested) point is that Plaintiffs cannot use common counts to hold Yahoo! liable
5    for alleged promises that vary the Master T&C. The Court should dismiss these
6    claims for the same reason it dismissed Plaintiffs' previous unjust enrichment claim.

> **F.    Plaintiffs' Attempt to Resurrect Their Civil Conspiracy Claim by Summarily Alleging Misrepresentation Fails.**

9        In its Order, this Court dismissed Plaintiffs' claim for civil conspiracy on the
10    grounds that they "cannot maintain an action for civil conspiracy without sufficiently
11    pleading the elements of an underlying, independent tort claim." Order at 8.
12    Plaintiffs responded by re-alleging civil conspiracy, now tethered to a superficial
13    misrepresentation claim based on Yahoo!'s alleged "promise" that the placement of
14    Plaintiffs' ads would be "highly targeted," and that Yahoo! failed to disclose where all
15    of Plaintiffs' clicks were coming from. SAC ¶¶ 78-84. Yahoo! noted in its
16    Memorandum that both of these claims fail on multiple levels. The Opposition does
17    nothing to change that analysis.

> **1.    Plaintiffs Do Not Allege A Viable Misrepresentation Claim.**

19        A plaintiff claiming misrepresentation must allege reliance. *Laster*, 407 F.
20    Supp. 2d at 1194. Plaintiffs have failed to allege that they or any other class members
21    actually relied on the alleged misrepresentations. In their Opposition, Plaintiffs cite an
22    allegation about the general motivations of advertisers for purchasing online
23    advertising products. *See* Opp. at 20. That allegation does not satisfy the pleading
24    requirement, which requires Plaintiffs to allege "that they saw, read, or in any way
25    relied on the advertisements." *Laster*, 407 F. Supp. 2d at 1194. Plaintiffs do not
26    respond regarding their failure to allege that Yahoo! had a duty to disclose the
27    information on which their concealment claim relies. *See* Memo. at 19, n.12.
28        Plaintiffs have also failed to allege the underlying facts of their

misrepresentation claim with the specificity required by Rule 9(b).  Rule 9(b) requires the plaintiff to "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).  There can be no dispute that Plaintiffs have failed to allege when or whether each of them or the putative class members saw the alleged misrepresentations.  Because Plaintiffs have failed to comply with the requirements of Rule 9(b), their claim for misrepresentation must be dismissed.

### 2. Plaintiffs Misrepresent the Statements Upon Which They Base Their Claim.

The sufficiency of their allegations notwithstanding, Plaintiffs' claim fails because documents properly before the Court contradict their allegations.  The Court previously denied Yahoo!'s motion to dismiss on the grounds that the "alleged statement that the advertisements would be 'targeted' is not so vague and unspecified that it amounts to puffery.  Rather, plaintiffs allege in the amended complaint that the term 'targeted' has a specific meaning in the context of internet advertising."  Order at 10.  Accordingly, Plaintiffs allege in the SAC that Yahoo! "represented ad displays would be 'highly targeted.'"[11]  Opp. at 2; *see also* SAC at ¶¶ 5, 26.  However, Yahoo! has already demonstrated that Plaintiffs have misrepresented the "highly targeted" language on which that allegation is based.  Memo. at 20; Wilson Decl., Ex. 4.  Despite the critical importance of this issue, Plaintiffs in their Opposition do not dispute that the "targeted" language in Yahoo!'s marketing materials referenced targeted <u>leads</u>, not targeted <u>placement</u>.  Indeed, they disregard the issue altogether.

---

[11] References in the SAC to "high quality" or "popular" placements must be disregarded as mere puffery.  *See* Order at 10; *see, e.g.,* SAC at ¶23; Opp. at 2.

1   "The courts … will not close their eyes to situations where a complaint contains

2   allegations of fact inconsistent with attached documents…. Thus, a pleading valid on

3   its face may nevertheless be subject to demurrer when matters judicially noticed by

4   the court render the complaint meritless." *Cicone v. URS Corp.*, 183 Cal. App. 3d

5   194, 204 (1986) (quoting *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal.

