UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|----------------------|------|----------------|
| Title | IN RE YAHOO! LITIGATION | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|------------------------|---------------------|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|-----------------------------------|-----------------------------------|
| Benjamin Edelman | Dennis Wilson |
| Michael Boni | Larry McFarland |
| Paul Kiesel | |
| Michael Donovan | |

**Proceedings:**     **DEFENDANTS' MOTION TO DISMISS** (filed 02/29/08)

## I.     INTRODUCTION

On May 4, 2006, plaintiffs filed the instant action, on behalf of themselves and all others similarly situated, against defendants Yahoo!, Inc. ("Yahoo!"); Yahoo!'s wholly-owned subsidiary, Overture Services, Inc. ("Overture"); and John Doe companies 1-100, inclusive. Plaintiffs filed a consolidated amended class action complaint ("CAC") on July 14, 2006. On October 30, 2006, the Court granted in part and denied in part defendants' motion to dismiss the CAC. Plaintiffs filed a consolidated second amended complaint ("SAC") on November 20, 2006.

The SAC alleges that defendants are owners and operators of Internet search engines and websites. SAC ¶ 1. The SAC alleges defendants charge advertisers fees for displaying their advertisements on defendants' websites, and that plaintiffs are advertisers who have paid advertising fees to defendants. Id. ¶¶ 12-15.

According to the SAC, defendants have breached their advertising agreement with plaintiffs in a number of ways. The SAC alleges that defendants promised to place plaintiffs' advertisements on websites that were targeted to plaintiffs' likely customers, but that instead, defendants placed plaintiffs' advertisements in an untargeted manner. Id. ¶¶ 3-10, 24-30. Specifically, the SAC alleges that defendants placed plaintiffs' advertisements inside of "spyware" programs, on "typosquatting" websites, and on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

"parking" and bulk registration sites, despite defendants' promises not to do so.[1]  Id. ¶¶ 3-10, 33-45.  The SAC further alleges that in light of defendants' wrongful advertisement placement practices, defendants overcharged plaintiffs for advertising services.[2]  Id. ¶ 46. Plaintiffs allege the following claims: (1) breach of contract; (2) restitution, unjust enrichment, and money had and received; (3) misrepresentation and civil conspiracy; (4) and violations of California's unfair competition law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL").

On February 29, 2008, defendants filed motions to dismiss and for a more definite statement.  Plaintiffs filed an opposition thereto on March 21, 2008.  On April 11, 2008, defendants filed a reply.  A hearing was held on April 21, 2008.  After carefully

_____

[1] According to the SAC, "spyware" refers to "a broad class of unwanted software programs installed on users' computers, either without their consent or without their informed consent, that take actions adverse to the users' interests such as, for example, causing unwanted and annoying pop up ads, transmitting personal information about the user, and slowing the user's computer."  SAC ¶ 33.

The SAC alleges that "parking" and bulk registration sites refer to websites that "appear if users incorrectly guess, mis-remember or otherwise mistype a domain name." Id. ¶ 45.

The SAC alleges that "typosquatting" refers to the practice of registering domain names, or web addresses, that are identical or confusingly similar to the names of well-known companies, products, and trademarks.  Id. ¶ 40.

[2] According to the SAC, plaintiffs' advertising charges are determined entirely by the number of times their advertisements are selected -- or "clicked" -- by Internet users, rather than on the basis of projections or assumptions as to how many users will view their advertisements.  SAC ¶ 62.  Moreover, plaintiffs concede that pursuant to their agreement with defendants, defendants are under no obligation to display plaintiffs' advertisements at all.  Id. ¶¶ 63-64.  However, plaintiffs allege that defendants breached their contractual obligations to defendants when they charged plaintiffs at a premium rate for those occasions when Internet users clicked on plaintiffs' advertisements when they were displayed on untargeted websites.  Id. ¶¶ 65-67.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6).  United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

**B.     Rule 12(f)**

A motion to strike material from a pleading is made pursuant to Rule 12(f).  Under Rule 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous."  A Fed. R. Civ. P. 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material.  The Court may also strike under Fed. R. Civ. P. 12(f) a prayer for relief which is not available as a matter of law.  Tapley v. Lockwood Green Engineers, 502 F.2d 559, 560 (8th Cir. 1974).  The essential function of a Fed. R. Civ. P. 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).  Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Fed. R. Civ. P. 12(f) are disfavored.  Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

**C.     Rule 12(e)**

Fed. R. Civ. P. 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. of Civ. P. 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired."

## III.   DISCUSSION

### A.   Motion to Dismiss

#### 1.   Whether Plaintiffs Have Waived Their Right to Bring This Action as a Class Action

Defendants contend that plaintiffs have waived their right to bring a class action that alleges claims arising from their advertising agreement with defendants.  They rely on the following provision in the Advertiser Master Services Terms and Conditions ("the Agreement"), from which plaintiffs' claims indisputably arise:

> Any dispute referring or relating to the Agreement or between the parties shall be governed by the laws of the State of California, without regard to its conflict of laws principles. You agree to submit to the exclusive jurisdiction of the state and federal courts located in the County of Los Angeles, California or another location designated by Overture.  *Any claim against Overture arising from this Agreement shall be adjudicated on an individual basis, and shall not be consolidated in any proceeding with any claim or controversy of any other party.*

Declaration of Dennis Wilson ("Wilson Decl."), Ex. 3 at 7 (The Agreement ¶ 13).[3]

---

[3] The Court may properly consider documents whose contents are alleged in the complaint when their authenticity is not questioned.  <u>Marshall v. Standard Ins. Co.</u>, 214 F. Supp. 2d 1062 (C.D. Cal. 2000).  Plaintiffs do not dispute the authenticity of the Agreement submitted by defendants, and the complaint apparently refers to the Agreement.  "[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  <u>Steckman v. Hart Brewing,</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|------------------------|------|----------------|
| Title | IN RE YAHOO! LITIGATION | | |

Plaintiffs respond with several procedural and substantive arguments.

### a.    Plaintiffs' Procedural Arguments

Plaintiffs first argue that defendants' class action waiver argument is essentially a motion to strike the class action claims pursuant to Fed. R. Civ. P. 12(f).  Plaintiffs contend that, pursuant to Rule 12(f), defendants were required to raise this argument within 20 days after service of the complaint.  However, the Court, in its discretion, may consider untimely motions to strike and grant them if doing so seems proper.  5C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2004).  "[T]he time limitations set out in Rule 12(f) should not be applied strictly when the motion to strike seems to have merit."  Id.  The Court, in its discretion, shall treat defendants' motion to dismiss plaintiffs' class claims under Rule 12(b)(6) as a motion to strike under Rule 12(f) and shall consider it on the merits.

