Michael J. Boni (pro hac vice)
Joshua D. Snyder (pro hac vice)
BONI & ZACK LLC
15 Saint Asaphs Road
Bala Cynwyd, PA 19004
Telephone: 610/822.0200
Facsimile: 610/822.0206
mboni@bonizack.com
jsnyder@bonizack.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In Re Yahoo! Litigation | Case No.: CV 06-2737 CAS (FMOx) |
| | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** |
| | **DATE:** September 21, 2009 <br> **TIME:** 10:00 a.m. <br> **PLACE:** Courtroom 5 |
| | Honorable Christina A. Snyder |

1

## **<u>TABLE OF CONTENTS</u>**

<u>Page No(s).</u>

I.    SUMMARY OF THE LITIGATION ............................................. 2

II.    MATERIAL TERMS OF THE SETTLEMENT AGREEMENT .. 4

    A.    The Settlement Class and Related Definitions .................... 4

    B.    "Ad Placement Option" ........................................................ 5

    C.    Enhanced Disclosures ......................................................... 5

    D.    Enhancements to the Click Investigation Request Tool ....... 5

    E.    Yahoo!-Microsoft Transaction............................................. 6

    F.    Refunds to Class Members Who Have Gone Out
          of Business ........................................................................... 7

    G.    Notice .................................................................................. 7

    H.    Release................................................................................. 8

    I.    Yahoo! to Pay Costs of Notice, Claims Administration,
          Attorneys' Fees and Costs and Service Awards
          to the Named Plaintiffs ........................................................ 8

III.    PRELIMINARY APPROVAL OF THE SETTLEMENT
        SHOULD BE GRANTED ....................................................... 8

    A.    Standard for Preliminary Approval....................................... 8

    B.    The Proposed Settlement is Fair and Within the Range
          of Possible Approval............................................................ 10

    C.    The Court Should Certify the Settlement Class.................... 12

          1.    Rule 23(a) Requirements Are Satisfied..................... 13

          2.    The Rule 23(b)(3) Requirements Are Satisfied........ 14

    D.    The Proposed Class Notice Satisfies Rule 23
          and Due Process .................................................................. 15

    E.    Proposed Schedule ............................................................. 16

IV.    CONCLUSION .......................................................................... 17

i

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) ...................................................................9

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................13, 14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .............................................................................11

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ...........................................................................9

*Gerardo v. Quong Hop & Co.*,
   No. C. 08-3953, 2009 U.S. Dist. LEXIS 60900 (N.D. Cal. July 6, 2009) ......9

*Hainey v. Parrott*,
   617 F. Supp. 2d 668 (S.D. Ohio 2007) .........................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................10

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp.2d 164 (S.D.N.Y. 2000) ..............................................................12

*In re Portal Software Sec. Litig.*,
   No. C-03-5138, 2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ..12

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) ...............................................................11

*Lake v. First Nationwide Bank*,
   156 F.R.D. 615 (E.D. Pa. 1994).....................................................................11

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ........................................................................14

*Nat'l Rural Telecomms. Coop. v. DIRECTV., Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 11

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .................................................................. 8, 10

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................ 16

*West v. Circle K Stores, Inc.*,
    No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 42074
    (E.D. Cal. June 12, 2006) ............................................................................. 9

## STATUTES

California Business and Professions Code §§ 17200 *et seq.* ................................ 2

Federal Rules of Civil Procedure, Rule 23 ................................................. *passim*

## OTHER AUTHORITIES

Jerold S. Solovy *et al.*, 5 *Moore's Federal Practice*
    § 23 (2005) ................................................................................................. 8, 13

*Manual for Complex Litigation – Fourth* ("*Manual*")
    § 21.632-33 (2004) ................................................................................ 9, 10, 13

iii

Plaintiffs submit this Memorandum of Points and Authorities in support of their motion for preliminary approval of a class action settlement reached with Defendant Yahoo! Inc.  By their motion, Plaintiffs request that the Court enter an Order:  (1) granting preliminary approval of a settlement of this class action; (2) provisionally certifying a settlement class ("Settlement Class"); (3) approving the proposed class notice program; and (4) scheduling a fairness hearing at which the Court may determine whether the Settlement meets the standards of Rule 23 and merits final approval.

