THEODORE H. FRANK (SBN 196332)
    tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 23-6
Washington, DC 20036
(703) 203-3848

*Attorney for Objector Eric Turkewitz*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re:<br><br>Yahoo! Litigation | Case No. CV06-2737 CAS (FMOx)<br><br>**PUTATIVE CLASS ACTION**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO PROPOSED SETTLEMENT**<br><br>Judge:   Honorable Christina A. Snyder<br>Date:     January 11, 2009<br>Time:    10:00 a.m.<br>Courtroom: 5 |

# INTRODUCTION

The plaintiffs sued Yahoo! claiming that thousands of pay-per-click text advertising purchasers were defrauded. The parties negotiated a settlement, but it provides zero relief for the vast majority of the class members, and a token twenty dollars to a small subclass that is unlikely to go through the claims process. The main "relief" is a self-styled injunction against Yahoo! that requires it to engage in business practices that it would voluntarily engage in anyway to be competitive in the Internet advertising market. As such, the settlement provides class members with little or no real benefit, but proposes to pay plaintiffs' attorneys $4.27 million cash—a contingent award of tens of thousands of percent, compared to the 25% benchmark that the Ninth Circuit has said is fair. *Torrisi v. Tucson Elec. Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Such attenuated class benefit and exorbitant fees cannot be justified as fair, adequate, or reasonable. If Rule 23(e)(2) is to have any teeth whatsoever, this settlement must be rejected; it is hard to imagine another settlement result under the Class Action Fairness Act that is more self-serving of the Putative Class Attorneys.

Furthermore, the settlement effectively creates three subclasses of Yahoo! customers. The divisions are not based on any legal rationale, and the significantly different treatment adds to the unfairness of the settlement and provides independent grounds for its rejection.

Eric Turkewitz, the Objector, represents thousands of class members who will receive no benefit from the proposed settlement.

These objections also serve as notice that Mr. Turkewitz intends to appear at the January 11 approval hearing through his counsel Theodore H. Frank.

**I.    The Objector Is a Member Of The Class.**

Eric Turkewitz (The Turkewitz Law Firm, 228 East 45th Street - 17th Floor, New York, NY 10017, 212-983-5900) purchased pay-per-click text advertising from Yahoo!

(and its predecessors GoTo.com and Overture)[1] from August 23, 2001 through December 27, 2005.  *See* Exhibit 1, Declaration of Eric Turkewitz.

The putative settlement class includes "All Persons that purchased, directly or indirectly, Yahoo! Ads in the U.S. Marketplace from May 1, 2000, through and including the date the Court grants preliminary approval of this Agreement."  "Yahoo! Ads" are defined as "pay-per-click text advertising offered by Yahoo!" and includes the services offered by the predecessor companies Overture and GoTo.com.[2]  The Court granted preliminary approval of the Agreement on September 22, 2009.  Mr. Turkewitz therefore has standing to object.[3]

## II. The Settling Parties Have Failed To Carry Their Burden To Show That The Settlement Is Fair.

Under the proposed settlement, the vast majority of class members receive no compensation.  By September 30, 2010, Yahoo! is required to provide an "Ad Placement Option" where customers may request limiting their advertising to "Premium Providers," but may terminate this service when Microsoft takes over as the exclusive paid search platform for Yahoo!, or after two years, whichever comes first.[4]  Yahoo! also provides additional disclosures under the settlement to current and future customers.[5]  Former

---

[1] GoTo.com renamed itself Overture in October 2001. In 2003, Yahoo! purchased Overture.  The settlement agreement and initial complaint treats all three entities identically, and so they will be collectively referred to here as "Yahoo!" for the sake of simplicity.

[2] Settlement Agreement ¶ 32 and Exhibit 3.

[3] Settlement Agreement ¶ 60 "requires" objectors to provide their Yahoo! Customer ID number.  Mr. Turkewitz objects to this unnecessarily burdensome provision, which has no basis in law.  *See* F.R.C.P. 23(e)(5) ("Any class member may object"). Mr. Turkewitz no longer has his Customer ID because it has been four years since he was a Yahoo! customer.  Yahoo!'s records, which were complete enough to send Mr. Turkewitz notice of the settlement (Exhibit 1 at ¶ 8), can confirm that Mr. Turkewitz is a class member.

[4] Settlement Agreement ¶¶ 45, 48.

