Michael J. Boni (pro hac vice)
Joshua D. Snyder (pro hac vice)
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004
Telephone: 610/822.0200
Facsimile: 610/822.0206
mboni@bonizack.com
jsnyder@bonizack.com

Michael D, Donovan (pro hac vice)
DONOVAN SEARLES, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
Telephone: 215/732.6067
Facsimile: 215/732.8060
mdonovan@donovansearles.com

Plaintiffs' Co-Lead Counsel
(Additional Counsel Appear on Signature
Page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In Re Yahoo! Litigation | Case No.: CV 06-2737 CAS (FMOx) |
| | **CLASS ACTION** |
| | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL SETTLEMENT APPROVAL** |
| | **DATE:  January 11, 2010**<br>**TIME:   10:00 a.m.**<br>**PLACE:  Courtroom 5** |
| | Honorable Christina A. Snyder |

# **TABLE OF CONTENTS**

Page No(s).

Table of Authorities ..................................................................... iii

I.      INTRODUCTION AND SUMMARY ...................................................... 1

II.     BACKGROUND OF THE LITIGATION ................................................ 2

III.    MATERIAL TERMS OF THE SETTLEMENT AGREEMENT............. 4

        A.      The Settlement Class and Related Definitions................................. 4

        B.      "Ad Placement Option".................................................................. 5

        C.      Enhanced Disclosures ..................................................................... 5

        D.      Enhancements to the Click Investigation Request Tool ................. 5

        E.      Yahoo!-Microsoft Transaction ....................................................... 6

        F.      Cash Payments to Class Members Who Cannot
                Benefit from Systemic Changes and Benefits................................. 7

        G.      Notice.............................................................................................. 7

        H.      Release............................................................................................ 8

        I.      Yahoo! to Pay Costs of Notice, Claims Administration,
                Attorneys' Fees and Costs and Service Awards
                to the Named Plaintiffs.................................................................. 8

IV.     THE SETTLEMENT CLASS SHOULD BE FINALLY
        CERTIFIED. ................................................................................. 9

        A.      Rule 23(a) Requirements Are Satisfied......................................... 9

        B.      The Rule 23(b)(3) Requirements Are Satisfied. ........................... 12

V.      THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE
        AND WARRANTS FINAL APPROVAL ............................................. 13

        A.      Standard for Final Approval......................................................... 13

        B.      The Settlement Benefits Outweigh The Possibility Of A
                Greater Recovery and Fall Within the Range of Approval........... 14

                1.      The Complexity, Expense and Likely Duration
                        of the Litigation Favor Approval ....................................... 16

i

2.      The Reaction of the Class to the Settlement
        Favors Approval.................................................................... 17

3.      The Stage of the Proceedings and the Discovery
        Completed Favor Approval.................................................. 18

4.      The Risks of Establishing Liability Favor Approval.......... 19

5.      The Risk of Establishing Damages Favors Approval......... 20

6.      The Risks of Maintaining the Class Action Through
        Trial, and The Ability of Defendants to Withstand a
        Greater Judgment, Favor Approval. ................................... 21

7.      The Range of Reasonableness of the Settlement in
        Light of all the Attendant Risks of Litigation.................... 22

VI.     THE OBJECTIONS SHOULD BE OVERRULED............................... 23

VII.    CONCLUSION          .................................................................. 23

ii

## TABLE OF AUTHORITIES

**CASES**                                                       **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
      521 U.S. 591 (1997) ...................................................................9, 12

*In re Automotive Refinishing Paint Antitrust Litig., No. MDL 1426*,
      2004 U.S. Dist. LEXIS 29161 (E.D. Pa. Sept. 27, 2004)......................22

*Bell Atlantic Corp. v. Bolger*,
      2 F.3d 1304 (3d Cir. 1993) ...............................................................18

*Browder v. Fleetwood Enters., Inc., No. ED CV 07-01180 SGL*,
      2008 WL 4384245 (C.D. Cal. 2008) ......................................................10

*Bryan v. Pittsburgh Plate Glass Co.*,
      494 F.2d 799 (3d Cir. 1974) ................................................................18

*In re Cendant Corp. Litig.*,
      264 F.3d 201 (3d Cir. 2001) ....................................................16, 17, 18, 21

*Colesberry v. Ruiz Food Prods., Inc., No. CV F 04-5516*,
      2006 WL 1875444 (E.D. Cal. June 30, 2006)..........................................10

*D'Amato v. Deutsche Bank*,
      236 F.3d 78 (2d Cir. 2001) .................................................................15

*Eisen v. Carlisle & Jacquelin*,
      417 U.S. 156 (1974) ............................................................................8

*In re Electrical Carbon Prods. Antitrust Litig.*,
      447 F. Supp. 2d 389 (D.N.J. 2006)................................................19, 22

*In re First Alliance Mortgage Co.*,
      471 F.3d 977 (9th Cir. 2006) ...............................................................10

*In Re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab.*
      *Litig.*, 55 F.3d 768 (3d Cir. 1995) .................................................19, 20

iii

*Hainey v. Parrott*,
617 F. Supp. 2d 668 (S.D. Ohio 2007)....................................................15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9thCir. 1998)................................................10, 11, 12, 13

