Michael J. Boni (pro hac vice)
Joshua D. Snyder (pro hac vice)
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: 610/822.0200
Facsimile: 610/822.0206
mboni@bonizack.com
jsnyder@bonizack.com

Michael D. Donovan (pro hac vice)
DONOVAN SEARLES, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
Telephone: 215/732.6067
Facsimile: 215/732.8060
mdonovan@donovansearles.com

Plaintiffs' Co-Lead Counsel
(Additional Counsel Appear on
Signature Page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| In Re Yahoo! Litigation | Case No.: CV 06-2737 CAS (FMOx) |
|---|---|
| | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO OBJECTIONS** |
| | **DATE:  January 11, 2010**<br>**TIME:   10:00 a.m.**<br>**PLACE:  Courtroom 5** |
| | Honorable Christina A. Snyder |

# **TABLE OF CONTENTS**

Page No(s).

I.   INTRODUCTION ................................................................. 1

II.  THE COMMON OBJECTIONS ARE MERITLESS ............................... 3

    A.   The Class Received Adequate Consideration ................................... 3

    B.   The Cash Payment is Adequate, and Limiting it to Yahoo!
        Customers That Went Out of Business is Fair ............................... 6

        1.   The Cash Payment is Fair, Reasonable and Adequate .......... 6

        2.   Limiting the Cash Payment to Class Members That are
            Out of Business is Fair ........................................................ 7

    C.   Objectors' Arguments Concerning the Microsoft
        Transaction are Misplaced ............................................................. 8

    D.   The Requested Counsel Fees and Incentive Awards are Fair,
        Reasonable and Well Supported in The Record ........................... 10

III. EACH INDIVIDUAL OBJECTION IS MERITLESS ........................... 10

    A.   Bagne ........................................................................................ 10

    B.   Barba ......................................................................................... 11

    C.   Ford ........................................................................................... 12

    D.   Harris ........................................................................................ 13

    E.   LightTheNations.com ................................................................ 13

    F.   Miles Technologies ................................................................... 14

    G.   O.E. Express ............................................................................. 14

    H.   Owen ......................................................................................... 16

    I.   Pavelik ...................................................................................... 17

    J.   Turkewitz .................................................................................. 17

IV.  CONCLUSION ................................................................. 18

i

# TABLE OF AUTHORITIES

## CASES & DOCKETS

*Bell Atl. Corp. v. Bolger,*
    2 F.3d 130 (3d Cir. 1993) .................................................................. 5

*Bloyed v. General Motors Corp.,*
    881 S.W.2d 422 (Tex. App. 1994) ..................................................... 16

*Checkmate Strategic Group, Inc. v. Yahoo! Inc.,*
    2:05-cv-04588-CAS-FMO (C.D. Cal.).......................................... 12, 13

*In re Currency Conversion Fee Antitrust Litig.,*
    2009 U.S. Dist. LEXIS 98291 (S.D.N.Y. Oct. 22, 2009) ................... 8

*Devlin v. Scardellitti,* 563 U.S. 1 (2002).............................................. 12

*In re: Homestore.Com, Inc. Sec. Litig.,*
    Master File No. CV 01-11115-RSWL (C.D. Cal.)............................ 14

*Harris v. Jacobs,*
    621 F.2d 341, 343 (9th Cir. 1980)..................................................... 16

*Lobatz v. U.S. West Cellular of Cal., Inc.,*
    222 F.3d 1142 (9th Cir. 2000) ........................................................... 11

*Microsoft Corp. v. Brown,*
    06-cv-05247-R-MAN (W.D. Ca.) ......................................................... 9

*Microsoft v. Cox,*
    2:06-cv-00692-TS (D. Utah)................................................................. 9

*Microsoft Corp. v. Timothy P. Taylor,*
    King County (Wash.) Superior Court, No. 06-2-36082-6-SEA ....................... 9

*O'Keefe v. Mercedes-Benz USA, LLC,*
    214 F.R.D. 266, (E.D. Pa. 2003) ..................................................... 12

*Shaw v. Toshiba Am. Info. Sys.,*
    91 F. Supp. 2d 942 (E.D. Tex. 2000) .......................................... 5, 12

ii

1

*White v. Experian Information Solutions, Inc.*,

   CV-05-1070-DOC (C.D. Cal.) ................................................................ 13

**<u>TREATISE</u>**

Jerold S. Solovy, et al., 5-23 Moore's Federal Practice - Civil § 23.86 ............ 7

iii

1  **I.     INTRODUCTION**

2         Plaintiffs respond to the ten objections filed against the Settlement.[1]  After

3  more than 800,000 persons and businesses received notice of the proposed

4  settlement, only ten objections (from twelve Class Members) have been received.