6   App. 3d 593, 604 (1981)); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

7   1295-96 (9th Cir. 1998).  In this case, the documents contradicting Plaintiffs'

8   allegation of "highly targeted" placement warrant dismissal.

9   ### 3.  Plaintiffs' Claim for Conspiracy Fails Because It Is Insufficiently Pled and Because Yahoo!'s Alleged Co-Conspirators Owed No Duty to Plaintiffs.

10

11   Plaintiffs cannot allege conspiracy if their misrepresentation claim is dismissed.

12   Order at 7-8; *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511

13   (1994) ("Standing alone, a conspiracy does no harm and engenders no tort liability.  It

14   must be activated by the commission of an actual tort.").  However, even if Plaintiffs'

15   misrepresentation claim were to survive, the conspiracy claim must still be dismissed

16   because Plaintiffs have not sufficiently pled an agreement.  Further, its alleged co-

17   conspirators neither owed nor violated any duty to Plaintiffs.

18   Conspiracy requires Plaintiffs to allege that Yahoo! and its alleged co-

19   conspirators entered into agreements to commit the misrepresentation that predicates

20   the claim. *See Wasco Prods., Inc. v. Southall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir.

21   2006); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1133 (C.D. Cal.

22   2003).  Plaintiffs direct the Court to their allegation of unspecified "syndication

23   agreements" between Yahoo! and the John Doe defendants.  Opp. at 21-22.  But they

24   do not allege that these alleged agreements were formed for the purpose of carrying

25   out the misrepresentation.  Their claim should be dismissed.

26   More importantly, Plaintiffs' conspiracy claim must be dismissed because

27   Yahoo!'s alleged co-conspirators neither owed nor breached any duty to Plaintiffs.

28   Under California law, "a claim for civil conspiracy does not arise unless the alleged

1   conspirator owed the victim a duty not to commit the underlying tort." *Neilson*, 290

2   F. Supp 2d at 1133; *see also Doctor's Co. v. Sup. Ct.*, 49 Cal. 3d 39, 44 (1989) ("A

3   cause of action for civil conspiracy may not arise … if the alleged conspirator … was

4   not personally bound by the duty violated by the wrong-doing and was acting only as

5   the agent … of the party who did have that duty.").

6        Plaintiffs' citation to *Allen v. Powell*, 248 Cal. App. 2d 502, 509 (1967), is

7   inapposite.  That case involved two parties to a real estate contract who allegedly

8   conspired to withhold a sales commission from the real estate broker.  *Id.* at 505-06.

9   By contrast, any duty owed to Plaintiffs in this case arose solely from the Master

10   T&C.  Plaintiffs have not alleged that the John Doe defendants were parties to the

11   Master T&C or otherwise undertook duties attendant to it.  Accordingly, the John Doe

12   defendants owed Plaintiffs no duty, and the civil conspiracy claim must be dismissed.

13       **G.**    **Plaintiffs Cannot Sustain a Section 17200 Claim Against Yahoo!.**

14        Plaintiffs invoke Cal. Bus. & Prof. Code § 17200 (the "UCL") – a statute

15   enacted to protect individual consumers and commercial competitors from unfair

16   business competition.  As businesses that do not compete with Yahoo!, and do not

17   allege that they compete, Plaintiffs lack standing to assert this claim.  Furthermore, the

18   claim fails on its merits because it is based on Plaintiffs' mischaracterization of

19   Yahoo!'s marketing statements.[12]

20           **1.**    **Plaintiffs Lack Standing Because They Are Neither Consumers**

21                **Nor Yahoo!'s Competitors.**

22        The "UCL was enacted to protect consumers and competitors." *O'Brien*, 2008

23   WL 802350, at *4; *see also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002); *Linear*

24   *Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007).  Thus,

25   "where a UCL action is based on contracts not involving either the public in general

26

27   ───────────────────────

   [12] The argument that Yahoo! is barred from challenging the UCL claim has no more

28   merit here than it did as to the good faith and fair dealing claim.  *See supra*, at 15, n.8.