Plaintiffs also argue that defendants waived the class action waiver argument because they failed to raise it in their motion to dismiss plaintiffs' first amended consolidated class action complaint and because plaintiffs would be prejudiced if defendants were permitted to raise this argument now.  Plaintiffs cite to Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708 (9th Cir. 2001), for the proposition that "[a] defendant who neglects to raise an affirmative defense in its first responsive motion may raise that argument for the first time in a subsequent motion, but "only if the delay does not prejudice the plaintiff."  Opp'n 6.  Plaintiffs misquote Owens.  The court there stated, that "a defendant may . . . raise an affirmative defense for the first time in a *motion for judgment on the pleadings*, but only if the delay does not prejudice the plaintiff."  Owens, 244 F.3d at 713 (emphasis in original) (quotations omitted).  Because defendants have yet

_____

Inc., 143 F.3d 1293 (9th Cir. 1998).

In its October 30, 2006 Order granting in part and denying in part defendants' motion to dismiss the CAC, the Court determined that the Agreement "constitutes the complete, final, integrated agreement between the parties."  October 30, 2006 Order 5-6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

to file their answer in this action, plaintiffs' reliance on <u>Owens</u> is unavailing.[4]

Next, plaintiffs maintain that defendants are judicially estopped from asserting the class waiver clause in this action because Yahoo! stipulated to class certification in a separate action, <u>Checkmate Strategic Group, Inc. v. Yahoo!, Inc.</u>, No. CV 05-4588 CAS (FMOx), which, according to plaintiffs, involved the same class of plaintiffs and involved the same Agreement.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  <u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 782 (9th Cir. 2001).  The doctrine is invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'"  <u>Id.</u> (quoting <u>Russell v. Rolfs</u>, 893 F.2d 1033, 1037 (9th Cir. 1990)).  "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases."  <u>Id.</u> at 783.

The doctrine does not apply in this case.  First, Overture is not judicially estopped because it was not a party in <u>Checkmate</u>, and plaintiffs point to no other instance in which

---

[4] For the same reason, plaintiffs' reliance on Federal Rule of Civil Procedure 8(c), which pertains to affirmative defenses, is unavailing.  As the Ninth Circuit has stated,

> The requirement in Rule 8(c) that a party set forth the affirmative defenses listed in that rule applies only to responsive "pleadings," not to motions.  A motion to dismiss is not a pleading.  Unless a court has ordered otherwise, separate motions to dismiss may be filed asserting different affirmative defenses.

<u>Morrison v. Mahoney</u>, 399 F.3d 1042, 1046 (9th Cir. 2005).  Because the instant motion to dismiss is not a responsive pleading, Rule 8(c) is inapposite.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

Overture adopted an inconsistent position regarding the Agreement's class action waiver provision.  Moreover, Yahoo! did not adopt an inconsistent position in stipulating to the settlement class in Checkmate because this class involved different parties and different claims.[5]  Because asserting the class action waiver provision in this action does not require Yahoo! to adopt a position that is clearly inconsistent with any position that it adopted in Checkmate, the policies underlying the judicial estoppel doctrine are not implicated here.  Cf. Bischoff v. DirecTV, Inc., 180 F. Supp. 2d 1097, 1113 (C.D. Cal. 2002) ("to hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd.  A finding that DirecTV has waived its right to arbitrate in this case because it agreed to a settlement in the Brauer case would amount to a rule that a party to millions of arbitration agreements has no choice but to arbitrate all claims arising from those agreements if even a single settlement has occurred in a case.").

_____

[5] Checkmate involved a class composed of all persons, together with any officer, employee, independent contractor, principal, or agent of same, that have purchased advertisements with Yahoo! from January 1, 1998, through and including July 31, 2006, regardless of where the advertisements were displayed.  Checkmate Strategic Group, Inc. v. Yahoo!, Inc., No. CV 05-4588 CAS (FMOx), Docket 200 (Final Order Approving Settlement and Judgment of Dismissal with Prejudice ¶ 3).  By contrast, this action involves a class composed of

> All persons (including companies) who contracted with one or more Defendants for advertising at any time in the six (6) years preceding the filing of the first Class Action Complaint in this action [, i.e. since May 4, 2000].

SAC ¶ 48.

Plaintiffs also concede that this case involves different claims from those at issue in Checkmate.  See Id. ¶ 32 ("Yahoo's conduct alleged herein, and Plaintiffs' claims generally, comprises separate and distinct unlawful practices distinguishable from click fraud, which is the subject of other litigation, including Checkmate Strategic Group, Inc. v. Yahoo! Inc. et al., Cal CV 05-4588 CAS (FMOx), but not this litigation.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|----------------------|------|----------------|
| Title | IN RE YAHOO! LITIGATION | | |

Plaintiffs rely on <u>Carnegie v. Household Intern, Inc.</u>, 376 F.3d 656 (7th Cir. 2005), but this case is distinguishable. There, the defendants had urged that the district court accept a class as appropriate for settlement purposes. <u>Id.</u> at 659. After the district court's approval of the class settlement was appealed by objectors and overturned, the district judge to whom the case was reassigned certified what was essentially the same class, but limited the class to only certain claims. <u>Id.</u> Thereafter, the defendants appealed the district judge's certification of the class, but the court held that the defendants were precluded by the doctrine of judicial estoppel from challenging the adequacy of the class as a settlement class. <u>Id.</u> 659-61. The court reasoned that the policy underlying the doctrine "is fully engaged when a party obtains a judgment on a ground that it later repudiates," which, the court found, was what the defendants had done. <u>Id.</u> at 660.

As discussed <u>supra</u>, this case is distinguishable because <u>Checkmate</u> was a different case, involving different parties and claims from those at issue in this action. Therefore, <u>Carnegie</u> does not advance plaintiffs' argument.