The proposed settlement is the result of hard-fought, arm's-length negotiations and the culmination of four mediations spanning more than two years, the most recent of which was supervised by the Honorable Gary L. Taylor (Retired).

Under the Settlement Agreement,[1] Yahoo! will develop and launch an "Ad Placement Option" that will provide Class Members with exceptional relief, namely, the ability to ensure that their ads do not appear in any of the types of ad placements Plaintiffs challenged in this litigation.  In addition, Yahoo! will make enhanced disclosures on its website about where Class Members' ads may appear; expand its click investigation request tool; pay $20.00 refunds to eligible Class Members who have gone out of business; and pay the costs of disseminating notice, claims administration, and agreed upon attorneys' fees, reimbursement of costs, and service awards to the named Plaintiffs.

---

[1] References to the Settlement Agreement herein appear as "S.A. ¶ ___."  A copy of the Settlement Agreement and copies of the exhibits thereto are appended to the Declaration of Joshua D. Snyder.  Unless otherwise specified, all capitalized terms herein that are defined terms in the Settlement Agreement shall have the same meaning as in the Settlement Agreement.

Plaintiffs respectfully submit that the settlement is fair, reasonable, and adequate and in the best interests of the Class, and should be preliminarily approved.

## I.   SUMMARY OF THE LITIGATION

Plaintiffs commenced this action in May 2006 on behalf of a proposed class of pay-per-click search advertising customers of Yahoo![2]  On July 13, 2006, Plaintiffs filed a Consolidated Amended Class Action Complaint.  Yahoo! moved to dismiss Plaintiffs' claims, and, following extensive briefing, the Court granted in part, and denied in part, Yahoo!'s motion with leave to amend.

On November 20, 2006, Plaintiffs filed a Consolidated Second Amended Class Action Complaint, which contained causes of action for breach of contract, restitution/unjust enrichment/money had and received, misrepresentation and civil conspiracy, and violation of California Business and Professions Code §§ 17200, *et seq*.  Plaintiffs alleged that Yahoo! customers contracted for targeted ad placements through two products, "Sponsored Search" and "Content Match" (and predecessor products provided by Overture Services, Inc. and GoTo.com) and that Yahoo! breached its contract with its customers by allowing Yahoo! ads to be displayed in spyware, domain name parking sites (also known as bulk registration sites), pop-ups, pop-unders, and typosquatting sites.  Yahoo! moved to dismiss the Consolidated Second Amended Class Action Complaint, and a second series of substantial briefing followed.

On March 7, 2008, while Yahoo!'s second motion to dismiss was pending, Plaintiffs moved for class certification.  By Order of April 21, 2008, the Court

---

[2] The action was originally captioned *Draucker Development et al. v. Yahoo!, Inc. et al.,* Case No. CV 06-2737 JFW.  By Stipulation and Order of February 11, 2009, the Court dismissed Draucker Development's claims without prejudice.

granted in part, and denied in part, Yahoo!'s motion to dismiss, and discovery began in earnest.[3]  During the course of discovery, Yahoo! produced over 1.5 million pages of documents and hundreds of gigabytes of data.  Plaintiffs deposed three Yahoo! employees pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Named plaintiffs Crafts by Veronica, Mika's Wedding, and True Communication, Inc. d/b/a Metrodate.com each produced documents to Yahoo! and testified at deposition.

Since January 2007, the parties have participated in four mediations – two supervised by the Honorable John K. Trotter (Retired), and one each before the Honorable Dickran M. Tevrizian (Retired) and Judge Taylor, respectively.  It was only during the most recent mediation before Judge Taylor – which occurred well into discovery and in the midst of briefing on Plaintiffs' motion for class certification – that the parties were able to reach the proposed settlement of this class action.