[5] *Id.* ¶¶ 46-47.

customers who have gone out of business are eligible for a $20 refund.[6] The three named plaintiffs will request $10,000 each.[7]

This relief is largely illusory, ignores vast swaths of the class, and does not justify the request for $4.27 million in attorneys' fees and expenses—over $4 million more than the entire class is likely to receive. Settlement Agreement ¶ 68 contains a "clear sailing" provision that forbids Yahoo! from opposing the fee award.

The sum of class benefits and attorneys' fees should be "treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." Manual for Complex Litigation (4th ed. 2008), § 21.71, p. 525. The attorneys' fees may be measured against this total fund to determine whether the allocation between attorneys and the class is reasonable. See id. The settlement clearly is not reasonable.

Moreover, the settlement effectively creates three subclasses: current customers of Yahoo!; former customers of Yahoo! who went out of business; and former customers of Yahoo! who are still in business. The divisions are not based on any legal rationale, and the disparate treatment adds to the unfairness of the settlement and provides independent grounds for its rejection.

**A.   The Relief For Current Customers Is Illusory.**

The sole remedy for current customers is additional disclosures by Yahoo! and a new "Ad Placement Option."

There is no reason to treat this business decision by Yahoo! as "relief" achieved by a class action settlement. Yahoo!'s main competitor, Google, already offers something akin to an "ad placement option"; Google's version is even more sophisticated, permitting customers to "use placement targeting to hand-pick specific sites or sections of sites you want your ads to appear on."[8] Simple business marketing to compete with Google's

---

[6] *Id.* ¶ 50.

[7] *Id.* Exhibit 3.

[8] *See* http://www.Google.com/AdWords.

superior service is all the reason Yahoo! needs to provide the "Ad Placement Option." This settlement provision benefits Yahoo!, not the class, and logically reflects a business decision Yahoo! made independent of the litigation.

The wan disclosures required by the settlement are similarly meaningless. Good business practices alone are reason enough for Yahoo! to tell its customers where its ads are likely to appear. Moreover, Section 49 of the Settlement Agreement permits Yahoo! to rewrite the disclosures (as well as the scope of the Ad Placement Option) as it sees fit.

**B.      The Relief For Former Customers Is Arbitrary Or Non-Existent: There Is No Legal Reason To Treat Going Concerns Differently From Class Members That Are Out Of Business.**

While the relief for current customers is illusory, the relief for former customers that are still in business is non-existent: not only do these former customers not receive any cash compensation, but they do not receive any injunctive relief, either. The additional marketing options and disclosures offered by Yahoo! under the settlement, even if they have a modicum of value for current Yahoo! customers, have no value whatsoever for former customers that are ineligible for financial compensation and no longer wish to do business with Yahoo!

A token payment of twenty dollars is available to some unknown number of class members that are no longer in business, a payment that is not available to any other class member. But there is no reason to privilege the class members that are out of business. Putative Class Plaintiffs give no legal or factual reason why class members who are out of business should be treated any differently than the vast majority of class members given that being "out of business" is not a distinguishing ground for recovery under the claims for breach of contract, unjust enrichment, misrepresentation, or the California consumer fraud statute.

Putative Class Plaintiffs have made no showing, nor can they make any showing, that the claims of one sub-class are legally stronger than the claims of the vast majority of the class. As such, providing cash to one sub-class, while shutting out the other two sub-

classes from relief, is *per se* unfair. The vast majority of the class was effectively unrepresented, making the settlement inherently indefensible given the disparate treatment of class members with identical claims that plaintiffs claim merit class certification. *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 982 F.2d 721, 741-43 (2d Cir. 1992) (decertifying class under Rule 23(a)(4) because of conflicts of interest between different segments of class), *modified on reh'g on other grounds sub nom. In re Findley*, 993 F.2d 7 (2d Cir. 1993); *see also Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (rejecting settlement where sub-class was shut out without any lower-court finding that underlying claim of sub-class was meritless).

### C. The Settlement Therefore Cannot Survive Judicial Scrutiny.

"Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). *Accord Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987) ("district court ha[s] a fiduciary responsibility to the silent class members"). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). *See also Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "Settlements that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953 (*quoting Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).

"These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the

settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

Though plaintiffs claim to represent and seek to bind a class of "many thousands" of members (Dkt. No. 185 at 13), they have recovered cash for only themselves and their attorneys, and $20 for a small sub-class of indeterminate scope; little more than beer money for which few will even bother filing a claim.  Meanwhile, despite shutting out nearly all of the unrepresented class members, the three representative class members want $10,000 each.