*In re Insurance Brokerage Antitrust Litig., No. MDL 1663*,
2007 WL 2916472 (D. N.J. Oct. 5, 2007)..............................................17

*Kelley v. Microsoft Corp.*,
No. 07-0475, 2009 WL 413509 (W.D. Wash. Feb. 18, 2009)...........20, 21

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1988)........................................................15

*Lake v. First Nationwide Bank*,
156 F.R.D. 615 (E.D. Pa. 1994) ............................................................15

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984).........................................................16

*NASDAQ Market Makers*,
187 F.R.D. 465 (S.D.N.Y. 1998)............................................................21

*Nat'l Rural Telecomms, Cooperative v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ....................................................15, 17

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ..................................................................22

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...........................................................13, 14

*In re Portal Software Sec. Litig.*,
No. C-03-5138, 2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June
30, 2007) ................................................................................................9

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.
Anderson*,
390 U.S. 414 (1968) ..............................................................................16

iv

*In re Prudential Insur. Co. Sales Practices Litig.*,
   148 F.3d 283 (3d Cir. 1988) ..............................................................19, 23

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ........................................................................17

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ....................................................................11

*Scholes v. Stone, McGuire & Benjamin*,
   143 F.R.D. 181 (N.D. Ill. 1992) ..................................................................13

*Simpson v. Fireman's Fund Ins. Co.*,
   231 F.R.D. 391 (N.D. Cal. 2005) ................................................................11

*State of W. Va. v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd* 440 F.2d 1079
   (2d Cir. 1971) ..............................................................................................20

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) ........................................................................18

*Thorogood v. Sears, Roebuck and Co.*,
   547 F.3d 742 (7th Cir. 2008) ......................................................................22

*Torrisi v. Tucson Electric Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ........................................................................13

*Varacallo v. Mass. Mutual Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005) ......................................................................17

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ....................................................................9

**STATUTES AND RULES**

Class Action Fairness Act, 28 U.S.C. § 1715 ..........................................................18

Fed. R. Civ. P. 23(a) ....................................................................................9, 10, 11

v

Fed. R. Civ. P. 23(b)(3)(A)-(D) .............................................................9, 12

**MISCELLANEOUS**

3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10.3, p ...........23

*Checkmate Strategic Group, Inc. v. Yahoo! Inc.*, 2:05-CV-04588 (C.D. Cal.) ........3

*Manual for Complex Litigation (Fourth)* § 21.632, at 321 .....................................15

1

## I.   INTRODUCTION AND SUMMARY

2          Plaintiffs submit this brief in support of their motion for final approval of a

3  class action settlement reached with Defendants Yahoo! Inc. and Overture

4  Services, Inc. (collectively, "Yahoo!").  By their motion, Plaintiffs request that the

5  Court enter an Order:  (1) certifying the settlement class ("Class"); (2) granting

6  final approval of the settlement ("Settlement"); (3) finding that the class notice

7  program has satisfied Rule 23(e) and the requirements of due process; and (4)

8  entering a final judgment and order dismissing the action and awarding attorney

9  fees, costs and incentive fee awards to Class Counsel and the Class representatives,

10  respectively.

11          The proposed settlement is the result of hard-fought, arm's-length

12  negotiations and the culmination of four mediations spanning more than two years,

13  the most recent of which was supervised by the Honorable Gary L. Taylor

14  (Retired).

15          Under the Settlement Agreement,[1] Yahoo! will develop and launch an "Ad

16  Placement Option" that will provide Class Members with exceptional relief,

17  namely, the ability to ensure that their ads do not appear in any of the types of ad

18  placements Plaintiffs challenged in this litigation.  In addition, Yahoo! will make

19  enhanced disclosures on its website about where Class Members' ads could appear;

20  expand its click investigation request tool; pay $20.00 to eligible Class Members

21  who are unable to avail themselves of the substantive benefits (i.e., because they

22  are out of business and thus do not need to place advertisements online); and pay

23  the costs of disseminating notice, claims administration, and agreed upon

24  _____

25  [1]     References to the Settlement Agreement herein appear as "S.A. ¶ ___."  A
copy of the Settlement Agreement and copies of the exhibits thereto are appended

26  to the Declaration of Joshua D. Snyder, Docket Entry No. 186.  Unless otherwise
specified, all capitalized terms herein that are defined terms in the Settlement

27  Agreement shall have the same meaning as in the Settlement Agreement.

28

attorneys' fees, reimbursements of costs, and service awards to the named plaintiffs.

By Order dated September 22, 2009, this Court granted preliminary approval of the Settlement and directed that notice and claim forms be provided to Class Members as specified in the Order.  The Claims Administrator approved by the Court, Rust Consulting, Inc. ("Rust"), then provided email and direct mail notice to over 800,000 members of the Class.  *See* Collins Decl. ¶ 5**.**  The Claims Administrator also established a website, www.inreyahoosettlement.com, at which Class Members could view and download settlement and litigation-related documents and submit claim forms electronically.  *See id.* ¶ 8.  The Claims Administrator also published the summary form of notice approved by the Court in *USA Today* on October 13, 2009.  Of the over 800,000 Class Members, only 266 have opted out.  *See id.* Exh. 5.  As of December 22, 2009, the parties have received ten objections to the proposed Settlement from twelve Class members.  The objections are meritless for the reasons set forth in Plaintiffs' memorandum in response to objections, and in Plaintiffs' fee petition, both of which are filed herewith.