5  This is an infinitesimal objection rate.  Absent the professional and repeat

6  objectors, that number dwindles even further, to four or fewer.

7

8

9

10

11

12  [1]     The following objections have been entered on the docket to date:

13  (1) Objection to Settlement by Alexander Bagne (Docket Entry 191); (2) Objection
    to Class Settlement by Miles Technologies, Inc. (Docket Entries 197-198); (3)
14  Notion of Intent to Appear and Preliminary Objection to Proposed Settlement by
15  O.E. Express, Inc. (Docket Entries 193-195); (4) Memorandum of Law in Support
    of Objection to Proposed Settlement by Eric Turkewitz (Docket Entries 192, 196).
16

17         Counsel has been informed by the Clerk's Office that the following
18  objections have been received but have not been entered on the docket:
    (1) Objection to Settlement by Randal S. Ford; (2) Objection of Daniel Harris d/b/a
19  The Law Offices of Daniel Harris to the Proposed Settlement and Proposed Fee
20  Award; (3) Objection to Proposed Settlement, Notice of Appearance and Intent to
    be Heard by LightTheNations.com, ChaseandSam.com, and Digital Playroom,
21  Inc.; (4) James Owen's Objection to Proposed Settlement, Objection to Attorneys'
22  Fees Request, Notice of Intention to Appear, and Request to Speak at the Hearing;
23  (5) Objection to Proposed Settlement - Class Members vs. Yahoo! by Sandra
    Pavelik.  For the convenience of the Court, these objections are appended to the
24  accompanying declaration of Joshua D. Snyder as Exhibits 1 through 5.  An
25  objection from Dennis Barba has also been received by counsel, which is Exhibit 6
    to the Snyder Declaration.  The Clerk's Office advised counsel that it has not
26  received Mr. Barba's objection as of the date of this filing.

27

28

1    Most of the objections make the same arguments, e.g., inadequate
2    compensation, high attorneys' fees and plaintiffs' service awards, and the
3    limitation of the cash payments to Class Members that went out of business. We
4    address the common objections in Section II of this brief, except the fee-based
5    objections, which we address in Plaintiffs' fee petition. In Section III, we address
6    each individual objection.

7    The objections ignore or mischaracterize the substantial benefits of the
8    Settlement to the Class. As established in Plaintiffs' memorandum in support of
9    final settlement approval, the Settlement affords Class Members complete
10   prospective relief. Yahoo! has agreed to revamp its search advertising platform so
11   that Class Members can prevent their ads from appearing in the Internet locations
12   Plaintiffs challenged in this litigation. This prospective relief affords full relief to
13   the Class going forward, and comes at a considerable cost to Yahoo!. In addition,
14   Yahoo! will make enhanced disclosures on its website about where Class
15   Members' ads could appear, and expand its click investigation request tool so that
16   anyone can alert Yahoo! to the fact that Yahoo! ads have been observed on
17   spyware and other Internet back alleys.

18   The objections overlook the value of these benefits to the Class, and ignore
19   the fact that the relief fully resolves the claims alleged on a going-forward basis.
20   As for the consideration provided to Class Members that are unable to benefit from
21   such forward-looking relief, the cash payment is adequate, and was properly
22   limited to Class Members that went out of business, for the reasons set forth below
23   in Section II.B. Nor do the objections fairly consider: (i) the substantial amount of
24   time Plaintiffs' counsel spent prosecuting the litigation on behalf of the Class; (ii)
25   the fact that Class Members were free to opt out to pursue their own individual
26   claims; or (iii) the fact that settlements are compromises that rarely achieve the
27   same recovery as a litigated judgment through trial, post-trial and appeal.

28   For the reasons discussed below, the objections should be overruled.

## II.   THE COMMON OBJECTIONS ARE MERITLESS.

### A.   The Class Received Adequate Consideration.[2]

This common objection proceeds from the false premise that the Settlement fails to provide meaningful benefits to Class Members.  Bagne at 2 ("settlement benefits amount to mere policy changes on behalf of Yahoo!); Barba at 2 ("Class Members are not really getting anything of tangible value…"); LightTheNations.com at 4 (referring to the Ad Placement Option as a "minimal" benefit); Miles Technologies at 3 (referring to the Settlement as a mere "change in policies [that] will not benefit the persons on whose behalf the class action was filed"); Owen at 2 ("class members receive little if any benefit"); O.E. Express at 2 ("the relief offered is of incalculable and dubious value"); Pavelik at 2 (questioning whether the Settlement offers "substantial benefits"); Turkewitz at 4 (referring to the Ad Placement Option and enhanced disclosures as "largely illusory").  To the contrary, the Ad Placement Option, enhanced disclosures regarding the potential locations in which ads may appear, and the enhanced click investigation tool are all very meaningful class benefits.