1  or individual consumers who are parties to the contract, a corporate plaintiff may not

2  rely on the UCL for the relief it seeks." *Linear*, 152 Cal. App. 4th at 135; *see also*

3  *Rosenbluth Int'l., v. Sup. Ct.*, 101 Cal. App. 4th 1073, 1078 (2002).  Plaintiffs

4  distinguish *Rosenbluth* on the grounds that it involved more negotiation than is

5  alleged in this case.  *See* Opp. at 23, n.13.  But the rule against corporate standing is

6  not limited to individually negotiated contracts.  Indeed, such a limitation would be

7  contrary to the manifest purpose of the UCL.

8        Plaintiffs lack standing to assert a UCL claim on behalf of themselves or the

9  putative class because, as the Court previously ruled, they are businesses and not

10  consumers.  *See* Memo. at 5, n.1.  Their action is based on a fully integrated

11  commercial contract that does not involve the public or individual consumers.  *See*

12  T&C at ¶ 7 ("You represent, warrant and covenant that … you are a business, not a

13  consumer, and that your use of Yahoo! Search Marketing's services is solely for

14  lawful commercial and business purposes.").  Their UCL claim must be dismissed.

**2.    Lack of Causation Is Fatal to Plaintiffs' Claim.**

16        In its Memorandum, Yahoo! explained how the lack of causation in *Brown v.*

17  *Bank of Am., N.A.*, 457 F. Supp. 2d 82 (D. Mass. 2006) (cited approvingly in *Hall v.*

18  *Time Inc.*, 158 Cal. App. 4th 847, 856 (2008) is analogous to the case at bar.  Memo.

19  at 23.  *Brown* demonstrates that a UCL claim fails for lack of causation when the

20  causal connection between the alleged misrepresentation and the plaintiffs' loss is

21  broken.  *Brown*, 457 F. Supp. 2d. at 89.  In that case, the connection was broken when

22  the plaintiffs' accepted the additional ATM fee because they could have chosen to

23  terminate the transaction rather than pay the fee.  *Id.*

24        The situation is the same here.  Yahoo!'s advertisers, including Plaintiffs, set

25  their own prices by bidding on the keywords they believe will allow them to attract

26  customer leads.  Yahoo! charges them only up to the bid price they set and only when

27  a user actually clicks on one of their ads.  They are free to reduce their bid price (and

28  therefore the amount they pay to Yahoo!) if they believe they are not receiving

1   sufficient return value on their advertising spend.  They can also remove their ads

2   from Yahoo!'s online marketplaces and spend nothing, or terminate their relationship

3   with Yahoo! at any time and for any reason without penalty.  *See* Wilson Decl., Exh.

4   4, pp. 31-35 at ¶¶ 2, 3, 11.  There is less causation here even than in *Brown*, where the

5   plaintiffs could only accept or reject the set fee.

### 3.   Plaintiffs' Allegations of Yahoo!'s Unfair Business Practices Are Belied by the Marketing Materials They Cite.

8   Dismissal is also appropriate because the substantive basis for the Court's

9   denial of Yahoo!'s previous motion to dismiss has evaporated.  This Court previously

10  allowed Plaintiffs' UCL claim to survive because they alleged that Yahoo! "made

11  affirmative representations that advertisements would be 'highly targeted.'"  Order at

12  10.  The Court reasoned that under the "liberal notice pleading standard," Plaintiffs

13  might be able to show that Yahoo! had "'frustrate[d] the legitimate expectations of

14  its'" advertisers if it promised but did not deliver targeted ad placement.  Order at 10

15  (quoting *McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142, 1154 (N.D. Cal. 2002).

16  Now that the document Plaintiffs cite as the basis for their "ad targeting" allegations is

17  before the Court, dismissal is required.  *See* Wilson Decl., Ex. 4; *see also Steckman*,

18  143 F.3d at 1295-96 (The court is "not required to accept as true conclusory

19  allegations which are contradicted by documents referred to in the complaint.").