      **b.    Whether the Class Action Waiver Provision Is Unconscionable**

          **i.    <u>Discover Bank</u> and Its Progeny**

Plaintiffs further contend that the class action waiver provision is unconscionable under California law. The leading case on this issue is <u>Discover Bank v. Super. Ct.</u>, 36 Cal. 4th 148 (2005), where the California Supreme Court considered whether class action waivers in consumer contracts of adhesion are unconscionable under California law. After explaining how class action remedies play an "important role in California law," the court set forth the general principles of unconscionability. <u>Id.</u> at 156-57, 160.

> [T]he doctrine has both a "procedural" and a "substantive" element, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results. The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. Substantively unconscionable terms may take various forms,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
| --- | --- | --- | --- |
| Title | IN RE YAHOO! LITIGATION | | |

but may generally be described as unfairly one-sided.

Id. at 160 (quotations omitted).

The court continued,

> [w]e agree that at least some class action waivers in consumer contracts are unconscionable under California law. First, when a consumer is given an amendment to its cardholder agreement in the form of a "bill stuffer" that he would be deemed to accept if he did not close his account, an element of procedural unconscionability is present. Moreover, although adhesive contracts are generally enforced, class action waivers found in such contracts may also be substantively unconscionable inasmuch as they may operate effectively as exculpatory contract clauses that are contrary to public policy. As stated in Civil Code section 1668: "All contracts which *have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury* to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

Id. at 160-61 (quotations and citations omitted; emphasis in original).

The court reasoned that, although class action waivers are not, in the abstract, contrary to public policy, class actions are, as a practical matter, often the only effective means of preventing companies from wrongfully exacting small sums of money from large numbers of consumers. Id. at 161. Under such circumstances, the court found, class action waivers are "indisputably one-sided," because it would be highly unlikely that a corporation, such as a credit card company, would sue its customers in a class action lawsuit. Id. "Such one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable." Id.

Summarizing its holding, the Court stated:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|------------------------|------|----------------|
| Title | IN RE YAHOO! LITIGATION | | |

> We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." (Civ.Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

Id. at 162-63.

Upon surveying the California case law that developed in the wake of Discover Bank, the Ninth Circuit distilled the following three-part inquiry for determining whether a class action waiver provision in a consumer contract is unconscionable: (1) whether the agreement is "a consumer contract of adhesion" drafted by a party that has superior bargaining power; (2) whether the agreement occurs "in a setting in which disputes between the contracting parties predictably involve small amounts of damages;" and (3) whether "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." Shroyer v. New Cingular Wireless Servs., 498 F.3d 976, 983 (9th Cir. 2007). "Under California law, a contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." Id. at 983 (quotations omitted).

The court further noted that "there are most certainly circumstances in which a class action waiver is unconscionable under California law despite the fact that all three parts of the Discover Bank test are not satisfied," but it did not probe these circumstances because, in that case, it found that all three considerations had been satisfied. Id. at 983.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

Less than two weeks later, the California Supreme Court spoke again on this issue, apparently calling into question aspects of Shroyer's three-part test.  In Gentry v. Super. Ct., 42 Cal. 4th 443 (2007), a case that considered the extent to which class arbitration waivers in employment contracts are unconscionable, the court stated that it had not intended to suggest in Discover Bank "that consumer actions involving minuscule amounts of damages were the only actions in which class action waivers would not be enforced."  Id. at 457.  Instead, the court noted, "Discover Bank was an application of a more general principle: that although '[c]lass action and arbitration waivers are not, in the abstract, exculpatory clauses,' [and therefore contrary to public policy,] Discover Bank, 36 Cal.4th at 161, such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy."  Gentry, 42 Cal. 4th at 457.

### ii.    Whether Class Action Waivers in Commercial Contracts Are Enforceable as a Matter of Law

Defendants argue, and plaintiffs do not dispute, that the Agreement is a commercial contract, executed by business entities, rather than a consumer contract.  See The Agreement ¶ 7 (providing that advertisers warrant and covenant that they are "a business, not a consumer, and that [their] use of Yahoo! Search Marketing's services is solely for lawful commercial and business purposes . . .").  Defendants contend that this fact distinguishes the instant case from Discover Bank, which, according to defendants, emphasized the public policy of protecting consumers from corporations that would seek to insulate themselves from potential liability.

Discover Bank set forth a set of circumstances wherein class action waivers are unconscionable, but it neither held that class action waivers are necessarily unconscionable, nor did it hold that class action waivers are unconscionable only in the circumstances that it described.  Cohen v. DirecTV, Inc., 142 Cal. App. 4th 1442, 1451 (2006).  As discussed supra, subsequent case law has given further definition to the principles underlying Discover Bank.  See Omstead v. Dell, Inc., 533 F. Supp. 2d 1012, 1022-25, 1027-1033 (N.D. Cal. 2008) (discussing cases).  While the majority of these cases involve consumer actions, at least two cases have applied Discover Bank's principles beyond the consumer context.  First, in Gentry, 42 Cal. 4th at 463, the court held that a class arbitration waiver in an employment agreement could be unenforceable where it was alleged that an employer had systematically failed to pay overtime to a class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

of employees.  Second, in <u>Independent Ass'n of Mailbox Center Owners, Inc. v. Super. Ct.</u>, 133 Cal. App. 4th 396, 410, 417 (2005), the court directed the trial court to strike as unconscionable a class arbitration waiver contained in a franchise agreement.

As defendants argue, <u>Gentry</u> and <u>Mailbox Center</u> do not necessarily support the extension of <u>Discover Bank</u>'s principles to the instant case.  <u>Gentry</u>'s holding turned on the court's concern that some class arbitration waivers may be impermissible de facto waivers of employees' statutory rights to paid overtime.  <u>Gentry</u>, 42 Cal. 4th at 457.  In <u>Mailbox Center</u>, the court observed that franchise agreements, can have "the same qualities of adhesion contracts as do certain consumer contracts, such as were discussed in <u>Discover Bank</u>, with regard to the availability of group arbitration."  <u>Mailbox Center</u>, 133 Cal. App. 4th at 410.  The commercial contract in this case neither presents concerns of nonwaivable statutory rights, as the <u>Gentry</u> court confronted, nor is it necessarily the type of agreement that tends to resemble an adhesion contract, as was the case with the franchise agreements at issue in <u>Mailbox Center</u>.

Thus, the Court considers, as a threshold matter, whether there is support for defendants' suggestion that in California, class action waivers in commercial contracts are not, as a general rule, unconscionable.