---

[3] The vigorous disputes in connection with the motions to dismiss illustrate that this litigation has been hotly contested.  The parties' briefing and argument on Yahoo!'s motion for disqualification, the many hours spent in hard fought discovery meet-and-confers, and the litigation related to the scope of the release in the class action settlement in *Checkmate Strategic Group, Inc. v. Yahoo! Inc.*, 2:05-CV-04588 (C.D. Cal.), likewise reveal that this case has been fiercely contested by both sides.

## II. MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

The material provisions of the Settlement Agreement are summarized below.

### A. The Settlement Class and Related Definitions

The Settlement Class is defined as follows:

> All Persons that purchased, directly or indirectly, Yahoo! Ads in the U.S. Marketplace from May 1, 2000, through and including the date the Court grants preliminary approval of the Settlement Agreement.

S.A. ¶ 42.[4]

"Yahoo! Ads" are defined as "pay-per-click text advertising offered by Yahoo!." S.A. ¶ 32. Pay-per-click text advertising includes the Yahoo! Search Marketing products currently known as "Sponsored Search" and "Content Match," as well as predecessor products provided by Overture Services, Inc. and GoTo.com, Inc. S.A., Exhibit 3 (Notice), at 2. Yahoo! customers who purchased advertising that was not pay-per-click text advertising – such as banner advertising – are excluded from the Settlement Class. *Id*.

"U.S. Marketplace" is defined as "exclusively any or all of the 50 United States and 13 Canadian provinces and territories in which Yahoo! Ads may appear written in the English language." S.A. ¶ 30. Yahoo! Advertisers that did not purchase ads to appear in this Yahoo! "marketplace" are not part of the Class. *See id*.

---

[4] "Persons" means "all natural persons and all entities including, but not limited to, corporations, sole proprietorships, partnerships, joint ventures or other entities or business associations of any kind in which a natural person may have a legal or equitable interest, together with any of their heirs, predecessors, successors, assigns, present and former partners, parents, subsidiaries, related entities, affiliated and sister corporations, divisions, officers, principals, owners, directors, minority or controlling shareholders, employers, employees, representatives or agents." S.A. ¶ 20.

### B.    "Ad Placement Option"

As a result of the litigation, Yahoo! has agreed to develop and launch a new option – the "Ad Placement Option"[5] – by the end of the first quarter of 2010, but in no event later than the end of the third quarter of 2010. S.A. ¶ 45.   The Ad Placement Option will provide Class Members with the option of limiting the display of their Yahoo! Ads to Premium Providers. *Id.* "Premium Providers" are limited to (a) all web sites, web pages, and other properties on the Internet that are owned or operated by Yahoo!; and, at Yahoo!'s option, (b) all parts of Yahoo!'s Distribution Network other than domain name parking sites, bulk registration sites, "pop-up" or "pop-under" windows, typosquatting sites, "sliders," "sidebars," "injected ads," or unsolicited spam email.  S.A. ¶ 22.

### C.    Enhanced Disclosures

Yahoo! will post enhanced disclosures on the "Traffic Quality" portion of its website about where Yahoo! Ads may appear on the Internet.  S.A. ¶ 46.  The disclosures will provide Yahoo! customers with information about how Yahoo! Ads are implemented, and will explain that Yahoo! offers the Ad Placement Option to provide customers with the ability to limit where their ads may appear. S.A., Exhibit 5.