In *Murray v. GMAC*, a 1% ratio of recovery to alleged damages and a high ratio of representative-to-individual recovery was enough to call the settlement untenable: "if the reason other class members get relief worth about 1% of the minimum statutory award is that the suit has only a 1% chance of success, then how could Murray personally accept 300% of the statutory maximum?" *Murray v. GMAC*, 434 F.3d 948, 952 (7th Cir. 2006). Here, the "success" of plaintiffs is similar to the failure criticized in *Murray*.  Plaintiffs are breaching their fiduciary duties by selling the class short.

Yahoo! has expressed a willingness to devote over $4.3 million in cash to settling this case: it is outrageous that that entire sum is being given over to the attorneys, rather than to the class clients they purport to represent.

Even if we assume that a thousand sub-class members will obtain $20 of relief—a generous assumption given that plaintiffs have made no representations how many class members are eligible for the $20 payment—this implies that the Putative Class Attorneys have recovered $20,000 for the unnamed class members and $30,000 for the representative class members.  As such, the proposed fee award of $4.17 million reflects a contingency fee of 83,400%, far more than the 25% fee that the Ninth Circuit has said is appropriate. *Torrisi v. Tucson Elec. Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (fairness of the attorneys' fees in a common fund settlement is measured against a 25% benchmark). While there is no common fund here, this is a technicality: the parties could have chosen to create a common fund.  The plaintiffs' attorneys and class representatives chose to

negotiate the lion's share of the settlement to themselves. "[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal." *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996).

There is, unfortunately, one material difference when there is no common fund: the Court cannot rewrite the settlement agreement to ensure that the class gets its fair share of the award. But this merely shows that plaintiffs' attorneys and the putative class representatives were putting their own interests ahead of those of the unnamed class members, and thus fail to meet Rule 23(a)(4) standards for adequacy.

The settlement proposed by Plaintiffs is substantially worse than other settlements rejected by the Seventh and Ninth Circuits under Rule 23(e): the unnamed class members recover less, the representative plaintiffs recover more, and the attorneys are asking for millions of dollars more. Compare this case with *Murray,* 434 F.3d at 952 ("untenable"); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000) ("substantively troubling"); *Molski*, 318 F.3d at 956 ("unfair, inadequate, and unreasonable"):

|  | *Murray* | *Crawford* | *Molski* | *Yahoo!* |
|---|---|---|---|---|
| **Unnamed class recovery** | Up to $947,000 | $0 | $0 | $20,000 (est.) |
| **Rep. plaintiff payments** | $3,000 | $2,000 | $5,000 | $30,000 |
| **Attorney fees** | ~$400,000 | $78,000 | $50,000 | $4,170,000 |
| **Approved?** | Described as "untenable" and remanded on other grounds. | Reversed as abuse of discretion. | Reversed as abuse of discretion. | ? |

# CONCLUSION

There are two independent reasons to reject the settlement.

*First*, if the settlement is approved, the recovery of the attorneys will almost certainly outstrip the recovery of the class by multiple orders of magnitude. The Putative Class Attorneys' actions in negotiating such a self-serving settlement should be deterred, rather than rewarded. It would be an abuse of discretion to reward these attorneys with a contingency fee of over 80,000% when they failed to make the millions of dollars of settlement money available to their putative clients, instead claiming it solely for themselves. Moreover, the class representatives have breached their fiduciary obligations by agreeing to accept more money for themselves than the rest of the class combined is likely to receive. The court should reject the settlement as failing to comply with the requirements of Rule 23(a)(4) and Rule 23(e).

*Second*, even if were somehow acceptable to approve a settlement that provides over 99% of the benefit to the attorneys, the proposed settlement impermissibly discriminates between identically situated members of the class with equally valid legal claims. As such, it would be an abuse of discretion to adjudge the settlement fair or reasonable.

Dated: December 14, 2009

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 23-6
Washington, DC 20036
(703) 203-3848
Attorney for Objector Eric Turkewitz

# PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois. I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On December 14, 2009, I served the attached:

OBJECTION TO PROPOSED SETTLEMENT

by First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

| | |
|---|---|
| Michael J. Boni<br>Joshua D. Snyder<br>Boni and Zack LLC<br>15 St Asaphs Road<br>Bala Cynwyd , PA 19004 | Michael D. Donovan<br>Donovan Searles<br>1845 Walnut Street Suite 1100<br>Philadelphia , PA 19103 |
| | Larry W. McFarland<br>Dennis L. Wilson<br>Keats McFarland and Wilson<br>9720 Wilshire Boulevard<br>Penthouse Suite<br>Beverly Hills , CA 90212 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 14, 2009.

/s/ M. Frank Bednarz
M. Frank Bednarz