Plaintiffs respectfully submit that the settlement is fair, reasonable, and adequate and in the best interests of the Class, and should be finally approved.

## II.    BACKGROUND OF THE LITIGATION

Plaintiffs commenced this action in May 2006 on behalf of a proposed class of pay-per-click search advertising customers of Yahoo![2]  On July 13, 2006, Plaintiffs filed a Consolidated Amended Class Action Complaint.  Yahoo! moved

---

[2]    The action was originally captioned *Draucker Development et al. v. Yahoo!, Inc. et al.,* Case No. CV 06-2737 JFW.  By Stipulation and Order of February 11, 2009, the Court dismissed Draucker Development's claims without prejudice.

to dismiss Plaintiffs' claims, and, following extensive briefing, the Court granted in part, and denied in part, Yahoo!'s motion with leave to amend.

On November 20, 2006, Plaintiffs filed a Consolidated Second Amended Class Action Complaint ("SAC"), which contained causes of action for breach of contract, restitution/unjust enrichment/money had and received, misrepresentation and civil conspiracy, and violation of California Business and Professions Code §§ 17200, *et seq.*  Plaintiffs alleged that Yahoo! customers contracted for targeted ad placements through two products, "Sponsored Search" and "Content Match" (and predecessor products provided by Overture Services, Inc. and GoTo.com) and that Yahoo! breached its contract with its customers by allowing Yahoo! ads to be displayed in spyware, domain name parking sites (also known as bulk registration sites), pop-ups, pop-unders, and typosquatting sites.  Yahoo! moved to dismiss the SAC, and a second series of substantial briefing followed.

On March 7, 2008, while Yahoo!'s second motion to dismiss was pending, Plaintiffs moved for class certification.  By Order of April 21, 2008, the Court granted in part, and denied in part, Yahoo!'s motion to dismiss, and discovery began in earnest.[3]  During the course of discovery, Yahoo! produced over 1.5 million pages of documents and hundreds of gigabytes of data.  Plaintiffs deposed three Yahoo! employees pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Named plaintiffs Crafts by Veronica, Mika's Wedding, and True

---

[3]    The vigorous disputes in connection with the motions to dismiss illustrate that this litigation has been hotly contested.  The parties' briefing and argument on Yahoo!'s motion for disqualification of Plaintiffs' counsel Benjamin Edelman, the many hours spent in hard fought discovery meet-and-confers, and the litigation related to the scope of the release in the class action settlement in *Checkmate Strategic Group, Inc. v. Yahoo! Inc.*, 2:05-CV-04588 (C.D. Cal.), likewise demonstrate that this case has been fiercely contested by both sides at every stage of the proceeding.

Communication, Inc. d/b/a Metrodate.com each produced documents to Yahoo! and testified at deposition.

Since January 2007, the parties have participated in four mediations – two supervised by the Honorable John K. Trotter (Retired), and one each before the Honorable Dickran M. Tevrizian (Retired) and Judge Taylor (Retired), respectively. It was only during the most recent mediation before Judge Taylor – which occurred well into discovery and in the midst of briefing on Plaintiffs' motion for class certification – that the parties were able to reach the proposed settlement of this class action.

## III.   MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

The material provisions of the Settlement Agreement are summarized below.

### A.     The Settlement Class and Related Definitions

The Settlement Class is defined as follows:

> All Persons that purchased, directly or indirectly, Yahoo! Ads in the U.S. Marketplace from May 1, 2000, through and including the date the Court grants final approval of the Settlement Agreement.

S.A. ¶ 42.[4]

"Yahoo! Ads" are defined as "pay-per-click text advertising offered by Yahoo!." S.A. ¶ 32. Pay-per-click text advertising includes the Yahoo! Search Marketing products currently known as "Sponsored Search" and "Content Match," as well as predecessor products provided by Overture Services, Inc. and GoTo.com, Inc. S.A., Exhibit 3 (Notice). "U.S. Marketplace" is defined as "exclusively any or all of the 50 United States and 13 Canadian provinces and territories in which Yahoo! Ads may appear written in the English language." S.A. ¶ 30.

---

[4]      "Persons" means both natural persons and entities. S.A. ¶ 20.

### B.    "Ad Placement Option"

As a result of the litigation, Yahoo! has agreed to develop a new option for its advertising customers, which completely remedies the claims asserted in this action.  The "Ad Placement Option" is scheduled to launch by the end of the first quarter of 2010, but in no event later than the end of the third quarter of 2010.  S.A. ¶ 45.   It will enable Class Members to limit the display of their Yahoo! Ads to web pages owned or operated by Yahoo! and all of its partners other than those that operate domain name parking sites, bulk registration sites, "pop-up" or "pop-under" windows, typosquatting sites, "sliders," "sidebars," "injected ads," or spam email.  S.A. ¶ 22.