The development and launch of the Ad Placement Option will provide comprehensive relief to the Class going forward at great cost to Yahoo!.  Sheedy-Owen Dec. ¶ 4[3] (explaining that the Settlement requires "significant technological changes" and "a significant dedication of resources to accomplish").  Particularly when coupled with the enhanced disclosures, the Ad Placement Option represents a fundamental shift in Yahoo!'s advertising business.  *Id.* ¶ 4.  Its anticipated launch has already been greeted favorably by Yahoo! advertisers, who have "indicated that such launch would be of significant benefit."  *Id.* ¶ 5.  Yahoo! (and

---

[2]   The objection that the class received inadequate compensation was raised by Bagne ¶ 2; Barba at 2-4; LightTheNations.com at 2-5; Miles Technologies at 3-4; O.E. Express at 2-3; Owen at 2-4; Pavelik at 1-2; Turkewitz at 2-4.

[3]   The declaration of Erin Sheedy-Owen is filed at Docket Entry No. 200.

1    Overture before it), has long marketed its pay-per-click ad business on the strength
2    of its broad distribution network and network of partners.  For the first time, as a
3    result of this litigation, Yahoo! is disclosing that its ad customers should be aware
4    that their ads could appear in certain unwanted Internet locations, and providing
5    the Ad Placement Option, which is a platform-wide change to Yahoo!'s
6    advertising system designed to allow advertisers to limit where their ads appear.
7          The click investigation request is another important component of this
8    package of benefits.  It will enable Class Members to alert Yahoo! to investigate
9    and respond to problems with certain of Yahoo!'s partners that may not be
10   following Yahoo!'s partnership terms and conditions.
11         Although impossible to put a dollar value to the Class on these benefits, it is
12   highly likely that both the Ad Placement Option and click investigation tool will
13   save Class Members very substantial advertising revenues in the future.  This will
14   be achieved by preventing pay-per-clicks on unwanted, low-quality traffic, and
15   assisting Yahoo in enforcing its partnership terms and conditions and parting
16   company with low-quality partners.
17         Several objectors suggest that the Ad Placement Option would have been
18   developed and launched as a result of a business decision, even in the absence of
19   this litigation.  Barba at 1 ("It is obvious that Yahoo! decided that it would make
20   certain 'minor ministerial changes' to the way it was doing business (which it may
21   or may not have been planning to do even before this lawsuit was filed)….");
22   Bagne at 2 (stating that the settlement benefits "may or may not have occurred as a
23   result of this litigation"); Turkewitz at 3 (asserting that the enhanced disclosures
24   and Ad Placement Option embody a "business decision" rather than relief to the
25   Class).  Such speculation is false.  *See* Sheedy-Owen Dec. ¶¶ 2-3 ("Advertisers
26   were not provided tools to limit the distribution of their advertisement to sites
27   owned and operated by Yahoo!, or other premium sites.  While Yahoo!'s
28   competitors offered such a feature, Yahoo! made a business choice not to change
     its Sponsored Search product to offer advertisers a distribution control tool."); *see*

4

1 | *also* Notice § VI.A ("As a result of the Action, Yahoo! has agreed to develop and
2 | offer a new ad placement option.").
3 |     These objections also fail to address the reality of what took place in the
4 | marketplace, i.e., that prior to the Settlement, Yahoo!'s Sponsored Search product
5 | did not provide advertisers the ability to control where their ads would appear on
6 | the Internet. Sheedy-Owen Dec. ¶ 3. Further, "[w]hile Yahoo!'s competitors have
7 | offered such a feature, Yahoo! made a business choice not to change its Sponsored
8 | Search product to offer advertisers a distribution control tool" like the Ad
9 | Placement Option. *Id.* ¶ 3. It was only because of this litigation that Yahoo! has
10 | agreed to launch and develop such a feature, which requires "fundamental
11 | modifications" to Yahoo!'s key pay-per-click advertising product, Sponsored
12 | Search. *Id.* ¶ 4.
13 |     The objectors focus on the fact that this relief is structural as opposed to
14 | cash. However, it is recognized that structural, going-forward relief is an
15 | appropriate method of settling class actions. *See, e.g., Bell Atl. Corp. v. Bolger*, 2
16 | F.3d 1304, 1311 (3d Cir. 1993) (affirming settlement involving structural changes
17 | in corporate governance); *Shaw v. Toshiba Am. Info. Sys.,* 91 F. Supp. 2d 942, 960-
18 | 61 (E.D. Tex. 2000) (approving a settlement that included a software patch and
19 | hardware fix as prospective relief as part of a multi-faceted settlement).
20 |     Such relief is particularly appropriate in a case such as this, which involves a
21 | cutting edge business model (Internet search advertising) and very little law and
22 | real-life precedent to calculate actual damages. This is a case in which Plaintiffs
23 | believe they have a strong case on liability but would have met significant
24 | challenges to proving damages. Boni Dec. ¶ 12.
25 |     The objectors also fail to acknowledge that the proper analysis used in Ninth
26 | Circuit courts includes balancing the settlement benefits against the continuing
27 | risks of litigation. *See* Plaintiffs' Memorandum of Points and Authorities in
28 | Support of Motion for Final Approval at 19-23. By the time the Settlement was
    reached, the parties had prosecuted the case for over three years and were highly