20  Yahoo! has already demonstrated that its marketing materials refer to targeted

21  customer leads, not targeted ad placement.  *See supra*.  In the context of the UCL

22  claim, this means that the only way Plaintiffs' could have been deceived or had their

23  legitimate expectations frustrated is if they:  1) viewed such materials; and 2) were not

24  able to obtain targeted customer leads.  Plaintiffs have never made such an allegation,

25  despite two years of litigation, three complaints and multiple briefs.

26  This illustrates a critical difference between the facts at bar and those at issue in

27  *McCollum*, upon which the Court relied in its Order.  In *McCollum*, the court found

28  that the employee had a legitimate interest in receiving a commission she had earned,

1   which the employer may have frustrated by invoking an "escape clause" to "retain
2   monies earned by its employees." *McCollum*, 212 F. Supp. 2d at 1154.  Here, by
3   contrast, if any Plaintiffs reviewed the cited materials and relied on them, their only
4   legitimate expectation was that their choice of advertisement language, keywords and
5   bid prices would generate leads for potentially interested customers.  Nothing alleged
6   in the SAC suggests Yahoo! frustrated that expectation at all, let alone in the
7   egregious manner illustrated in *McCollum*.

8        **H.**    **Plaintiffs Fail to Comply with Rule 8(c) or Rule 12(e).**

9            **1.**    **The Court Must Analyze Yahoo!'s Motion Based on the**
10                  ***Twombly* Standard.**

11      Rule 8(a) has been tightened since Yahoo!'s previous motion to dismiss.  *See*
12  Memo. at 2-3 (citing *Twombly*, 127 S. Ct. at 1974).  *Twombly* clarified that even under
13  the liberal notice pleading standard, plaintiffs must go beyond labels, conclusions and
14  formulaic elements, and must allege grounds for relief sufficient to demonstrate that
15  relief is actually plausible. *See id*. at 1964-65.  Plaintiffs erroneously suggest that
16  *Twombly*'s more rigorous standard was limited to antitrust "conscious parallelism"
17  cases.  Opp. at 4, n.2.  Far from limiting its holding, the Court identified the standards
18  above as "general standards" of pleading that it happened to be applying to an antitrust
19  case. *Twombly*, 127 S. Ct. at 1965.  Plaintiffs also wrongly state that the Ninth Circuit
20  has declined to extend *Twombly* beyond antitrust.  As recently as April 1, the court
21  applied the *Twombly* standard in an employment retaliation context. *See Mendiondo*
22  *v. Centinela Hosp. Med. Ctr.*, 2008 WL 852186, at *4 (9th Cir. Apr. 1, 2008).

23      Plaintiffs' citation of *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007), is
24  inapposite. *Erickson* does not articulate a more lenient standard than *Twombly*; it
25  merely cites *Twombly* for boilerplate standards language unrelated to the substance of
26  that decision. *See id.* at 2200.

27           **2.**    **Plaintiffs Have Not Met Rule 12(e)'s Specificity Requirement.**
28      Rule 12(e) requires a party to plead with sufficient particularity for the

1  opposing party to "reasonably prepare a response." Fed. R. Civ. P. 12(e).  In cases

2  alleging claims against multiple defendants, a complaint does not provide sufficient

3  notice to the defendant when it fails to identify "each alleged act by each defendant."

4  *Veltman v. Walpole Pharm., Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996).  The

5  SAC fails to differentiate between the conduct of the various defendants, and also fails

6  to separately state Plaintiffs' own claims so that their individual claims may be

7  assessed both in terms of their merits and the individual plaintiffs' standing to sue on

8  behalf of putative class members.  Memo. at 25; *see also Griffin*, 823 F.2d at 1483.