Much of the reasoning in <u>Discover Bank</u> turns upon the imbalance in bargaining power between the consumer and the company, which is a common feature of many form contracts.  Furthermore, it has been observed that California courts have "not been solicitous of businessmen in the name of unconscionability."  <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal. App. 3d 473, 489 (1982).  In <u>A & M Produce</u>, the court explained that "courts view businessmen as possessed of a greater degree of commercial understanding and substantially more economic muscle than the ordinary consumer.  Hence, a businessman usually has a more difficult time establishing procedural unconscionability in the sense of either 'unfair surprise' or 'unequal bargaining power.'"  <u>Id.</u>; <u>see also</u> <u>Perdue v. Crocker Nat'l Bank</u>, 38 Cal. 3d 913, 927 (1985) (noting that the buyer's lack of sophistication is a relevant consideration in determining the existence of procedural unconscionability).

However, <u>A & M Produce</u> recognized that "[w]ith increasing frequency, courts have begun to recognize that experienced but legally unsophisticated businessmen may be unfairly surprised by unconscionable contract terms," and that "even large business

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
| Title | IN RE YAHOO! LITIGATION | | |

entities may have *relatively* little bargaining power, depending on the identity of the other contracting party and the commercial circumstances surrounding the agreement." Id. at 489-90 (emphasis in original) (citing cases). With respect to both consumer and commercial contracts, the court noted that "the social benefits associated with freedom of contract are severely skewed where it appears that had the party actually been aware of the term to which he 'agreed' or had he any real choice in the matter, he would never have assented to inclusion of the term." Id. at 490; see also Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 817-18 (1981) (noting that contracts of adhesion are "an inevitable fact of life for all citizens -- businessman and consumer alike."); Morris v. Redwood Empire Bancorp, 128 Cal. App. 4th 1305, 1322 (2005) (not finding procedural unconscionability in the contract at issue, but noting, "[w]e recognize the concept of unconscionability applies to businesses as well as consumers.").

The foregoing authorities illustrate that the concerns that led to the holding in Discover Bank -- in particular, unequal bargaining power between the contracting parties and the concern that the more powerful or sophisticated contracting party will exploit the other party -- can be relevant to consumer and commercial contracts alike. Moreover, although Discover Bank's holding addresses only consumer contracts, nothing in that decision forecloses the possibility that a class action waiver in a commercial contract may be deemed unconscionable under certain circumstances. Defendants point to no authority to support their contention that class action waivers in commercial contracts should be treated differently than such waivers in consumer contracts, and the Court has identified none. Accordingly, there appears to be no basis for concluding that class action waivers in the commercial context cannot be found to be unconscionable and unenforceable. To the extent that commercial contracts present considerations and circumstances that are different from those involved in consumer contracts, these differences can be addressed as part of the analysis set forth in Discover Bank for determining whether a class action waiver is unconscionable.

### iii.    **Discover Bank** Analysis

Defendants begin by contending that it is plaintiffs' burden to establish that the class action waiver provision in the Agreement is unconscionable. Crippen v. Central Valley RV Outlet, 124 Cal. App. 4th 1159, 1165 (2004). Arguing that the Agreement is not a contract of adhesion, defendants point out that plaintiffs do not allege that defendants engaged in any high-pressure tactics or external pressure to accept the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|------------------------|------|----------------|
| Title | IN RE YAHOO! LITIGATION | | |

Agreement, and they note that plaintiffs have not alleged that they were incapable of reading and understanding its terms before accepting.  Furthermore, defendants contend that plaintiffs could have, in their discretion, ceased advertising with defendants with impunity.  Defendants also argue that plaintiffs were free to have sought out alternative means of advertising, in lieu of contracting with defendants.

Defendants further contend that, unlike in <u>Discover Bank</u>, plaintiffs' allegations do not "predictably involve small amounts of damages."  They argue that while the SAC alleges that "[t]he damages suffered by each individual class member likely will be relatively small," and that "it would be virtually impossible for the class members individually to effectively redress the wrongs done to them," SAC ¶ 53,  these are mere conclusions that are unsupported by any specific factual allegations.  Defendants contend that the allegations in the SAC indicate that individual plaintiffs will claim large amounts in damages.

Finally, defendants argue, unlike in <u>Discover Bank</u>, plaintiffs can never show that defendants "carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money," because plaintiffs are not consumers and their claims are not for individually small sums of money.  Defendants further contend that, unlike in <u>Discover Bank</u>, the Agreement does not effectively insulate defendants from liability.  In this regard, defendants maintain that under the Agreement, any individual advertiser is permitted to litigate its claims against defendants in a state or federal court in Los Angeles.

Notwithstanding these arguments, the Court finds that defendant's motion to dismiss plaintiff's class action claims are best considered on a motion for summary judgment.  As many cases have observed, whether or not the class action waiver provision is unconscionable "depends on the facts and circumstances developed during the course of litigation."  <u>Douglas v. U.S. Dist. Ct.</u>, 495 F.3d 1062, 1068 (9th Cir. 2007); <u>see</u>, <u>e.g.</u>, <u>Brazil v. Dell, Inc.</u>, 2007 U.S. Dist. LEXIS 59095, at *10 (N.D. Cal. 2007) ("whether a class action waiver provision will be considered unconscionable in California is a fact-specific, case-by-case inquiry."); <u>Bolter v. Super. Ct.</u>, 87 Cal. App. 4th 900, 907 (2001) ("a claim of unconscionability often cannot be determined merely by examining the face of a contract, but will require inquiry into its commercial setting, purpose, and effect.") (quotations omitted); <u>accord</u> <u>Mailbox Center Owners, Inc. v. Super. Ct.</u>, 133 Cal. App. 4th 396, 407 (2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

As discussed <u>supra</u>, the Court does not find that the class action waiver provision in the Agreement is enforceable as a matter of law merely because it is a commercial contract. Instead, the determination of whether, under <u>Discover Bank</u>, the class action waiver provision is unenforceable turns on a number of factual considerations. For example, it cannot be determined from the face of the complaint or from the Agreement whether or not defendants had superior bargaining power, what external pressures may have acted upon plaintiffs in entering into the Agreement, or the extent to which plaintiffs could have feasibly chosen alternative means of advertising. Likewise, because it is not known what damages individual plaintiffs are claiming, it cannot be determined whether it would be practical for plaintiffs to pursue individual remedies.[6] <u>Gentry</u>, 42 Cal. 4th at 457. Thus, the Court DENIES defendants' motion to dismiss plaintiffs' class claims without prejudice to its being renewed upon a more developed evidentiary record.