### D.    Enhancements to the Click Investigation Request Tool

Yahoo! will also modify its click investigation request function to allow advertisers to ask questions or request investigations regarding certain Yahoo! advertising partners.  S.A. ¶ 47.  Yahoo! will add an "issue button" to the Traffic Quality section of its website to allow Yahoo! customers to request investigations

---

[5] The new ad placement option is referred to in the Settlement Agreement as the "Ad Placement Option," but it may have a different name once launched, as reflected in Exhibit 5 to the Settlement Agreement (Disclosures).

of Yahoo!'s partners, as well as add information to its website notifying customers that they are able to request partner investigations.  *Id.*

### E.     Yahoo!-Microsoft Transaction

On July 29, 2009, Yahoo! and Microsoft Corporation entered into a binding letter agreement pursuant to which Yahoo! and Microsoft will negotiate definitive agreements that would, upon regulatory approvals and at full implementation, make Microsoft the exclusive paid search platform for Yahoo! ("Microsoft Transaction") for a ten year period.  S.A. ¶ 48.  Yahoo! is hopeful that regulatory approval of the Microsoft Transaction could occur in early 2010.  *Id.*  Full implementation of the Microsoft Transaction is estimated to occur within two years following the necessary regulatory approvals.  *Id.*

Under the Settlement Agreement, Yahoo! agrees to provide the Ad Placement Option on its own Paid Search Services platform for a period of two years from the date it first launches the Ad Placement Option and while it offers its own Paid Search Services platform, or through the date of full implementation of the Microsoft Transaction, whichever occurs first.  *Id*.  Yahoo! agrees to provide the enhanced disclosures, and enhancements to the click investigation request tool, for a period of two years from the date each benefit is first made available, or through the date of full implementation of the Microsoft Transaction, whichever occurs first.  *Id*.  Further, under the Agreement, Yahoo! "represents and warrants that the definitive agreements for the Microsoft Transaction will contain language to the effect that Microsoft will agree to implement ad distribution controls on the Microsoft paid search platform following full implementation."  *Id.*

If any Class Members are transitioned to Microsoft's paid search platform earlier than two years from the launch of the Ad Placement Option by Yahoo! on the Yahoo Paid Search Services platform, and before Microsoft implements the ad distribution controls on its paid search platform, Yahoo! will notify those affected Class Members, by reasonable means of its choosing, that ad distribution controls

are not available at the time of their transition to the Microsoft paid search services platform. *Id.*

### F.   Refunds to Class Members Who Have Gone Out of Business

Class Members who certify that they have gone out of business and do not owe money to Yahoo! related to their Yahoo! Ad accounts are eligible for a $20.00 refund, to be paid by Yahoo!. S.A. ¶ 50; Exhibit 1 (Claim Form).

Class Members will have the option of completing a user-friendly claim form (substantially in the form of Exhibit 1 to the Settlement Agreement) online or in paper form. S.A. ¶ 50. In the event that information provided by a Class Member conflicts with Yahoo!'s records, the Settlement Agreement provides Class Members with the right to seek review by a Special Master – Judge Taylor, if available – to determine eligibility for a refund. S.A. ¶ 50(j)-(m).

### G.   Notice

The parties propose that Rust Consulting, Inc., which has been responsible for disseminating notices and administering claims in connection with numerous class action settlements, be appointed as the Claims Administrator.[6] As set forth in paragraph 59(b) of the Settlement Agreement, within twenty (20) calendar days from the date that the Preliminary Approval Order is entered, the Claims Administrator will email the Notice substantially in the form of Exhibit 3 to the Settlement Agreement to Class Members using the email addresses in Yahoo!'s electronic records. In the event that emails are returned as undeliverable, the Claims Administrator will send a copy of the Notice to Class Members by United States postal mail using the physical mailing address, if any, in Yahoo!'s electronic records. S.A. ¶ 59(a)-(b). In addition, the Summary Notice substantially in the

---

[6] Detailed information about Rust Consulting Inc.'s qualifications and experience as a claims administrator is available at www.rustconsulting.com.

form of Exhibit 4 to the Settlement Agreement will be published in the national and international editions of *U.S.A. Today* within twenty (20) calendar days from the entry of the Preliminary Approval Order.  S.A. ¶ 59(c).