### C.    Enhanced Disclosures

Yahoo! will post enhanced disclosures on the "Traffic Quality" portion of its website, about where Yahoo! Ads could appear on the Internet.  S.A. ¶ 46.  The disclosures will provide Yahoo! customers with information about how Yahoo! Ads are implemented, and will explain that Yahoo! offers the Ad Placement Option to provide customers with the ability to limit where their ads may appear.  S.A., Exhibit 5.

### D.    Enhancements to the Click Investigation Request Tool

Yahoo! will also modify its click investigation request function to allow advertisers to ask questions or request investigations regarding certain Yahoo! advertising partners.  S.A. ¶ 47.  Yahoo! will add an "issue button" to the Traffic Quality section of its website to allow Yahoo! customers to request investigations of Yahoo!'s partners, as well as add information to its website notifying customers that they are able to request partner investigations.  *Id*.

### E.    Yahoo!-Microsoft Transaction

On July 29, 2009, Yahoo! and Microsoft Corporation entered into a letter agreement pursuant to which Yahoo! and Microsoft will negotiate a definitive agreement that would, upon regulatory approvals and at full implementation, make Microsoft the exclusive paid search platform for Yahoo! ("Microsoft Transaction") for a ten year period.  S.A. ¶ 48.  Yahoo! is hopeful that regulatory approval of the Microsoft Transaction could occur in early 2010.  *Id.*  Full implementation of the Microsoft Transaction is estimated by Yahoo! to occur within two years following the necessary regulatory approvals.  *Id.*

Under the Settlement Agreement, Yahoo! agrees to provide the Ad Placement Option on its own Paid Search Services platform for a period of two years from the date it first launches the Ad Placement Option and while it offers its own Paid Search Services platform, or through the date of full implementation of the Microsoft Transaction, whichever occurs first.  *Id.*  Yahoo! agrees to provide the enhanced disclosures, and enhancements to the click investigation request tool, for a period of two years from the date each benefit is first made available, or through the date of full implementation of the Microsoft Transaction, whichever occurs first.  *Id.*  Further, under the Agreement, Yahoo! "represents and warrants that the definitive agreements for the Microsoft Transaction will contain language to the effect that Microsoft will agree to implement ad distribution controls on the Microsoft paid search platform following full implementation."  *Id.*

If any Class Members are transitioned to Microsoft's paid search platform earlier than two years from the launch of the Ad Placement Option by Yahoo! on the Yahoo Paid Search Services platform, and before Microsoft implements the ad distribution controls on its paid search platform, Yahoo! will notify those affected Class Members that ad distribution controls are not available at the time of their transition to the Microsoft paid search services platform.  *Id.*

**F.     Cash Payments to Class Members Who Cannot Benefit From Systemic Changes and Benefits**

Class Members who cannot benefit from the foregoing benefits (i.e., because they have gone out of business) are eligible for a $20.00 payment from Yahoo!. S.A. ¶ 50; Exhibit 1 (Claim Form).

Class Members have been provided with the option of completing a user-friendly claim form online or in paper form.  S.A. ¶ 50.  In the event that information provided by a Class Member conflicts with Yahoo!'s records, the Settlement Agreement provides Class Members with the right to seek review by a Special Master – Judge Taylor, if available – to determine eligibility for the payment.  S.A. ¶ 50(j)-(m).

**G.     Notice**

Within twenty (20) calendar days of the preliminary approval order, Rust emailed the approved Notice to Class Members using the email addresses in Yahoo!'s electronic records.  Collins Decl. ¶ 5; S.A. ¶ 59(b).  For those emails that were returned as undeliverable, Rust then sent a printed copy of the Notice to Class Members by United States postal mail using the physical mailing address, if any, in Yahoo!'s electronic records.  Collins Decl. ¶ 6; S.A. ¶ 59(a)-(b).  In addition, on October 13, 2009, Rust caused the Summary Notice to be published in the national and international editions of *USA Today*, as required by the preliminary approval order.  Collins Decl. ¶ 7; S.A. ¶ 59(c).

The direct and website notices expressly advised Class Members of the nature of the claims, the terms of the proposed settlement, the precise amount of attorney fees and service awards for which Class Counsel and the Class Representatives would apply, and the procedures Class Members should follow to request exclusion or to object to the proposed settlement.  This program meets the due process requirements of Rule 23 of the Federal Rules of Civil Procedure,

which calls for "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (emphasis omitted).  In this regard, the Class has been (i) provided with notice of the proposed settlement as well as the rights, method and dates by which Class Members can object to or opt out of the settlement, and (ii) has been advised of the final fairness hearing date at which Class Members will be provided an opportunity to be heard.

According to Rust's declaration, over 800,000 email and direct mail notices were provided to members of the Class.  In response, a little over 250 entities have opted-out, and only twelve have objected to the Settlement.

## H.     Release

In exchange for the benefits conferred on the Class by Yahoo!, all members of the Class who have not opted out will be deemed to have released any and all claims arising from January 1, 2000 through and including the date the Court grants final approval of the Settlement Agreement, that have been or could have been asserted in the Action.  S.A. ¶ 51.  The full provisions of the release are set forth in paragraph 51 of the Settlement Agreement.