informed as to its strengths and weaknesses.  While Plaintiffs believe they have a
meritorious case, the litigation presents real risks, as we explain in the final
approval brief at 19-23.  Thus, contrary to the unsupported claims of the objectors,
the forward-looking benefits provide an excellent result for the Class.  In fact, they
provide full relief.[4]

**B.  The Cash Payment is Adequate, and Limiting it to Yahoo!
Customers That Went Out of Business is Fair[5]**

A $20.00 cash payment is available to eligible Class Members who are
unable to avail themselves of the primary, going-forward settlement benefits (i.e.,
because they are out of business and thus do not need to advertise).  Such relief is
fair and adequate consideration for the release of claims by Class Members that
cannot benefit from the structural, going-forward relief.  Moreover, there is
nothing improper or unfair about limiting such relief to Class Members that have
gone out of business.

**1.  The Cash Payment is Fair, Reasonable and Adequate.**

The purpose of the cash payment is to provide a benefit to those Class
Members who are unable to take advantage of the structural relief because they are

---

[4]     Finally, there is a bedrock consideration that the objectors fail to address:
any Class Member is free to opt out and retain its right to sue Yahoo!.  As
illustrated in the two sentence objection raised by objector Daniel Harris, few
things in life are easier than second-guessing someone else's litigation judgment
and business decisions.  Here, none of the objectors brought suit against Yahoo!, or
even complained of ill-treatment by Yahoo! for the reasons alleged in the
complaints filed in this action.  The Turkewitz Objection actually miscasts this
case as a click fraud case.  Without any analysis of the benefits against the myriad
substantial risks Plaintiffs faced in the action, the objections should be recognized
and rejected as scattergun potshots.

[5]     Objections concerning these issues were raised by Bagne ¶ 2; Barba at 4
LightTheNations.com at 4; Miles Technologies at 3; Owen at 3; O.E. Express at 2;
Pavelik at 2; Turkewitz at 1, 2, 4.

1  out of business.  Essentially, the amount was the result of an arm's length

2  negotiation, through separate mediations in front of retired Federal Judge Gary

3  Taylor, retired Federal Judge Dickran Tevrizian and retired Judge John Trotter,

4  respectively, to confer a benefit for former Yahoo! customers as consideration for

5  their release of claims.  Further, the amount of the monetary benefit reflects the

6  difficulties of individual damages proofs.  To the extent Class Members wish to

7  pursue individual damages claims against Yahoo!, they could have excluded

8  themselves from the Settlement and were able to bring suit.

9            **2.    Limiting the Cash Payment to Class Members That are Out of Business is Fair.**

10        Some objectors argue that it is unfair to limit such relief to Class Members

11  that have gone out of business.  The distinction merely reflects the fact that Class

12  Members that have gone out of business cannot avail themselves of the Ad

13  Placement Option or other structural relief.  Class Members that have stopped

14  advertising with Yahoo! but remain in business can benefit from the Settlement

15  just as easily as Class Members currently advertising with Yahoo!.

16        Certain objectors argue there are intra-class conflicts between present

17  customers, former customers still in business and former customers now out of

18  business, and that accordingly sub-classes were called for.  Subclasses, however,

19  are appropriate when there are such fundamental conflicts within a class that

20  separate representation is needed.  *See* Jerold S. Solovy, et al., 5-23 Moore's

21  Federal Practice - Civil § 23.86 (2009) (explaining that proposed classes should be

22  divided into subclasses when class members have such "adverse interests" or

23  "conflicts" that it should be divided into "homogenous subclasses with separate

24  representation").  Here, there are no intra-class conflicts, and the Settlement merely

25  reflects the fact that there are some differences in how Class Members are situated.

26  There is no requirement that all Class Members need to be identically situated.  *See*

27  *id.* ("[N]ot every distinction between class members creates the kinds of intraclass

28  conflicts that require subclassing.").