9       With respect to differentiating among the defendants, Plaintiffs argue that they

10 need not differentiate between conduct by Yahoo! and Overture because the latter is a

11 wholly-owned subsidiary of the former.  Opp. at 25.  Elsewhere, however, Plaintiffs

12 also argue that they are entitled to pursue claims against Overture prior to its

13 acquisition by Yahoo!.  Opp. at 11-12.  Their position is internally inconsistent and

14 prevents Yahoo! from framing a responsive pleading.  The SAC also fails to identify

15 those allegations that relate to the conduct of the John Doe defendants.  If Plaintiffs

16 are permitted to proceed on any legal theory against Yahoo! and Overture together,

17 they should be required to explain what allegations relate to which defendant and how

18 each defendant's conduct injured Plaintiffs so that Yahoo! can frame an appropriate

19 responsive pleading.  Plaintiffs do not respond with respect to their failure to

20 separately state their own claims.

21 **III.   CONCLUSION**

22      For the reasons stated herein and in the Memorandum, the SAC should be

23 dismissed.

24 Dated:  April 11, 2008          By:_____/s/_____

25                     Dennis L. Wilson

                    Keats McFarland & Wilson LLP

26                     Attorneys for Defendants,

27                     Yahoo! Inc. and Overture Services,

                    Inc.

28

## DECLARATION OF SERVICE BY MAIL

### *In Re Yahoo! Litigation*

### U.S.D.C., Central Dist. of California, Case No.:  CV-06-2737 CAS (FMOx)

I, the undersigned, say:

I am and was at all times herein mentioned a resident of the County of Los Angeles, over the age of eighteen (18) years and not a party to the within action or proceeding.  My business address is 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California 90212, and I am employed in the offices of Keats McFarland & Wilson LLP by a member of the Bar of this Court at whose direction the service mentioned hereinbelow was made.

I am readily familiar with the normal business practice of my employer for the collection and processing of correspondence and other materials for mailing with the United States Postal Service.  In the ordinary course of business, any materials for mailing with the United States Postal Service and placed by me for collection in the office of my employer is deposited the same day with the United States Postal Service.

On April 11, 2008, I served the within:

**REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT**

upon counsel named below by placing a true and correct copy thereof in an envelope addressed as follows:

### SEE ATTACHED SERVICE LIST

BY MAIL: I sealed said envelope(s) and, following the ordinary business practices of my employer, placed said sealed envelope(s) in the office of my employer at 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California, for collection and mailing with the United States Postal Service on the same date.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed on April 11, 2008, at Beverly Hills, California.



_____
TANYA GLOVER

1

## SERVICE LIST

Jonathan Shub, Esq.
Seeger Weiss LLP
1515 Market Street, Ste. 1380
Philadelphia, PA 19102
Tel:    (215) 564-2300
Fax:    (215) 851-8029
jshub@seegerweiss.com
**Co-Counsel for Plaintiffs**

Oren Giskan, Esq.
Giskan Solotaroff & Anderson LLP
11 Broadway, Suite 2150
New York, New York 10004
Tel:    (212) 847-8315
Fax:    (212) 473-8096
ogiskan@gslawny.com
**Co-Counsel for Plaintiffs**

Marc Edelson, Esq.
Edelson & Associates
45 West Court Street
Doylestown, PA 18901
Tel:    (215) 230-8043
Fax:    (215) 230-8735
medelson@hofedlaw.com
**Co-Counsel for Plaintiffs**

Alan M. Feldman, Esq.
Thomas More Marrone, Esq.
Feldman, Shepherd, Wohlgelernter & Tanner
25th Floor, 1845 Walnut Street
Philadelphia, PA 19103
Tel:    (215) 567-8300
Fax:    (215) 567-8333
afeldman@feldmanshepherd.com
tmarrone@feldmanshepherd.com
**Co-Counsel for Plaintiffs**

Lisa J. Rodriguez, Esq.
Donna Siegel Moffa, Esq.
Trujillo Rodriguez & Richards, LLC
8 Kings Highway West
Haddonfield, NJ 08033
Tel:    (856) 795-9002
Fax:    (856) 795-9887
lisa@trrlaw.com
donna@trrlaw.com
**Co-Counsel for Plaintiffs**

2