**2.      Standing**

Defendants contend that plaintiffs lack standing to proceed with any of their claims because they have failed to allege an injury in fact. Defendants argue that the SAC alleges injuries only to the class members, but does not specify that the named plaintiffs have suffered any injury.

---

[6] Defendants rely on <u>Feldman v. Google, Inc.</u>, 513 F. Supp. 2d 229 (E.D. Pa. 2007), in which the court, applying California law, held that the forum selection clause in an advertising agreement with Google was neither procedurally nor substantively unconscionable. <u>Id.</u> at 241-43. This case is distinguishable insofar as it does not address class action waiver provisions and it does not discuss <u>Discover Bank</u>. Moreover, unlike in this case, the <u>Feldman</u> court addressed this issue in the context of a motion for summary judgment, rather than as a motion to dismiss. <u>Id.</u> at 234. The court noted that "[m]atters outside the pleadings had to be considered to address the motion adequately," and before it issued its ruling, the court had ordered the parties "to submit information regarding the clickwrap agreement and the manner into which it was entered." <u>Id.</u> <u>Feldman</u> lends support to the Court's determination herein to defer ruling on defendants' motion on the merits until after the parties are able to identify evidence relevant to the considerations set forth in <u>Discover Bank</u>.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|----------------------|------|----------------|
| Title | IN RE YAHOO! LITIGATION | | |

This argument lacks merit. Paragraph 9 of the SAC provides as follows:

> [n]ow Plaintiffs have learned that Yahoo has been charging them premium prices for placing ads completely outside of Yahoo's Sponsored Search and Content Match products (as Yahoo itself describes those products). Instead, Defendants have placed Plaintiffs' advertisements in a variety of Internet locations without any bona fide content, including spyware pop-up ads, typosquatting sites and other Internet back-alleys.

Defendants contend that plaintiffs concede elsewhere in the SAC, at paragraph 62, that advertisers are charged by defendants based on the number of times that an Internet user clicks on their advertisement, not merely based on where defendants place their advertisements. Defendants contend that because plaintiffs are not charged on the basis of the placement of their ads, paragraph 9 does not, in fact, allege that plaintiffs suffered any injury.

Reading paragraphs 9 and 62 in combination, however, it is apparent that the basis for plaintiffs' claimed injury is that defendants allegedly overcharged them for the advertising services that plaintiffs received when defendants charged them at premium rates when Internet users clicked on plaintiffs' advertisements while they were displayed on untargeted websites. Plaintiffs have alleged an injury in fact that gives them standing to proceed with this lawsuit. Defendants' motion to dismiss the SAC on this ground is therefore DENIED.

### 3.     Standing to Allege Claims Against Overture

Defendants contend that plaintiffs may not allege claims against Overture in connection with Overture's conduct occurring before it was acquired by Yahoo! because, according to defendants, none of plaintiffs' advertising contracts is alleged to have predated this acquisition.[7]  However, the SAC alleges that "at all relevant times" plaintiffs paid for and placed advertisements with defendants. SAC ¶¶ 12-15. To the

---

[7] Defendants do not specify when Yahoo! acquired Overture. Plaintiffs state in their opposition, however, that Yahoo! acquired Overture in "late 2003." Opp'n 12 n.6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|------------------------|------|----------------|
| Title | IN RE YAHOO! LITIGATION | | |

extent that defendants are in possession of evidence indicating that plaintiffs had no contracts with Overture prior to its acquisition by Yahoo!, this must be raised in connection with a motion for summary judgment. For the purposes of this motion to dismiss, the Court must take as true the allegations in the SAC. Accordingly, defendants' argument regarding plaintiffs' claims against Overture is unavailing. Thus, the Court DENIES defendants' motion to dismiss the claims against Overture.

### 4. Breach of Contract

Plaintiffs allege that defendants breached their contractual obligations to plaintiffs when they failed to provide plaintiffs the "highly targeted" advertising services that defendants promised. Defendants argue that plaintiffs' breach of contract claim must be dismissed because the express terms of the Agreement indicate that defendants never promised that plaintiffs would receive targeted advertisement placement. Defendants point to paragraph 4 of the Agreement, entitled "USE OF OVERTURE SUBMISSIONS":

> Overture does not guarantee that your listings will be placed in or available through the Sponsored Listings Marketplace Distribution Network, the Sponsored Listings Marketplace or the Sponsored Listings Marketplace Results, nor does Overture guarantee that your listings will appear in a particular position or rank, and Overture reserves the right to not place your listings and to stop placing or to remove your listings at any time for any reason. Final decision as to inclusion, relevancy, placement and the like is at Overture's sole discretion.

The Agreement 10.

Defendants further argue that the Agreement does not state that defendants will not place plaintiffs' advertisements in spyware, typosquatting sites, or other such undesirable sites. Additionally, defendants argue that while the Agreement provides that plaintiffs' advertisements "may be distributed through the Yahoo! Search Marketing Distribution Network based upon certain user targeting initiatives," defendants do not promise in the Agreement to use such targeting initiatives, as opposed to random placement. Agreement 5 at ¶ 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|------------------------|------|----------------|
| Title    | IN RE YAHOO! LITIGATION |     |                |

Plaintiffs respond that, notwithstanding the foregoing provisions, the Agreement's references to "Sponsored Search" and "Content Match" products, which, according to plaintiffs, are not defined in the Agreement, indicate that defendants promised to "target" plaintiffs' advertisements.  Plaintiffs argue that defendants represented in their sales and marketing materials that, by purchasing these products, plaintiffs would receive "highly targeted" advertising services.  Plaintiffs further argue that to the extent defendants charged plaintiffs for advertising services other than "Sponsored Search" and "Content Match" services -- i.e, to the extent that defendants charged plaintiffs for untargeted advertising services -- defendants breached their contractual obligations.

Defendants point out that plaintiffs may not use extrinsic evidence to add to, detrat from, or vary the express terms of the Agreement.  Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 39 (1968).  They contend that plaintiffs' reference to defendants' marketing materials that purportedly show that defendants promised to target plaintiffs' advertisements is intended to do just that.