### H.    Release

In exchange for the benefits conferred on the Settlement Class by Yahoo!, all members of the Settlement Class who do not opt out will be deemed to have released any and all claims, from January 1, 2000 through and including the date the Court grants preliminary approval of the Settlement Agreement, that have been or could have been asserted in the Action.  S.A. ¶ 51.  The full provisions of the release are set forth in paragraph 51 of the Settlement Agreement.

### I.    Yahoo! to Pay Costs of Notice, Claims Administration, Attorneys' Fees and Costs and Service Awards to the Named Plaintiffs

As set forth in paragraph 64 of the Settlement Agreement, Yahoo! will pay the costs of notice and claims administration, including fees owed to the Claims Administrator and, if necessary, to the Special Master.  Yahoo! will also pay class counsel's attorneys' fees and costs, and service awards to the named Plaintiffs, subject to the Court's approval, in an aggregate amount not greater than $4.3 million.  S.A. ¶ 68.  Class counsel will apply to the Court for an award of attorneys' fees and expenses in a total amount not greater than $4.27 million, and for service awards of $10,000 to the three named Plaintiffs, Crafts by Veronica, Mika's Wedding, and True Communication, Inc. d/b/a Metrodate.com.

## III.   PRELIMINARY APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

### A.    Standard for Preliminary Approval

Under Rule 23(e) of the Federal Rules of Civil Procedure, class action settlements must be judicially approved.  The approval of a classwide settlement is a matter within the district court's discretion, which is exercised in the context of

public policy that favors the settlement of class action lawsuits.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution …. [E]specially … in complex class action litigation…."); 5-23 Jerold S. Solovy *et al*., 5 *Moore's Federal Practice* § 23.161[1] (2005) (recognizing a "strong judicial policy in favor of settlements of class actions").

Judicial review of a proposed class action settlement entails a two-step process.  *See, e.g., West v. Circle K Stores, Inc.*, No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 42074, *4 (E.D. Cal. June 12, 2006) ("approval of a class action settlement takes place in two stages"); *Manual for Complex Litigation – Fourth* ("*Manual*") § 21.632, at 320 (2004) (endorsing two-step process).  At the first stage, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation.  At this preliminary approval stage, the court need only "determine whether the proposed settlement is within the range of possible approval."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)); *see also Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 42074, *34 (explaining that during the first stage the court considers whether there are "grounds to doubt [the settlement's] fairness or other obvious deficiencies") (citation omitted); *Manual* § 21.632, at 321 (explaining that the court should review the settlement for concerns "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the class[], the need for subclasses, or excessive compensation for attorneys").   In making this determination, courts also consider whether the negotiations occurred at arm's-length, the amount of discovery undertaken, and whether class counsel are experienced in similar litigation.  *Gerardo v. Quong Hop & Co.*, No. C. 08-3953, 2009 U.S. Dist. LEXIS 60900, *4-5 (N.D. Cal. July 6, 2009).  In addition, if the class has not been previously certified, "the judge should make a preliminary determination that the

proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Manual* § 21.632, at 321. "Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." *Id.* § 21.633, at 321.

At the second stage of the approval process, the formal fairness hearing, "the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.'" *Id.*; *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) (explaining that at the second, final, approval stage, after notice has been disseminated, the court reviews the fairness of the settlement, and, if appropriate, makes a finding that it is "fair, reasonable and adequate"); *Officers for Justice*, 688 F.2d at 625.

### B.   The Proposed Settlement is Fair and Within the Range of Possible Approval

The settlement falls well within the range of possible approval.