## I.     Yahoo! to Pay Costs of Notice, Claims Administration, Attorneys' Fees and Costs and Service Awards to the Named Plaintiffs

In addition to the significant technological, advertising and monetary benefits to be made available to Class members as a result of the Settlement, Yahoo! has also agreed to pay the costs of notice and claims administration, including fees owed to the Claims Administrator and, if necessary, to the Special Master.  Yahoo! has also agreed to pay Class Counsel's attorneys' fees and costs, and service awards to the named plaintiffs, subject to the Court's approval, in an aggregate amount of $4.3 million.  S.A. ¶ 68.  As a result, Class Member recoveries and benefits will not be diminished by a fee award.

**IV.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED.**

In conjunction with the final approval of a settlement under Rule 23, courts routinely grant provisional certification of a plaintiff class.  Provisional certification is not final or binding, and is reviewed in connection with the final fairness hearing.  *See In re Portal Software Sec. Litig.*, No. C-03-5138, 2007 U.S. Dist. LEXIS 51794, *19 (N.D. Cal. June 30, 2007) (granting provisional certification of a settlement class).  At the fairness hearing, representative plaintiffs must then establish that the class satisfies the requirements of Rule 23 and, if so, class certification will be made final if the settlement is approved.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997) (discussing certification of a settlement class).

Rule 23(a) imposes four threshold requirements on putative class actions: numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); *see also In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).  Plaintiffs also must show that the class is "maintainable" under Rule 23(b), which sets forth three alternative categories under which classes may be certified.  *See* Fed. R. Civ. P. 23(b)(1)-(3).  For a class to meet the requirements of Rule 23(b)(3), common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Here, the Class satisfies all the requirements.

**A.   Rule 23(a) Requirements Are Satisfied.**

To satisfy numerosity, Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement."  *Id.* (citing 5 MOORE'S FEDERAL PRACTICE § 23.22[1][b] (3d ed. 2004)).  Here, the class size exceeds 800,000 entities.  *See* Collins Decl. ¶ 5.  This undeniably satisfies the numerosity requirement.

9

Next, Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit construes this requirement "permissively," and does not require all questions of fact and law to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Instead, a single common question of law is sufficient to satisfy the commonality requirement. *In re First Alliance Mortgage Co.*, 471 F.3d 977, 990–91 (9th Cir. 2006) (affirming class treatment in fraud case, notwithstanding non-identical misrepresentations, where sales agents used a "standardized protocol"). The existence of shared legal issues with divergent factual predicates is also sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Hanlon*, 150 F.3d at 1019.

Commonality exists here because Class Members' claims revolve around Yahoo!'s online disclosures and its ad placement contracts and terms. *See* SAC ¶ 50; *see also Browder v. Fleetwood Enters., Inc.*, No. ED CV 07-01180 SGL, 2008 WL 4384245, at *6 (C.D. Cal. 2008) (holding that commonality existed because defendant was alleged to have given the same defective instruction to all class members); *Colesberry v. Ruiz Food Prods., Inc.*, No. CV F 04-5516, 2006 WL 1875444, at *3 (E.D. Cal. June 30, 2006) ("Common questions of fact and law are present where the defendants have engaged in standardized conduct towards members of the proposed class."). Issues common to every member of the class include:

> (a)  What is the meaning of the terms "Sponsored Search" and "Content Match" under Yahoo's uniform contract with the members of the Class?
>
> (b)  Whether Yahoo breached its contract by promising and charging for, but failing to deliver, Sponsored Search and Content Match advertising; and
>
> (c)  Whether Yahoo was unjustly enriched from pay-per-click ads that were not delivered in accordance with its contract.

10

SAC ¶ 50.

Class Members all share the same interest in resolving these questions and whether there are appropriate classwide remedies for Yahoo!'s unlawful practices, including whether Yahoo! should be enjoined from its unlawful practices. *See* Fed. R. Civ. P. 23(a)(2) (commonality). Any one of these common questions of law or fact is sufficient to establish commonality.

The third requirement, typicality, is also not demanding. *See Hanlon*, 150 F.3d at 1020. To determine typicality, "the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). To establish typicality, the representatives' claims simply must be "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' claims arise from the same course of conduct and are based on the same legal theory as the claims of the absent Class Members. The claims of Plaintiffs and the other Class Members all arise from the "same course of events" – that is, Yahoo!'s online disclosures and the uniform terms and conditions of its ad placement services.

Rule 23(a)(4) requires the Court to ensure that "the representative parties will fairly and adequately protect the interests of the class." This factor requires (1) that the representative Plaintiffs not have any conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel who will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Here, named plaintiffs Crafts by Veronica, Mika's Wedding, and True Communication, Inc. d/b/a Metrodate.com have no interests antagonistic to the rest of the Settlement Class and have retained counsel who are highly experienced in class action litigation. *See* Boni Decl. Exh. C; Donovan Decl. Exh. E.

1

**B.      The Rule 23(b)(3) Requirements Are Satisfied.**

2        The Rule 23(b)(3) requirements – predominance and superiority – are

3 satisfied as well.  The purpose of the predominance inquiry is to allow the Court to

4 determine whether proposed classes are sufficiently cohesive to warrant

5 adjudication by representation.  *See Amchem Prods. v. Windsor*, 521 U.S. at 623

6 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

7 sufficiently cohesive to warrant adjudication by representation.").  "When common

8 questions present a significant aspect of the case and they can be resolved for all

9 members of the class in a single adjudication, there is clear justification for

10 handling the dispute on a representative rather than on an individual basis."