1   Because Class Members that have gone out of business cannot possibly

2   benefit from the prospective benefits of the Settlement, the parties agreed to

3   provide them with a cash payment in exchange for their release of claims.  Because

4   Class Members that are still in business can avail themselves of those benefits, the

5   parties concluded that it is fair and reasonable to limit eligibility for a cash

6   payment to those that are out of business.  This is akin to a routine allocation plan,

7   common in consumer and other class action settlements.  Plans of allocation of

8   class action settlement benefits do not require separate representation for every tier

9   in the plan.  *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 2009 U.S.

10  Dist. LEXIS 98291, at *45-46 (S.D.N.Y. Oct. 22, 2009) (approving plan of

11  allocation without requiring separate representation).

12      **C.    Objectors' Arguments Concerning the Microsoft**

13          **Transaction are Misplaced.**

14      Three Objectors argue that Class Members' interests are compromised by

15  the proposed Yahoo!-Microsoft-Transaction ("Microsoft Transaction"), in that

16  Microsoft or Yahoo! can simply "revert to their wrongful practices" after two

17  years.  LightTheNations.com at 5; O.E. Express at 2-3; Turkewitz at 2.  These

18  objections are misplaced.  First, the settlement agreement states:

19

20          Yahoo! represents and warrants that the definitive agreements for the
            Microsoft Transaction will contain language to the effect that

21          Microsoft will agree to implement ad distribution controls on the
            Microsoft paid search platform. If any Class Members are transitioned

22          to Microsoft's paid search platform earlier than two years from the

23          launch of the Ad Placement Option by Yahoo! on the Yahoo! Paid
            Search Services platform, and before Microsoft implements the ad

24          distribution controls on its paid search platform, Yahoo! will notify

25          those affected Class Members, by reasonable means of its choosing,
            that ad distribution controls are not available at the time of their

26          transition to the Microsoft paid search services platform.

27

28  Settlement Agreement ¶ 48.

8

1          Second, Plaintiffs protected the Class against the counter-intuitive

2    possibility that Microsoft would place ads through spyware, etc.  Plaintiffs

3    did so by limiting the release to conduct through the date the Court granted

4    preliminary approval of the Settlement Agreement (i.e., September 22,

5    2009).  *Id.* ¶ 48.  Thus, if Yahoo! or Microsoft were to engage in the

6    practices challenged in this litigation after such time, they would be exposed

7    to liability, as such future conduct does not fall within the scope of the

8    release.  *Id.*  Third, Microsoft's distaste for spyware, adware, and

9    typosquatting is well-known.  Spyware and adware harm the experience of

10   users of Microsoft's Windows operating system, making it particularly

11   important to Microsoft that such programs not exist and not benefit from

12   easy and large revenue sources.  Indeed, Microsoft has sued multiple

13   spyware vendors.  *See, e.g.*, *Microsoft Corp. v. Timothy P. Taylor,* King

14   County (Wash.) Superior Court, No. 06-2-36082-6-SEA.

15          Microsoft's antipathy to typosquatting is equally clear.  Microsoft has sued

16   typosquatters targeting its corporate marks.  *See, e.g., Microsoft Corp. v. Brown*,

17   06-cv-05247-R-MAN (W.D. Ca.); *Microsoft v. Cox*, 2:06-cv-00692-TS (D. Utah).

18   Microsoft Research has even distributed a program to find and identify

19   typosquatters, and Microsoft Research staff published lists of hundreds of

20   typosquatters.  *See* http://research.microsoft.com/en-

21   us/um/redmond/projects/strider/typo-patrol/.  These practices confirm that the

22   Class will likely be sufficiently protected from unwanted traffic on a Microsoft-

23   operated ad platform.  If not, as stated, no claims have been released against

24   Yahoo! or Microsoft for conduct occurring after the date on which preliminary

25   settlement approval was granted.

26

27

28

1    In addition, LightTheNations.com also contends that "Yahoo! can switch

2    customers to Microsoft although Microsoft is not subject to the ad distribution

3    controls during the transition period." LightTheNations.com at 4. As

4    demonstrated through the language quoted above, the Settlement Agreement

5    directly addresses this issue. Settlement Agreement ¶ 48. Thus, even in the event

6    there is a "gap" period where ad distribution controls are unavailable, Class

7    Members will receive notice. In this way, the interests of Class Members are

8    protected even if there are technological limitations to implementing ad

9    distribution controls during the switch to the Microsoft platform.