At this stage of the proceedings, however, the Court is unable to dismiss, out of hand, plaintiffs' contention that extrinsic evidence will show that they bargained for targeted advertising services, even if the Agreement appears on its face to state otherwise. Pac. Gas, 69 Cal. 2d at 39.  Under Pacific Gas, the Court must interpret the Agreement after undertaking "at least a preliminary consideration of all evidence offered to prove the intention of the parties."  Id.  As the Ninth Circuit has stated,

> [u]nder Pacific Gas, it matters not how clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor how squarely it addresses the issue before the court: the contract cannot be rendered impervious to attack by parol evidence.  If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court must consider extrinsic evidence of possible ambiguity.

Trident Ctr. v. Connecticut Gen. Life Ins. Co., 847 F.2d 564, 569 (9th Cir. 1988); see also, A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div., 852 F.2d 493, 497 n.2 (9th Cir. 1988) ("courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|------------------------|------|----------------|
| Title | IN RE YAHOO! LITIGATION | | |

Trident noted that Pacific Gas does not prevent a party from moving for summary judgment after completion of discovery on the issue of the proper interpretation of contractual terms.  Id. at 569 n.6.  The court stated that where the contractual language is unambiguous, such a motion would succeed unless the opposing party adduced extrinsic evidence to render the contract reasonably susceptible to an alternate interpretation, thereby creating a genuine issue of fact to be resolved at trial.  Id.

Accordingly, plaintiffs are entitled to conduct discovery in an attempt to obtain evidence bearing on a reasonable alternative interpretation of the Agreement that does not add to, detract from, or vary the Agreement's express terms.[8]  Therefore, the Court DENIES defendants' motion to dismiss this claim.

### 5.    Breach of the Implied Covenant of Good Faith and Fair Dealing

In its October 30, 2006 Order, the Court denied defendants' motion to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because, given plaintiffs' allegation that defendants had collected revenue from plaintiffs that they knew, or should have known were illegal, plaintiffs had stated a claim that did not necessarily conflict with the express provisions of the Agreement.  October 30, 2006 Order 7.  The SAC alleges that defendants "breached [their] contractual duty of good

---

[8] Defendants cite to Zenger-Miller, Inc. v. Training Team, GMBH, 757 F. Supp. 1062 (N.D. Cal. 1991), in which, on a motion to dismiss, the court considered the extrinsic evidence proffered by the parties and determined that it was insufficient to render the contract susceptible to more than one interpretation.  Id. at 1068.  Nothing in that case suggests that parties are required to set forth extrinsic evidence in support of their alternative interpretation of contract terms prior to the commencement of discovery. On the contrary, in Trident, as discussed supra, the Ninth Circuit indicated that in order to make their case that a contract is susceptible to varying interpretations, parties should be afforded the opportunity to obtain extrinsic evidence through discovery.  Trident, 847 F.2d at 569 n. 6; see Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc., 2007 WL 1593212, at *3-*4 (N.D. Cal. 2007) (finding that, in light of the plaintiff's claim that the contract was ambiguous, "the case must proceed beyond the pleadings so that the court may consider the evidence" bearing on whether the contract was reasonably susceptible to a different interpretation).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

faith and fair dealing by collecting revenues for placements [they] knew, or reasonably should have known, were illegal as well as violative of its contracts with advertisers."[9] SAC ¶ 69.

Defendants argue that this claim impermissibly restates plaintiffs' breach of contract claim. The Court has rejected this argument in regard to the CAC, and the allegations in the SAC do not compel a different conclusion. See October 30, 2006 Order 7.

Next, defendants argue that plaintiffs' claim should be dismissed because plaintiffs do not specify in the SAC what made defendants' conduct illegal. The Court finds, however, that the allegations in the SAC place defendants on sufficient notice of the basis for plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, which essentially is that defendants did not act in good faith when they charged plaintiffs for advertising services that defendants knew were of little or no value to plaintiffs. Accordingly, the Court DENIES defendants' motion to dismiss this claim.

## 6. Common Counts

Plaintiffs allege claims for restitution, unjust enrichment, and money had and received. The Court previously observed that plaintiffs may not allege a claim for unjust enrichment that would essentially contradict an express term of the contract. October 30, 2006 Order 7. While this reasoning remains sound, because the Court does not at this time interpret the scope of the Agreement, it is unable to determine the extent to which plaintiffs' common counts contradict the terms of the Agreement. For this reason, the Court DENIES defendants' motion to dismiss plaintiffs' claims for restitution, unjust enrichment, and money had and received.

## 7. Misrepresentation

Plaintiffs allege that defendants falsely represented that by purchasing defendants' "Sponsored Search" and "Content Match" products, plaintiffs' advertisement displays

---

[9] The SAC refers to Yahoo! and Overture collectively as "Yahoo." SAC Introduction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

would be "highly targeted."  SAC ¶¶ 26, 80-84.

Defendants argue that plaintiffs have failed to adequately plead their misrepresentation claim because they do not allege that they relied on any of defendants' misrepresentations.  Additionally, defendants contend that plaintiffs have not pled this claim with the specificity required by Fed. R. Civ. P. 9(b).  Furthermore, although plaintiffs allege that defendants represented that their advertising products would provide "highly targeted" advertisement displays, defendants maintain that the marketing material referenced in the SAC in support of this allegation show this allegation to be false.

Contrary to defendants' contentions, the Court finds that plaintiffs have adequately pled their claim for misrepresentation.  The SAC alleges that advertisers -- a group that includes plaintiffs -- "buy ad placements from [defendants] precisely because of [defendants'] promise, and contractual obligation, to deliver targeted advertising through its Sponsored Search and Content Match products."  SAC ¶ 8.  The SAC further alleges that despite defendants' representations that they would provide plaintiffs with "highly targeted" advertising services, they failed to do so, and instead, charged for advertising that was of little or no value to plaintiffs.  Id. ¶¶ 26-31, 46, 79-84.  Thus, plaintiffs have pled that they relied on defendants' alleged misrepresentations.  Furthermore, because the SAC identifies the alleged misrepresentations made by defendants, see id. ¶¶ 23-26, they have complied with Rule 9(b)'s heightened pleading standards for fraud.