As threshold considerations, the settlement is the result of extended good faith negotiations. The negotiations were adversarial and at times contentious. The parties negotiated and reached agreement concerning attorneys' fees, reimbursement of expenses, and service awards only after reaching agreement on all other material terms of this settlement. The settlement is no way a product of fraud, collusion, or anything other than hard fought, arm's-length bargaining. Nor are any of the concerns highlighted in the *Manual* – unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the class, the need for subclasses, or excessive compensation for attorneys – implicated by the settlement. *See Manual* § 21.632, at 321. All Class Members are treated fairly under the settlement, and the proposed service awards fall well within the range of service awards to class representatives. Class Members (including those who have gone out of business) are entitled to benefits under the

settlement; there is no need for subclasses; and the fees that Yahoo! has agreed to pay are well-warranted (as will be fully explained in class counsel's fee petition), and not excessive.

The involvement of Judges Taylor, Trevisian, and Trotter as mediators heavily favors preliminary approval. "The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (recognizing that the involvement of a mediator in "pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). The fact that there have been four mediations before three mediators further underscores the difficult and adversarial nature of the negotiations that ultimately lead to the settlement.

Moreover, courts accord considerable weight to counsel's judgment that the settlement is fair and in the best interests of the settlement class. *See Nat'l Rural Telecomms. Coop. v. DIRECTV., Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (according "great weight" to the recommendation of counsel); *see also Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arm's-length and in good faith"); *Kirkorian v. Borelli,* 695 F. Supp. 446, 451 (N.D. Cal. 1988) (explaining that significant weight should be accorded to the views of experienced counsel that the settlement is reasonable). Along with being highly experienced in class action litigation, Plaintiffs' Co-Lead Counsel are very well informed about the merits of the claims and defenses in this matter. By the time of the mediation before Judge Taylor, the case had been litigated for over three years, and counsel had thoroughly investigated the facts and analyzed the relevant law. By that time, the parties had exchanged a voluminous

1   discovery, and Yahoo! personnel and the named Plaintiffs had been deposed.

2   These considerations strongly favor preliminary settlement approval.

3   Most importantly, the settlement offers the Settlement Class substantial

4   relief on claims that Yahoo! vigorously disputed and would continue to dispute

5   through trial and appeal absent the settlement.  The Ad Placement Option will

6   afford Class Members comprehensive prospective relief from the types of ad

7   placements challenged in this litigation.  The required disclosures will provide

8   Yahoo! Ads customers with new, enhanced information about where their ads may

9   appear, and Class Members will have a mechanism for questioning and

10  investigating Yahoo! Ad partners.  Eligible former customers who have gone out

11  of business, and thus cannot take advantage of the benefits described above, are

12  entitled to refunds.  The interests of Class Members are also protected if the

13  Microsoft Transaction receives regulatory approval.  In short, the settlement

14  represents an excellent result against a sophisticated and well-represented

15  defendant.

16  For all of these reasons, preliminary approval is well warranted.

17  **C.      The Court Should Certify the Settlement Class**

18  In conjunction with the preliminary approval of a settlement under Rule 23

19  of the Federal Rules of Civil Procedure, courts routinely grant provisional

20  certification of a plaintiff class for settlement purposes.  Provisional certification is

21  not final or binding, and is reviewed in connection with the final fairness hearing.

22  *See In re Portal Software Sec. Litig*., No. C-03-5138, 2007 U.S. Dist. LEXIS

23  51794, *19 (N.D. Cal. June 30, 2007) (granting provisional certification of a

24  settlement class); *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp.2d

25  164, 172-173 (S.D.N.Y. 2000) (endorsing provisional certification).  Plaintiffs

26  must then establish that the Settlement Class satisfies the requirements of Rule 23

27  and, if so, class certification will be made final if the settlement is approved.  *See*

28

1   *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997) (discussing

2   certification of a settlement class).

3     Certification is proper for any purpose – settlement or litigation – where the

4   requirements of Rule 23(a) and (b) have been met. *See Manual* § 22.921, at 450.