11 *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

12        Here the common questions (see page 10, *supra*) predominate over any

13 issues affecting only individual Class Members.  Plaintiffs' claims are proven or

14 disproven by evidence that is predominantly common to all members of the class

15 and subject to generalized proof—namely, Yahoo!'s online disclosures and

16 practices concerning the "Sponsored Search" and "Content Match" services—

17 making these issues eminently appropriate for class treatment.  *See* SAC ¶ 50.

18        In addition, a class action is a superior means of fairly and efficiently

19 resolving this dispute.  Fed. R. Civ. P. 23(b)(3)(A)-(D).[5]  "The superiority

20 inquiry... requires determination of whether the objectives of the particular class

21 action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at

22 1023.  "This determination necessarily involves a comparative evaluation of

23 alternative mechanisms of dispute resolution."  *Id.*  Superiority exists where "the

24 alternative methods of resolution are individual claims for a small amount of

25 consequential damages" and "litigation costs would dwarf potential recovery."  *Id.*

26

27 [5]      In the settlement context, issues of manageability at trial under Rule 23(b)(3)
28 need not be addressed.  *Amchem*, 521 U.S. at 620.

Here, a class action is necessary because each Class Member has a relatively small amount of damages as a proportion of its individual Yahoo! advertising activity, making individual lawsuits both impractical and needlessly duplicative. In addition, the Class size is so large and the proofs are so complicated that individual lawsuits would heavily burden the courts, the parties and the public. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992) ("What would be unmanageable is the institution of numerous individual lawsuits.")

In sum, because the Settlement Class provisionally certified in the preliminary approval order meets the requirements of Rule 23(a) and 23(b)(3), final class certification should be granted.

## V. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND WARRANTS FINAL APPROVAL.

### A. Standard for Final Approval.

The approval of a classwide settlement is a matter within the district court's discretion, which is exercised in the context of public policy that favors the settlement of class action lawsuits. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution …. [E]specially … in complex class action litigation …").

In deciding whether to approve a proposed settlement, the Court must determine whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Hanlon*, 150 F.3d at 1026; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). The Ninth Circuit has set forth the following list of factors that may be relevant in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a

13

> balancing of several factors which may include, among others, some or all of the following:  the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted).

The Ninth Circuit has cautioned as follows:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be weighed against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id.*  Here, the Settlement meets or exceeds all of the pertinent approval criteria.

### B.     The Settlement Benefits Outweigh the Possibility of a Greater Recovery and Fall Within the Range of Approval.

As threshold considerations, the Settlement is the result of extended good faith negotiations.  The negotiations were adversarial and at times contentious.  The parties negotiated and reached agreement concerning attorneys' fees, reimbursement of expenses, and service awards only after reaching agreement on all other material terms of this settlement.  The settlement is no way a product of fraud, collusion, or anything other than hard fought, arm's-length bargaining.  Nor

14

are any of the concerns highlighted in the *Manual of Complex Litigation (Fourth)* ("*Manual*") – unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the class, the need for subclasses, or excessive compensation for attorneys – implicated by the settlement. *See Manual (Fourth)* § 21.632, at 321. All Class Members are treated fairly under the settlement, and the proposed service awards fall well within the range of service awards to class representatives. Class Members (including those that have gone out of business) are entitled to significant benefits under the settlement; there is no need for subclasses; and the fees that Yahoo! has agreed to pay are well-warranted (as established in Plaintiffs' fee petition), and not excessive.

The involvement of Judges Taylor, Tevrizian, and Trotter as mediators heavily favors final approval. "The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 674 (S.D. Ohio 2007); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (recognizing that the involvement of a mediator in "pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). The fact that there have been four mediations before three mediators further underscores the difficult and adversarial nature of the negotiations that ultimately lead to the settlement.

Moreover, courts accord considerable weight to counsel's judgment that the settlement is fair and in the best interests of the settlement class. *See Nat'l Rural Telecomms, Coop. v. DirecTV., Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (according "great weight" to the recommendation of counsel); *see also Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arm's-length and good faith."); *Kirkorian v. Borelli,* 695 F. Supp. 446, 451 (N.D. Cal. 1988) (explaining that significant weight should be

15

accorded to the views of experienced counsel that the settlement is reasonable). Along with being highly experienced in class action litigation, Plaintiffs' Co-Lead Counsel are very well informed about the merits of the claims and defenses in this matter.  By the time of the mediation before Judge Taylor, the case had been litigated for over three years, and counsel had thoroughly investigated the facts and analyzed the relevant law.  By that time, the parties had exchanged voluminous discovery, and Yahoo! personnel and the named plaintiffs had been deposed. These considerations strongly favor final settlement approval.

Most importantly, the Settlement offers the Class substantial relief on claims that Yahoo! vigorously disputed and would continue to dispute through trial and appeal absent the Settlement.  The Ad Placement Option will afford Class Members comprehensive prospective relief from the types of ad placements challenged in this litigation.  The required disclosures will provide Yahoo! Ad customers with new, enhanced information about where their ads may appear, and Class Members will have a mechanism for questioning and investigating Yahoo! Ad partners.  Eligible former customers who have gone out of business, and thus cannot take advantage of the benefits described above, are entitled to a payment. The interests of Class Members are also protected if the Microsoft Transaction receives regulatory approval.  The Settlement represents an excellent result against a sophisticated and well-represented defendant.