10          **D.    The Requested Counsel Fees And Incentive**

11                  **Awards Are Fair, Reasonable And Well-**
                    **Supported In The Record.**

12

13          The objections to Plaintiffs' requested attorneys' fees and Plaintiffs'

14   incentive awards are addressed in Plaintiffs' Memorandum of Points and

15   Authorities in Support of Motion For Award of Attorney Fees, Expenses and Class

16   Representative Service Awards at 20-23.

17   **III.   EACH INDIVIDUAL OBJECTION IS MERITLESS.**

18          **A.    Bagne**

19          The Bagne objection, which, along with Pavelik option, is one of only two

20   objections not filed by an attorney or drafted with the assistance of an attorney.

21   Aside from objections addressed in Section II, both objections actually illustrate

22   just how valuable the Ad Placement Option is to the Class. *See* Bagne ¶ 1

23   ("Yahoo! squandered my marketing budget by advertising my website on bulk

24   registration sites with little or no hope of being viewed by potential cases."). The

25   objection overlooks the fact that the Settlement now permits Mr. Bagne to end the

26   very practice that he has identified as egregious.

27

28

10

**B.     Barba**[6]

In addition to raising several of the objections discussed in Section II, Barba (with the assistance of an unnamed attorney) seeks discovery to test whether "Class Counsel might have compromised the absent Class Member's interests to obtain a $4.17 million fee." Barba at 3. This charge is frivolous and unsupported, hence Barba's request to embark on a fishing expedition should be rejected out of hand. Class Counsel and Yahoo! participated in four different mediations supervised by three different highly respected retired judges.[7]

---

[6]     As stated in footnote 1, *supra*, the Clerk's Office advised counsel that it has not received Mr. Barba's objection as of the date of this filing. If this objection has not been filed in accordance with the procedures set forth in section V.II of the Notice, which requires, *inter alia*, that an objection have a postmark dated December 14, 2009 or earlier in order to be timely, it should be disregarded by the Court.

[7]     Barba also seeks discovery "on Class Counsel's lodestar as a check upon the reasonableness of the requested fee award." Barba at 3. No such discovery is warranted, particularly in light of the detailed fee application and detailed supporting declarations and information filed concurrently therewith. Similarly, Barba's other grounds for taking discovery likewise fail to make the showing necessary for objectors to obtain discovery, which is particularly high when an objector – like Barba – seeks discovery into settlement negotiations. "Because settlement negotiations involve sensitive matters," courts have consistently applied the principle that "discovery [of settlement negotiations] is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive." *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) (citation omitted). There is no basis for undertaking such discovery.

11

## C.    Ford

Professional objector Randal S. Ford was also an objector in the *Checkmate* litigation. *Checkmate Strategic Group, Inc. v. Yahoo! Inc.*, 2:05-cv-04588-CAS-FMO (C.D. Cal.), Docket Entry No. 95.[8]

Ford objects to the Settlement on the ground that Class Members' objections and claims are invalid without a Yahoo! Client ID.  In fact, Plaintiffs have addressed and responded to all objectors, whether or not a Client ID is listed.  As for the claim form, there is nothing improper about requiring the Yahoo! Client ID as a means of ensuring the Class Member's eligibility to receive a cash payment, and to avoid the submission of fraudulent claims.  Even so, the Claims Administrator has accepted claim forms that do not provide a Yahoo! Client ID, as explained in paragraph 5 of the Declaration of Kahalla Thompson, filed concurrently herewith.

---

[8]    Federal courts have become "increasingly weary of professional objectors" such as those appearing here.  *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) (stating that such objectors "are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements – not to assess their merits on some principled basis – but in order to extort the parties"); *see also Shaw v. Toshiba Am. Info, Sys. Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) (decrying "professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests"); *Devlin v. Scardellitti*, 563 U.S. 1, 21-22 & n.5 (2002) (Scalia, J., dissenting) (observing the proclivity of intermeddlers to file "meritless" objections, citing *Shaw*, 91 F. Supp. 2d at 973-74 & n.18).

12

**D.    Harris**

Professional objector Daniel Harris is another *Checkmate* objector. *Checkmate Strategic Group, Inc. v. Yahoo! Inc.,* 2:05-cv-04588-CAS-FMO (C.D. Cal.), Docket Entry No. 81.  The Harris objection here states as follows, in its entirety:  "I, Daniel Harris, d/b/a The Law Offices of Daniel Harris… hereby objects [sic] to the proposed class action settlement and propsed [sic] fee award. The proposed settlement does not adequately compensate class members and class counsel did not adequately represent the class.  The proposed attorneys fees are also excessive."  Such a conclusory, non-substantive objection, made by a serial class action objector, does not merit a response.  For the reasons stated in Section II, this objection should be rejected.