Finally, the Court is unpersuaded by defendants' argument that the marketing materials in question show that plaintiffs' allegation that defendants promised to provide "highly targeted" advertising placement is false.  As defendants point out, the phrase "highly targeted" derives from language in defendants' promotional materials, which are referenced in the SAC at paragraphs 23 through 26.  This language is as follows:

> You already know how Yahoo!'s flagship product *Sponsored Search delivers highly targeted customer leads to your business* by allowing you to control placement within sponsored search results across the Web.  But are you taking advantage of all of the features, tools, and options that Sponsored Search offers to increase your quality of targeted traffic?

Wilson Decl. Ex. 4 (emphasis supplied).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

Defendants argue that, contrary to plaintiffs' contention, the foregoing language illustrates that defendants promised only to provide customer leads, not targeted placement of plaintiffs' advertisements.  However, defendants do not explain why this distinction should matter.  In essence, plaintiffs allege that defendants misled them into believing that under their advertising arrangement with defendants, an Internet user's clicks on their advertisements, each of which gives rise to advertising fees, generally reflects the interest of potential customers in plaintiffs' goods or services.  Plaintiffs allege that because defendants placed their advertisements on untargeted websites -- including those dealing in spyware, typosquatting, and the like -- the clicks on their advertisements, and the attendant advertising frees, to some extent, did not reflect the interest of potential customers.  Thus, for the purposes of plaintiffs' misrepresentation claim, it does not appear that there is any genuine difference between the questions of whether defendants failed to target the placement of plaintiffs advertisements, on the one hand, and whether they failed to target plaintiffs' potential customers, on the other hand.[10]

As set forth above, defendants have not pointed to a valid basis for dismissing plaintiffs' claim for misrepresentation.  Accordingly, defendants' motion to dismiss this claim is DENIED.

**8.     Conspiracy**

Plaintiffs allege that defendants have entered into a conspiracy with third parties that have engaged in "nefarious and predatory web practices such as typosquatting, spyware, pop-ups and similar unwanted advertising conduct."  SAC ¶ 84.  Plaintiffs

---

[10] During oral argument, counsel for defendants suggested that "customer leads" is a term of art that is distinct from the concept of targeted advertising placement.  Counsel argued that defendants delivered "customer leads" to plaintiffs because they are charged an advertising fee only when an Internet user clicks on one of plaintiffs' advertisements.  However, even if the promise to deliver targeted "customer leads" is distinct from the promise to deliver targeted advertising placement, the Court is unable to decide whether defendants misrepresented facts as a matter of law.  Defendants' arguments indicate that the meaning of "customer leads" depends on industry custom and usage, and therefore, is necessarily a question of fact that cannot be decided on a motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|------------------------|------|----------------|
| Title    | IN RE YAHOO! LITIGATION |     |                |

allege that defendants on the one hand, and these third parties, on the other hand, conspired "to obtain payments from [defendants'] advertising customers through . . . bait and switch [tactics] and the placement of ads in spyware and on typosquatting, bulk registration and other Internet back alleys," and that this conspiracy was designed to maximize defendants' advertisement revenues at plaintiffs' expense. Id. ¶¶ 85-86. The alleged conspiracy is predicated on defendants' alleged misrepresentations regarding their advertising services. Id. ¶ 87.

Under California law, "a claim for civil conspiracy does not arise unless the alleged conspirator owed the victim a duty not to commit the underlying tort." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1133 (C.D. Cal. 2003); 5 Witkin, Summary of California Law, Torts § 45 ("An alleged coconspirator must be legally capable of committing the tort charged. He or she must owe a duty to the plaintiff recognized by law and be potentially subject to liability for breach of that duty.") (citing Applied Equip. Corp. v. Litton Saudi Arabia Ltd, 7 Cal. 4th 503, 511 (1994); Kasparian v. Los Angeles, 38 Cal. App. 4th 242 (1995)). Here, plaintiffs do not allege that Overture and Yahoo! entered into a conspiracy to misrepresent facts to plaintiffs. Rather, plaintiffs allege that defendants entered into a conspiracy with third parties who engage in "nefarious and predatory web practices." However, plaintiffs do not allege that these third parties breached any duty to plaintiffs that might give rise to their liability. Therefore, there is no basis for holding these parties liable as coconspirators. Because a conspiracy requires an agreement between two or more entities to perform a wrongful act, Wyatt v. Union Mortg. Co., 24 Cal. 3d 773, 784 (1979), and because there is no basis for holding the purported third party coconspirators liable, plaintiffs' conspiracy claim against defendants must fail.[11] The Court GRANTS defendants' motion to dismiss this claim.

---

[11] Moreover, because plaintiffs have not set forth a basis for holding the third parties liable, holding defendants liable under a conspiracy theory would add nothing to their case. This is so because "where the complaint charges a conspiracy and the commission of a wrongful act, the only significance of the conspiracy charge is that each member may be held responsible as a joint tortfeasor, regardless of whether that member directly participated in the act." 5 Witkin, supra, § 45.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|------------------------|------|----------------|
| Title | IN RE YAHOO! LITIGATION | | |

### 9.     Unfair Competition Law

Defendants contend that plaintiffs' claim under § 17200 fails as a matter of law. First, defendants contend that plaintiffs lack standing to proceed under this statute because they are neither consumers nor competitors of defendants.  Defendants also argue that  plaintiffs have failed to allege a predicate violation and that plaintiffs will not be able to show that defendants caused their injuries.

#### a.     Standing

The Court addressed the question of standing in its October 30, 2006 Order, and it reincorporates that discussion here.  See October 30, 2006 Order 8-9.

Defendants argue that because the UCL "was enacted to protect consumers and competitors," O'Brien v. Camisasca Automotive Mfg., Inc., 73 Cal. Rptr. 3d 911, 918 (2008), plaintiffs, which are neither consumers nor defendants' competitors, lack standing under the UCL.  Defendants rely on the following language in Linear Tech. Corp v. Applied Materials, Inc., 152 Cal. App. 4th 115, 135 (2007): "where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contracts, a corporate plaintiff may not rely on the UCL for the relief it seeks."

The foregoing language in Linear Tech., which was decided after the enactment of Proposition 64, appears not to have recognized the apparent change in the UCL's standing requirement that the Court recognized in its October 30, 2006 Order.  The Linear Tech. court relied on the discussion in Rosenbluth Int'l, Inc. v. Super. Ct., 101 Cal. App. 4th 1073 (2002), regarding standing under the UCL pre-Proposition 64. However, even if this is the case, Linear Tech. and Rosenbluth do not preclude plaintiffs' claims under the UCL.