5   Rule 23(a) imposes four threshold requirements on putative class actions:

6   numerosity, commonality, typicality, and adequacy of representation. *Id.*

7   Plaintiffs also must show that the class is "maintainable" under Rule 23(b), which

8   sets forth three alternative categories under which classes may be certified. *See*

9   Fed. R. Civ. P. 23(b)(1)-(3). For a class to meet the requirements of Rule 23(b)(3),

10   common questions must "predominate over any questions affecting only individual

11   members," and class resolution must be "superior to other available methods for

12   the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

  **1.**  **The Rule 23(a) Requirements Are Satisfied**

14     First, the proposed class – which numbers in the many thousands – is

15   sufficiently numerous. *See* Fed. R. Civ. P. 23(a)(1) (numerosity). Second, Class

16   Members all share the same interest in resolving such common questions as

17   whether Yahoo! breached its contract by failing to deliver Yahoo! Ads that met the

18   standards Yahoo! had promised; whether Yahoo! misrepresented or omitted

19   material facts about Yahoo! ad placements; whether there are appropriate

20   classwide remedies for Yahoo!'s unlawful practices; and whether Yahoo! should

21   be enjoined from its unlawful practices. *See* Fed. R. Civ. P. 23(a)(2)

22   (commonality). Any one of these common questions of law or fact is sufficient to

23   establish commonality. Third, Plaintiffs' claims present fact patterns and legal

24   theories that all Class Members would be required to present if they were required

25   to file individual suit, and thus are typical of those of the rest of the Settlement

26   Class. Fed. R. Civ. P. 23(a)(3)(typicality). Fourth, named Plaintiffs Crafts by

27   Veronica, Mika's Wedding, and True Communication, Inc. d/b/a Metrodate.com

28   have no interests antagonistic to the rest of the Settlement Class and have retained

1   counsel who are highly experienced in class action litigation.  *See* Fed. R. Civ. P.

2   23(a)(4) (adequacy).

3           **2.      The Rule 23(b)(3) Requirements Are Satisfied**

4           The Rule 23(b)(3) requirements – predominance and superiority – are

5   satisfied.  The purpose of the predominance inquiry is to allow the Court to

6   determine whether proposed classes are sufficiently cohesive to warrant

7   adjudication by representation.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 623

8   (1997) ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes

9   are sufficiently cohesive to warrant adjudication by representation.").  Here the

10  common questions (see page 13, *supra*) predominate over any issues affecting only

11  individual Class Members.  *See* Fed. R. Civ. P. 23(b)(3).

12          In addition, a class action is a superior means of fairly and efficiently

13  resolving this dispute.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  Plaintiffs' claims are

14  presented far more fairly and efficiently in a class action than they would be in

15  individual actions, which would require the same issues to be litigated multiple

16  times.  *See* 5-23 Jerold S. Solovy *et al.*, *Moore's Federal Practice - Civil*

17  § 23.46[1] ("In determining superiority, courts must consider alternative methods

18  of adjudicating the dispute.  Superiority is determined by comparing the efficiency

19  and fairness of all available methods of adjudicating the matter."); *see also Lerwill*

20  *v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) ("Numerous

21  individual actions would be expensive and time-consuming and would create the

22  danger of conflicting decisions as to persons similarly situated.").[7]

---

23          [7] In a settlement context, issues of manageability at trial under Rule 23(b)(3)

24  need not be addressed.  *Amchem*, 521 U.S. at 620 ("Confronted with a request for

25  settlement-only class certification, a district court need not inquire whether the

26  case, if tried, would present intractable management problems, *see* Fed. Rule Civ.

    Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

27

28

---

**D.     The Proposed Class Notice Satisfies Rule 23 and Due Process.**

Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all Class Members who would be bound" by a proposed settlement, voluntary dismissal, or compromise.  As set forth in the Settlement Agreement, the Claims Administrator will provide direct notice to Class Members by emailing the Notice substantially in the form of Exhibit 3 to the Settlement Agreement using the email addresses in Yahoo!'s electronic records.  S.A. ¶ 59(b).  For those e-mail messages that are returned as undeliverable, the Claims Administrator will send notice by regular mail.  S.A. ¶ 59(c).  In addition, a Summary Notice substantially in the form of Exhibit 4 to the Settlement Agreement will be published in the national and international editions of *U.S.A. Today*.  S.A. ¶ 59(d).  The Notice and other settlement documents will be available at www.inreyahoosettlement.com, which will be the settlement's dedicated website.

The proposed Notice identifies the parties and describes the lawsuit and the Settlement Class in plain terms.  It concisely describes the nature of the case and the essential terms of the settlement sufficiently to allow Class Members to make an informed choice of whether to accept it or opt out, and refers Class Members to a website and toll-free number where they can obtain more detailed information.  The Notice informs Class Members that they may opt out of the settlement, and provides information about requesting exclusion (which may be done on-line).  Additionally, it informs Class Members that if they do not exclude themselves from the Class, and the settlement is finally approved, they will be bound by the resulting judgment.  It also informs Class Members that they may object to the settlement, and that they may appear at the final approval hearing through counsel, should they choose to do so.  Finally, it informs Class Members of the deadlines for opting out of the class or objecting to the settlement, the date of the final approval hearing, and that Plaintiffs' Co-Lead Counsel will apply for attorneys'

1   fees and reimbursement of expenses and for service awards for the named
2   Plaintiffs.  The proposed notices comply with the requirements of Rule
3   23(c)(2)(B).  *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1373-75 (9th
4   Cir. 1993) (discussing Rule 23(c)(2) and due process notice requirements).

5   Accordingly, the Court should approve the form and manner of notice as
6   appropriate and sufficient under the circumstances of this case.

7   **E.    Proposed Schedule**

8   The proposed Preliminary Approval Order, which is Exhibit 6 to the
9   Settlement Agreement, includes the deadlines that are set forth in the Agreement.
10  *See* S.A., Exhibit 6 ([Proposed] Preliminary Approval Order, ¶¶ 16-18, 21, 24, 25).
11  Several other dates and deadlines will need to be set by the Court, *see id.* ¶¶ 10, 19,
12  20, and the parties respectfully propose the following schedule:

13  **Final Approval Hearing:**  The parties propose that the Court
14  schedule a final approval hearing approximately ninety (90) days from the date of
15  the Preliminary Approval Order.  *See id.* ¶ 10.

16  **Deadlines for filings in support of final approval:**  With respect to
17  the deadline for Plaintiffs' Co-Lead Counsel to file a motion for final approval and
18  supporting papers, and an application for attorneys' fees and reimbursement of
19  expenses and for service awards to Class Representatives and supporting papers,
20  the parties propose that this deadline be set at ten (10) court days prior to the final
21  approval hearing.  *See id.* ¶ 20.  The parties propose that the Court set the same
22  deadline – ten (10) court days prior to the final approval hearing – for the Claims
23  Administrator to submit a declaration describing electronic mailings, postal
24  mailings, and publication notice.  *See id.* ¶ 19.

25
26
27
28

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed order granting preliminary approval of the Settlement; provisionally certifying the Settlement Class; directing notice to the Settlement Class; and scheduling the hearing on final settlement approval and Plaintiffs' application for attorneys' fees and expenses and for service awards to the named Plaintiffs.

Respectfully submitted,

Dated:  September 16, 2009

Michael J. Boni
Joshua D. Snyder
**BONI & ZACK LLC**
15 Saint Asaphs Road
Bala Cynwyd, PA 19004
(610) 822-0200

Michael D. Donovan
**DONOVAN SEARLES, LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**Co-Lead Counsel for Plaintiffs**

Paul R. Kiesel
**KIESEL, BOUCHER & LARSON**
8648 Wilshire Blvd.
Beverly Hills, CA 90211
(310) 854-4444

**Liaison Counsel for Plaintiffs**