### 1. The Complexity, Expense and Likely Duration of the Litigation Favor Approval.

This factor assesses "the probable costs, in both time and money, of continued litigation."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001).  Courts have consistently held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement," *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).  *See also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,

390 U.S. 414, 424 (1968) (court must consider "the complexity, expense, and likely duration of . . . litigation").

The claims advanced by the Class involve numerous complex legal and economic issues, and would have required expert testimony both at the class certification hearing and at trial. Yahoo! is represented by very able counsel who have consistently mounted a vigorous defense. Thus, continued litigation would be very complex, time consuming, and expensive. The Settlement secures for the Class the benefit of substantial and valuable ad placement tools, contractual modifications and the availability of a cash payment, with none of the delay, risk and uncertainty of continued litigation. This first factor, therefore, strongly favors approval of the Settlement.

## 2. The Reaction of the Class to the Settlement Favors Approval.

This factor attempts to gauge whether members of the class support the Settlement, and the Class's support "creates a strong presumption . . . in favor of the Settlement." *Cendant*, 264 F.3d at 235; *see Nat'l Rural Telecom, Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528-529 (C.D. Cal. 2004).

As other courts have found in similar cases, the absence of significant and manifold objections "strongly supports approval." *See In re Ins. Brokerage Antitrust Litig.*, No. MDL 1663, 2007 WL 2916472 *4 (D. N.J. Oct. 5, 2007); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (affirming district court's finding that the filing of just two objections weighed heavily in favor of approval); *Varacallo v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 207, 251 (D.N.J. 2005) (approving settlement despite almost 50 objections in large class case).

The Notice of Class Action and Proposed Settlement approved by this Court was delivered to over 800,000 Class members. Summary Notice was published in international and national editions of *USA Today*. *See* Collins Decl. ¶ 7. Pursuant

17

to the Class Action Fairness Act, 28 U.S.C. § 1715, this Notice and other Settlement documents were provided to the attorneys general of each of the fifty (50) states and to the United States Department of Justice. *See id.* ¶ 24. In response to the emailed, mailed and published class notice, there have been just ten objections to the Settlement (on behalf of just twelve Class Members), representing a tiny fraction of 1% of the Class. Likewise, no federal or state official has expressed any objection to either the Settlement or to the attorney fee request. Therefore, the second factor strongly favors approval. *See, e.g.*, *Cendant*, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption . . . in favor of the Settlement . . . ."); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir. 1974) (affirming final approval where 82 class members out of 452 objected); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (29 objectors in class of 281 "strongly favors settlement").

As noted, out of more than 800,000 Class Members noticed by mail and national publication, only 266 opted out. *See* Collins Decl. Exh. 5.

### 3. The Stage of the Proceedings and the Discovery Completed Favor Approval.

This third factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235. Unsurprisingly, "post-discovery settlements are more likely to reflect the true value of the claim and be fair." *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993).

Here, very substantial fact discovery and expert consultation had occurred before the settlement was reached. Thousands of pages of documents had been produced and reviewed. Class Counsel had more than adequate information from which to make an informed judgment concerning the reasonableness of the Yahoo!

settlement.  Where, as in this case, the settlement is "achieved through arm's length negotiation[] . . . and this negotiation process follows meaningful discovery, the maturity and correctness of the settlement becomes all the more apparent." *In re Electrical Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D. N.J. 2006).

### 4.    The Risks of Establishing Liability Favor Approval.

Plaintiffs were aware of the difficulties and risks associated with proving liability.  To that end, in assessing the settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery against the continuing risks of litigation.  *See In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 317 (3d Cir. 1988) (noting how "settlement provide[s] class members the opportunity to file claims immediately after court approval of the settlement, rather than waiting through what no doubt would be protracted litigation").

While Class Counsel believe they had a strong liability case, the case was not risk-free.  In particular, many recent class actions have become difficult to certify and, if certified, to maintain class certification through to verdict and judgment.  *See*, *e.g. In Re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 804, 815-817 (3d Cir. 1995) (remanding to district court for detailed class certification findings and noting alternative means to prove classwide damages).

For example, there would be a very substantial risk of proving liability for the entire class period.  Yahoo! would likely present expert and other testimony that the auction and bid design (i.e., for keywords) of its ad placement product vitiated any overpayment claim by class members for unwanted ad displays or ad clicks.  It would undoubtedly be Yahoo!'s position that damages for ad purchasers would not be recoverable absent specific proof of unfairly high bids or objectionable ad placements through syndicators.  In addition, Yahoo! contended

in opposition to class certification that a key metric for ad customers is the conversion rate (i.e., the rate at which clicks on their ads convert to sales), so that damages would vary significantly among Class Members depending on the conversion rates they experienced.  Although Plaintiffs believe they have sound counter-arguments to Yahoo!'s "conversion rate" defense to class certification (and damages), and have evidence that all Class Members were damaged as a result of Yahoo!'s syndication and ad placement practices, there was and is real risk that proof of classwide causation could fail.  *See*, *e.g.*, *Kelley v. Microsoft, Corp.*, No. 07-0475, 2009 WL 413509 (W.D. Wash. Feb. 18, 2009) (decertifying class based on failure to prove classwide causation).