**E.    LightTheNations.com**

LightTheNations.com filed its objection with ChaseAndSam.com and Digital Playroom, Inc., both of which were objectors in the *Checkmate* litigation. *Checkmate*, Docket Entry No. 128.  Their counsel, Mr. Miller, is also not new to objecting.  *White v. Experian Information Solutions, Inc.*, CV-05-1070-DOC (C.D. Cal.), Docket Entry No. 544.

In addition to objections already addressed in Section II, LightTheNations.com criticizes the Settlement on the ground that the "Ad Placement Option" will not be automatic, and that Class Members "will not be properly apprised of their rights and will not make the election" to use the Ad Placement Option.  LightTheNations.com at 4.  This objection overlooks the massive email and direct notice program, as well as the enhanced disclosures Yahoo! will provide about where ads may appear.  With such notice, Yahoo!'s customers can check its website for news concerning when the Ad Placement Option will be functional.  This objection should be overruled.

**F.     Miles Technologies**

The Miles Technologies objection has been brought for an improper purpose, as shown in the unsolicited emails attached as Exhs. D & E to the Boni Dec., which speak for themselves.  This is a shakedown, which the Court should condemn.  When invited to contact Class Counsel for the purpose of learning about the settlement and the underlying claims, this objector's counsel, in a one-sentence email, demanded $83,000 to withdraw its objection.  To this day, despite several invitations by Class Counsel to do so, the objecting counsel has not inquired as to the nature of Plaintiffs' claims.  Although objecting counsel explained in a subsequent email that the amount demanded represented the total amount of fees his client paid to Yahoo!, Plaintiffs' damages theory never alleged that 100% of the revenues Yahoo! received were ill-gotten.  Boni Dec. ¶ 21.  Further, this objector presents no objections other than those that have been dispensed with in Section II.  This objection should be denied.

**G.     O.E. Express**

Attorneys John W. Davis and Steven F. Helfand filed the O.E. Express objection; both are professional attorneys who also objected to the *Checkmate* settlement.  There, Mr. Davis filed an objection on behalf of Mr. Helfand. *Checkmate*, Docket Entry Nos. 112-14.  Both are repeat objectors. *Experian*, Docket Entry No. 528 (Helfand and Davis); *In re: Homestore.Com, Inc. Sec. Litig.*, Master File No. CV 01-11115-RSWL (C.D. Cal.), Docket Entry No. 309 (Davis on behalf of Helfand).

Along with making other arguments addressed above in Section II, these repeat objectors assert that the Court lacks sufficient information to evaluate the prospective relief to the Class (O.E. Express at 2-3).  In view of the fact that the prospective relief resolves plaintiffs' claims on a going-forward basis, has already been well-received by advertisers (Sheedy-Owen Dec. ¶ 5), and represents a fundamental shift in Yahoo!'s business (*see id.* ¶¶2-3), this argument should be rejected.

14

1    O.E. Express also contends that the Settlement includes an overbroad release
2  that is not restricted to claims "arising out of or relating to the underlying causes of
3  action in th[e] lawsuit." O.E. Express at 4. O.E. Express, however, relies on
4  paragraph 50 of the Settlement Agreement, which provides only that the failure to
5  follow the requirements of the claim form can result in the forfeiture of a cash
6  payment:

7         A Class Member failing to submit a valid, timely Claim Form, or a
8         Class Member deemed by Yahoo! not eligible to receive the [cash
         payment] based on the Class Member's submitted Claim Form, is
9         barred from making any further claims against Yahoo! for or during
10        the Class Period, including without limitation a claim that the Class
         Member was wrongfully denied the [cash payment].
11
12 Settlement Agreement ¶ 50(e). The governing release language, itself, however,
13 provides as follows:

14                        **RELEASES AND INJUNCTION**
15
16        51.    Upon the Effective Date and thereafter, the Class
         Representatives and Class Members shall, pursuant to the Final
17        Judgment, be deemed to have released and forever discharged, and
18        shall forever be enjoined from filing, commencing, prosecuting,
         intervening in, participating in, assisting or otherwise facilitating in
19        any Court or forum whatsoever any and all claims, causes of action,
20        demands, rights, liens, obligations, suits, appeals, sums of money,
         accounts, covenants, contracts, controversies, attorneys' fees and
21        costs, expenses, losses, damages, judgments, orders, promises
22        whatsoever, known or unknown, matured or unmatured, suspected or
         unsuspected, concealed or hidden, whether sounding in law, equity,
23        bankruptcy, or in any other forum, from January 1, 2000 through and
24        including the date the Court grants preliminary approval of this
         Agreement, ***that have been or could have been asserted in the***
25        ***Action***.
26

27

28

15

1  Settlement Agreement ¶ 51 (emphasis added); *see also* Notice § VII ("Released

2  Claims include any and all claims ... ***that have been or could have been asserted***

3  ***in the Action***.") (emphasis added).  Hence, not only is the release not overbroad, it

4  is narrowly circumscribed to those claims that could have been extinguished

5  pursuant to a final judgment under *res judicata*, no more and no less.  *See Harris v.*

6  *Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) ("Res judicata preclusion extends only

7  to claims that arise out of the same 'cause of action' asserted in the prior action").