Read in context, the above-quoted language from Linear Tech. does not necessarily prevent *any* corporate plaintiff from proceeding under the UCL in a case arising from a contract that does not involve either the public or individual consumers.  The holdings of both Linear Tech. and Rosenbluth turn less on the fact that the alleged victims in those cases were businesses, and more on the fact that these entities were sophisticated and individually capable of seeking relief for their injuries.  The alleged victims in Linear

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|---|---|---|---|
| Title | IN RE YAHOO! LITIGATION | | |

<u>Tech.</u> were Silicon Valley corporations -- as distinct from "powerless, unwary consumers" -- each of which "presumably [had] the resources to seek damages or other relief should it choose to do so." <u>Linear Tech.</u>, 152 Cal. App. 4th at 135 (quoting <u>Rosenbluth</u>, 101 Cal. App. 4th at 1078) (ellipses omitted). The potential UCL plaintiffs in <u>Rosenbluth</u> were "sophisticated corporations, most in the Fortune 1000. . ." <u>Rosenbluth</u>, 101 Cal. App. 4th at 1078. The court in <u>Rosenbluth</u> noted in particular that the plaintiff's effort to act as the self-appointed representative of these alleged corporate victims "not only raises significant logistical and constitutional issues, it may well leave the victims worse off than they would be if they filed individual actions against [the defendant]." <u>Id.</u>

Here, by contrast, the proposed class of plaintiffs is not necessarily so uniformly sophisticated and capable of seeking relief against defendants. While some members of the class are likely to be major corporations -- the SAC names, for example, Expedia.com as one of defendants' advertising customers, <u>see</u> SAC ¶ 44 -- it is unclear at the present time whether major corporations constitute a significant portion of the class. Accordingly, on the present, undeveloped record, it cannot be said that plaintiffs lack standing to proceed on their UCL claim.

### b.    Causation

Defendants contend that plaintiffs will never be able to establish that defendants' misrepresentations caused plaintiffs' injuries, which, in the wake of Proposition 64, is an element of a UCL claim. <u>See</u> <u>Hall v. Time Inc.</u>, 158 Cal. App. 4th 847, 855 (2008). Defendants contend that plaintiffs cannot show causation because, under their arrangements with defendants, plaintiffs set the prices that they are willing to pay, and they are charged money only after Internet users click on their advertisements. Defendants rely on <u>Brown v. Bank of Am., N.A.</u>, 457 F. Supp. 2d 82 (D. Mass. 2006), in which the court, construing California's UCL, held that the plaintiffs, who challenged the adequacy of fee notices posted on automatic teller machines, could not establish the UCL's causation element. <u>Id.</u> at 89. The court reasoned that even if the plaintiffs could establish that the on-machine notice was defective, because the machines were equipped with a "click-through" screen that notified the user that he or she would be charged a fee and that required the user's consent before the transaction would proceed, there was a break in the causal chain between the defective notice and the user's payment of the fee. <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
|----------|----------------------|------|----------------|
| Title    | IN RE YAHOO! LITIGATION | | |

Defendants contend that their advertisers are free to adjust the advertising rate that they are willing to pay per click, or to discontinue using defendants' advertising services altogether, such that their continued payment of the same advertising fees is a ratification of defendants' provision of services, analogous to the "click-through" notification and consent screen in <u>Brown</u>.  Thus, defendants argue that, like in <u>Brown</u>, the causal chain between defendants' alleged misrepresentations and plaintiffs' alleged injury was broken when plaintiffs agreed to continue paying the same advertising fees to defendants.

Defendants' causation argument is unavailing.  Here, unlike in <u>Brown</u>, it is not clear that plaintiffs were ever on notice as to the basis for their advertising charges.  On the contrary, plaintiffs allege that defendants failed to disclose to them that at least some of their advertising charges derived from untargeted advertisement placements.  SAC ¶¶ 28, 30.  Under these circumstances, plaintiffs cannot be said to have consented to defendants' allegedly wrongful conduct on the basis of their continued payment of their advertising fees.  Thus, on the allegations in the SAC, and unlike in <u>Brown</u>, there was no intervening event that broke the causal chain between defendants' alleged misrepresentations and plaintiffs' alleged injuries.  Therefore, plaintiffs' UCL claim does not fail on this ground.

### c.    Predicate Violation

In its October 30, 2006 Order, the Court denied defendants' motion to dismiss plaintiffs' UCL claim, in part, on the basis of plaintiffs' claim that defendants had made affirmative misrepresentations that advertisements would be targeted.  In its current motion to dismiss, defendants argue that the promotional materials upon which plaintiffs' claim is based demonstrate that plaintiffs' misrepresentation allegation is false.  Defendants rely on the purported distinction between advertisements that are targeted at customers, on the one hand, and advertisements that are placed in a targeted manner, on the other hand, which the Court herein rejects.  <u>See</u> Section III.A.7., <u>supra</u>.  Defendants' alleged misrepresentations suffice as a predicate violation for plaintiffs' UCL claim.

Because defendants have not set forth a valid basis for dismissing plaintiffs' UCL claim, the Court DENIES defendants' motion to dismiss this claim.

### B.    Motion for a More Definite Statement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2737 CAS (FMOx) | Date | April 21, 2008 |
| --- | --- | --- | --- |
| Title | IN RE YAHOO! LITIGATION | | |

Defendants argue that the SAC does not give them sufficient notice as to plaintiffs' claims because it does not set forth each defendant's allegedly wrongful conduct.

Reviewing the SAC, the Court finds and concludes that its allegations place both Overture and Yahoo! on sufficient notice as to the basis of plaintiffs' claims. Plaintiffs are not required to plead their claims with the specificity demanded by defendants. Any questions regarding the individual defendant's allegedly wrongful conduct may be resolved at the Rule 26 early meeting of counsel, at which plaintiffs will be required to provide defendants with a more detailed account of the evidentiary basis for their allegations.

**IV.   CONCLUSION**

In accordance with the foregoing, the Court GRANTS defendants' motion to dismiss plaintiffs' conspiracy claim. In all other respects, defendants' motion to dismiss is DENIED.

Additionally, the Court DENIES defendants' motion for a more definite statement.

IT IS SO ORDERED.

|  | 00 | : | 17 |
| --- | --- | --- | --- |
| Initials of Preparer | | CMJ | |