Although the risks of proving liability support a finding that a settlement is an excellent result for a class, even where liability is strong, the complexities and uncertainties of litigation often warrant the approval of a settlement:

> It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.  Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court.  The trial in each case then resulted unfavorably for Plaintiff; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement.

*State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd* 440 F.2d 1079 (2d Cir. 1971).  While Plaintiffs believe they have a meritorious case, the risk of establishing liability and obtaining and maintaining class certification for the entire class period are too substantial to be ignored.

### 5.   The Risk of Establishing Damages Favors Approval.

Even if the Class were to successfully establish Yahoo!'s liability, Plaintiffs likely would have met substantial challenges to proving damages.  The presentation of damage testimony is a complex matter.  *See In re General Motors*

*Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 815-817 (3d Cir. 1995) (rejecting settlement and noting different measures of damages); *Kelley v. Microsoft Corp.*, 2009 WL 413509 (decertifying class).

In this case, damages would have been aggressively contested at trial.[6] While Class Counsel believe convincing expert testimony could be provided on the damages question, it is certainly possible that, in the unavoidable "battle of experts," a jury might disagree with Plaintiffs' position.  *See Cendant*, 264 F.3d at 239 ("establishing damages at trial would lead to a 'battle of experts' ... with no guarantee whom the jury would believe"); *NASDAQ Market Makers*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages....  In this 'battle of experts,' it is difficult to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors.").  Accordingly, and for the reasons stated in Section V.B.4. above, the risks avoided by this Settlement strongly support approval.

### 6. The Risks of Maintaining the Class Action Through Trial, and The Ability of Defendants to Withstand a Greater Judgment, Favor Approval.

The sixth factor is also significant in this litigation.  Plaintiffs believe there was a risk that class certification might not be maintained through trial.  As noted, at least one other court has decertified a class action where expert evidence was not sufficient to maintain class certification.  *See Kelley v. Microsoft Corp.*, 2009 WL 413509 (decertifying class).  Thus, the proposed settlement is "desirable for the

---

[6]     Of course, the inevitable post-trial motions and possible appeals could also negatively impact the scope of promptness of any recovery by the Class if the matter is not resolved.

class by eliminating the risk of decertification." *Electrical Carbon*, 447 F. Supp. 2d at 401.

Although there is always a risk that any corporate defendant will develop serious financial problems, there is currently no indication that this is the case with Yahoo!  Conversely, however, "to withhold approval of a settlement of this size because the Defendants could withstand a greater judgment would make little sense." *In re Automotive Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2004 U.S. Dist. LEXIS 29161, at *22 (E.D. Pa. Sept. 27, 2004).  With some of the largest multi-national corporations and financial institutions recently failing or seeking "bailouts," this is one risk the Class avoids by settlement.

### 7.   The Range of Reasonableness of the Settlement in Light of all the Attendant Risks of Litigation.

The eighth and ninth factors – the range of reasonableness considering the best possible recovery and the risks of litigation – also support approval of the settlement.  The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

For most of the Class Members, Yahoo!'s modifications and technological additions will allow advertisers to control where their ads will appear on the Internet, and where they will not appear.  For those who cannot take advantage of these changes, the Settlement also provides a monetary benefit, albeit nominal given the difficulties of individual damages proofs. *See Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 748 (7th Cir. 2008) (awarding "an amount equal to an estimate of the average damages [each class member] had sustained would be a sensible and legally permissible alternative to remitting all the buyers to individual suits each of which would cost orders of magnitude more to litigate than

the claims would be worth to the plaintiffs"), *citing* 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10.3, p. 480 (4th ed. 2002).

Considering the benefits of the settlement in relationship to Yahoo!'s substantial defenses, and the probability of lengthy litigation in the absence of a negotiated resolution, the Settlement is plainly reasonable. *See, e.g., Prudential*, 148 F.3d at 317 ("settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.").

In sum, an analysis of the foregoing factors demonstrates that the Settlement is excellent, let alone "fair, reasonable and adequate" to the Class. Thus, the Settlement should be granted final approval by the Court.

## VI.    THE OBJECTIONS SHOULD BE OVERRULED.

Ten (10) objections were filed and served. None of the objections raises a legitimate reason for disapproving the Settlement. For the reasons set forth in Plaintiffs' Memorandum of Points and Authorities In Response to Objections and Plaintiffs' fee petition, each objection should be overruled, and Plaintiffs' motion for final settlement approval should be granted.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for final settlement approval.

Respectfully submitted,

Dated:  December 22, 2009

_____/s/_____
Michael J. Boni
Joshua D. Snyder
**BONI & ZACK LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
(610) 822-0200

23

Michael D. Donovan
**DONOVAN SEARLES, LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**Co-Lead Counsel for Plaintiffs**

Paul R. Kiesel
**KIESEL, BOUCHER & LARSON**
8648 Wilshire Blvd.
Beverly Hills, CA 90211
(310) 854-4444

**Liaison Counsel for Plaintiffs**