8  This objection should be rejected.[9]

9      **H.    Owen**

10         In addition to objections already addressed in Section II., Owen criticizes the

11  Settlement on the ground that the Ad Placement Option, enhanced disclosures, and

12  click investigation request tool will be offered to both Class Members and non-

13  Class Members, i.e., all Yahoo! pay-per-click customers, even those advertisers

14  who opt out of the Settlement.  Owen at 3.  It is not a valid objection, however, that

15  this litigation has caused Yahoo! to make fundamental changes to its pay-per-click

16  advertising business that ameliorate the very allegations of wrongdoing asserted in

17  the complaints.  *See* Sheedy-Owen Decl. ¶ 4 (explaining that Yahoo!'s

18  development of the Ad Placement Option "requires fundamental modifications to

19  Yahoo!'s Sponsored Search product").  Further, Owen's argument suggests that the

20  Settlement benefits should not be made available to non-Class Members.  Owen

21  provides no authority for the proposition that this is an improper remedy in class

22  action settlement, as there is none.  Given the large size of the Class, making the Ad

23  Placement Option, disclosures and click investigation tool available only to Class

24  Members would invariably impose unnecessary administrative burdens and

25  _____

26  [9]      O.E. Express's citation to *Bloyed v. General Motors Corp.*, 881 S.W.2d 422,
    435 (Tex. App. 1994) (O.E. Express at 2) provides no support to any of his

27  arguments, as it is simply not factually on point.  *Bloyed* was a coupon settlement
    where class members received a $1,000 certificate toward the purchase of a new

28  vehicle from the defendant.  881 S.W.2d at 427.

1   inconvenience, as well as questionable and counter-production discriminatory

2   treatment among Yahoo!'s present and prospective ad customers.

3   **I.    Pavelik**

4       Pavelik, like Bagne, actually underscores the value of the Settlement to

5   Class Members. *See* Pavelik at 1 ("The allegations were serious and I was grateful

6   that someone had noticed these irregularities and had raised concerns which were in

7   the interests of fellow Class members."). Pavelik's objection appears to suggest

8   that only monetary relief would be a fair resolution of this litigation. *Id*. at 2. For

9   the reasons discussed above (at 3-6), this objection is unpersuasive.

10  **J.    Turkewitz**

11      The Turkewitz objection was filed by the "Center for Class Action Fairness"

12  ("Center"), a professional objector to class action settlements. *See*

13  *http://centerforclassactionfairness.blogspot.com/* (blog of the Center for Class

14  Action Fairness discussing three objections it filed in the month of December 2009

15  alone).

16      The Center mischaracterizes this case as a "click fraud" case, even though it

17  objected to the *Checkmate* settlement, a true click fraud case that released all of the

18  same Class Members' click fraud related claims against Yahoo!. Turkewitz

19  Declaration ¶¶ 6 ("I suspected click fraud"); 9 ("I was … hopeful that my click-

20  fraud concerns would be addressed"); 16 (referring to companies "that were injured

21  by the click fraud"). As the Court knows, this litigation does not concern click

22  fraud. This professional objector should pay closer attention to the actual terms of

23  the settlements to which it indiscriminately objects. The objection should be

24  overruled.

25

26

27

28

17

1 | **IV. CONCLUSION**

2      For the reasons set forth herein, Plaintiffs respectfully request that the Court

3 overrule the objections.

4                       Respectfully submitted,

5

6 Dated:  December 22, 2009

7                              _____/s/_____

8 Michael J. Boni
Joshua D. Snyder

9 **BONI & ZACK LLC**
15 St. Asaphs Road

10 Bala Cynwyd, PA 19004

11 (610) 822-0200

12 Michael D. Donovan

13 **DONOVAN SEARLES, LLC**

14 1845 Walnut Street, Suite 1100
Philadelphia, PA 19103

15 (215) 732-6067

16

17 **Co-Lead Counsel for Plaintiffs**

18 Paul R. Kiesel

19 **KIESEL, BOUCHER & LARSON**
8648 Wilshire Blvd.

20 Beverly Hills, CA 90211

21 (310) 854-4444

22 **Liaison Counsel for Plaintiffs**

23

24

25

26

27

28

18