THEODORE H. FRANK (SBN 196332)
       tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 23-6
Washington, DC 20036
(703) 203-3848

*Attorney for Objector Eric Turkewitz*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re:<br><br>  Yahoo! Litigation | Case No. CV06-2737 CAS (FMOx)<br><br>**PUTATIVE CLASS ACTION**<br><br>**OPPOSITION TO MOTIONS FOR FINAL APPROVAL AND FOR ATTORNEYS' FEES**<br><br>Judge:        Honorable Christina A. Snyder<br>Date:         January 11, 2009<br>Time:        10:00 a.m.<br>Courtroom: 5 |

### SUMMARY OF ARGUMENT

Plaintiffs seek court approval of a settlement that provides the class representatives and their attorneys $4.3 million while the vast majority of class members get nothing. Former Yahoo! customers do not even receive prospective relief unless they give Yahoo! their business—a benefit to Yahoo!, rather than the class.  Plaintiffs engage in hand-waving to distract the Court from meritorious objections, but their arguments are contradicted by the facts and law.

*First*, while plaintiffs want to claim credit for Yahoo!'s ad distribution controls, they failed to provide evidence that Yahoo!'s decision was caused by the litigation, and there is substantial evidence that this is a market-driven decision for Yahoo!'s benefit, rather than the benefit of the class.

*Second*, plaintiffs failed to refute the fact that vast swaths of the class will receive neither retrospective nor prospective relief.

*Third*, plaintiffs' attempt to discredit valid objections with *ad hominem* attacks and equivocation about common descriptions of the allegations at the center of the case are meritless.

The settlement, designed entirely for the benefit of Yahoo! and the attorneys at the expense of the class, and in disregard of class counsel's fiduciary duty to the class under Rule 23, cannot be approved.

### I.   Plaintiffs' Arguments And Evidence Demonstrate That The Injunctive Relief Is Illusory.

The settlement provides that Yahoo! will develop a new product with ad distribution controls (with no restrictions on pricing) similar to those that Google and others already provide.  Plaintiffs argue that the "injunctive relief," despite simply permitting Yahoo! to compete with numerous competitors that already offer the same services, is actually "structural relief" as a result of the litigation, rather than a business decision that benefits Yahoo! by making its inferior service competitive.

Yahoo! customers have repeatedly requested for years that Yahoo! provide such an ad distribution control service.  Decl. of Erin Sheedy-Owen ¶ 3.  Though the settlement does not obligate Yahoo! to continue to provide ad distribution controls after the Microsoft Transaction, Settlement Agreement ¶ 49, Plaintiffs claim that the relief is not illusory because, they argue, Microsoft will continue to offer these ad distribution controls because it makes business sense for Microsoft to do so.  Dkt. No. 217 at 9.

The natural conclusion is that, just as Microsoft will offer ad distribution controls for business-related reasons, Yahoo! is also making this change for business-related reasons.  Indeed, though Plaintiffs assert otherwise, they provide no evidence to rebut this conclusion.

The Declaration of Erin Sheedy-Owen, which plaintiffs rely on exclusively to make their argument, contains remarkable negative pregnants.  While Ms. Sheedy-Owen says that Yahoo! *had not* previously developed ad distribution controls, she **never** says that Yahoo! ***would not*** develop ad distribution controls and **never** says that Yahoo! did not plan to develop those controls independent of the litigation.  Nor does Ms. Sheedy-Owen testify that the litigation ***caused*** Yahoo! to develop ad distribution controls, despite Plaintiffs' claim otherwise. *Compare* Dkt. No. 217 at 5 ("It was only because of this litigation") *with* Sheedy-Owen Decl. ¶ 4 (using the passive tense to say that "Yahoo! has agreed" to provide ad distribution controls).  The most natural conclusion is that the finely balanced language in the Declaration is designed to hide that this is a market-driven decision, implying otherwise without actually requiring the declarant to make a perjurious claim.

Because the burden of proof of demonstrating fairness is on the parties seeking settlement approval, *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003), the Court must find that the burden has not been carried. Plaintiffs cannot have it both ways: either the ad distribution controls are a litigation-driven decision, and the ability of Yahoo! and Microsoft to unilaterally withdraw the ad distribution control option makes the injunctive relief meaningless, or the ad distribution controls are a business-related decision, and the

plaintiffs cannot take credit for Yahoo! yielding to market pressure and agreeing to provide what its customers have long requested.

## II. Former Yahoo! Customers Receive No Benefit From The Settlement.

Mr. Turkewitz objected that former Yahoo! customers still in business receive no benefit from the settlement. Plaintiffs failed to show how this subclass benefits from the settlement. Instead, they simply assert that there is no subclass, even as a readily identifiable subset of the class is ineligible for retrospective relief and prospective relief.

## II. As The Class Notice Indicates, This Suit Is About A Type Of Click Fraud.

Plaintiffs denigrate Mr. Turkewitz's objection because his declaration uses the term "click fraud." Dkt. No. 217 at 17. Yet, Plaintiffs brought a lawsuit over a type of click fraud, and the settlement addresses a type of click fraud. Indeed, the settlement notice explicitly mentions a type of click fraud: "This release includes without limitation any and all claims concerning… clicks that result from self-targeting; untargeted or random placements within the Distribution Network; ads displayed on sites or pages that lack any bona fide content, or any content at all; or ads shown to Internet users who have not conducted a search or viewed bona fide content related to a Yahoo! pay-per-click text advertisement." Notice at 3. *See, e.g,* Peter Kang, "Google Faces Potential Pressure From Impression Fraud," *Forbes*, March 15, 2006 (calling "impression fraud" "a variation of click fraud").

Nothing in the notice states that the settlement does not apply to click fraud, and plaintiffs' request to this Court to disregard Mr. Turkewitz's objection because he uses a generic term for the grounds of the lawsuit has no basis in fact or law. *See also* Dkt. No. 36, Second Amended Complaint ¶ 50(d) (describing common questions of fact regarding click fraud without using the term "click fraud").

Plaintiffs' claim that the Center for Class Action Fairness or Mr. Turkewitz were involved in objections to the *Checkmate* settlement, Dkt. No. 217 at 17, are factual misrepresentations to the Court. Neither the Center nor Mr. Turkewitz had any

1    involvement in the *Checkmate* case; nor did Mr. Frank.  The Center did not even exist in

2    2006 when the *Checkmate* settlement was litigated.

3    **III.    Plaintiffs' "Professional Objector" Argument Is Baseless.**

4            Rather than address Mr. Turkewitz's objection, Plaintiffs attempt to belittle it by

5    protesting that Mr. Turkewitz's attorney is a "professional objector."  Dkt. No. 217 at 17.

6    This *ad hominem* attack is baseless on both the facts and the law, conflates attorney with

7    client, and provides no reason to ignore Mr. Turkewitz's objection.

8            **A.    Mr. Turkewitz Is The Objector, Not His Attorney.**

9            Plaintiffs do not dispute that Mr. Turkewitz is a member of the class aggrieved by a

10   settlement that grants millions of dollars to the putative class attorneys, but absolutely no

11   benefit to him.  Mr. Turkewitz makes his living as a plaintiffs' attorney, rather than as an

12   objector to class actions.  It is hardly unreasonable for Mr. Turkewitz to choose an

13   attorney with experience in class action settlement objections when he wishes to bring an

14   objection to a class action settlement—is he supposed to retain a divorce lawyer instead?

15   Plaintiffs have bizarrely denigrated this class member because he selected an attorney

16   knowledgeable in the law.

17           **B.    The Center For Class Action Fairness Is A Public Interest Law Firm.**

18           A number of "professional objectors" are for-profit attorneys that attempt to or

19   threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the

20   attorneys' fees; thus, some courts presume that the objector's legal arguments are not

21   made in good faith.  But this is not the business model of The Center for Class Action

22   Fairness.  *See* Exhibit 1, Declaration of Theodore H. Frank.

23           The Center for Class Action Fairness, founded by legal academic and attorney

24   Theodore H. Frank in 2009, is a non-profit public-interest law firm that represents

25   consumers *pro bono* as part of the 501(c)(3), DonorsTrust.  While the Center focuses on

26   bringing objections to unfair class action settlements, it makes no effort to engage in *quid*

27   *pro quo* settlements to extort attorneys, and has never settled an objection.  The Center

28   does not "indiscriminately" bring objections, but analyzes complaints from consumers

aggrieved by class action settlement notices to determine whether a settlement is objectionable under the law because it favors attorneys over class members. The Center's litigation on behalf of consumers has been favorably covered by *Forbes* magazine and the *National Law Journal*, among others.

The Center's president, Theodore H. Frank, is a graduate of the University of Chicago Law School, which he attended on a Public Service Scholarship. Mr. Frank is an elected member of the American Law Institute, and has written and spoken across the country about class action law and the principal-agent problems in class action settlements, including being quoted in the *New York Times*, *Wall Street Journal*, *Chicago Tribune*, and a number of legal journals on the subject.

There is no factual basis for disfavoring the Center's objections simply because it is a public-interest law firm that focuses on bringing *pro bono* objections to class-action settlements on behalf of consumers.

### C.    Nothing In The Law Disfavors "Professional Objectors."

While Plaintiffs use the term "professional objector" as an insult, academics recognize the importance of the role of objectors in class actions.

> [P]rofessional objectors to class action settlements are attorneys in good standing who utilize perfectly legal means to contest settlements, and have no criminal intent.
>
> In addition…there are institutional investors, public interest groups, individual attorneys, and others who make a bona fide attempt to improve the settlement.

Geoffrey P. Miller and Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 LAW AND CONTEMP. PROBS. 97, 121 n. 64. Under Fed. R. Civ. Proc. 23(e)(5), "[a]ny class member may object" to a settlement proposal; nothing in the Federal Rules disfavors classes of such objections based on the attorney who makes the objection.

**IV.    The Apathy Of The Class Does Not Translate Into Support For The Settlement.**

Plaintiffs contend that the small number of objections to the proposed settlement implies that the remaining class members support the settlement.  This is untrue; the parties have made no effort to poll a representative sample of the putative class members, and they have no basis to claim the class has reacted positively.

Yes, only a few class members wrote this court, and all opposed the settlement.  But why should class members want to jump through expensive procedural hoops to object?  The natural predominant response is apathy, because objectors—unless they can obtain *pro bono* counsel—must spend time and money to attempt to improve the settlement for tens of thousands of fellow class members with little potential gain for themselves.  .  Indeed, the entire purpose of class actions is to aggregate claims that would be uneconomical to bring individually.  "Acquiescence to a bad deal is something quite different than affirmative support."  *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

The absence or silence of objecting class members "does not relieve the judge of his duty and, in fact, adds to his responsibility."  *Norman v. McKee*, 290 F. Supp. 29, 32 (N.D. Cal. 1968) (denying approval of inadequate securities settlement), *aff'd* 431 F.2d 769 (9th Cir. 1970).  The settlement's proponents have the burden to show the proposed settlement is fundamentally fair, adequate, and reasonable.  *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  Putative Class Attorneys have simply not carried this burden, so final approval of settlement should be denied.

**VI.    Plaintiffs' Attorneys Have Not Rebutted The "Strong Presumption" Against Enhancements For Lodestar Awards.**

Plaintiffs' attorneys request a 1.3 multiplier enhancement to their lodestar award.  But they fail to provide the correct standard to the Court for evaluating such proposed enhancements.

Enhancement of attorneys' fees awards "*may be*" appropriate in "some cases of *exceptional* success." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (emphasis added). But the Supreme Court has never authorized the sweeping and routine enhancements that the plaintiffs suggest; certainly *Hensley* does not authorize an enhancement here, where the attorneys have obtained a miniscule fraction of the relief they originally sought.  A "strong presumption" exists that the unenhanced lodestar is the reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("*Delaware Valley*").

"Neither complexity nor novelty of issues… is an appropriate factor in determining whether to increase the basic fee award."  *Blum v. Stenson*, 465 U.S. 886, 899 (1984).

Quality of representation "generally is reflected in the reasonable hourly rate" and "*may* justify an upward adjustment *only* in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Id*. at 899 (emphasis added).  Absent this especially rare efficiency, "an upward adjustment for quality of representation is a clear example of double counting." *Id.*

When an attorney first agrees to take on a representation, "he obligates himself to *perform to the best of his ability* [*e.g*., quality of representation] and to *produce the best possible results* [*e.g*., results obtained] commensurate with his skill and his client's interests." *Delaware Valley*, 478 U.S. at 565. (emphasis and brackets added). Consequently, the accounting for these factors in the lodestar calculation of the reasonable number of hours multiplied by a reasonable hourly rate "adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance." *Id*. at 565-66. To enhance the fee for overall quality of performance and, by extension, results obtained risks the "danger of 'double counting.'" *Id*. at 566.

Nor is the contingent risk of loss reason to enhance a lodestar.  Any risk of loss is the product of two factors: "(1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits."  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  The first factor "should play no part in the calculation of the award" because otherwise there always would be risks affecting the lodestar, and the lodestar consequently could never be the final calculation. *Id*. at 563. Such a result would contradict the "strong presumption" that the lodestar is the proper fee award. *Id*. at 562 (citing *Delaware Valley*, 478 U.S. at 565). With respect to the second factor, the difficulty of establishing the merits of a case is generally already included in the lodestar, either in the higher hourly rate of an attorney "skilled and experienced enough" or in the number of hours expended.  *Id*.  Thus, an enhancement for contingency "would likely duplicate in substantial part factors already subsumed in the lodestar." *Id*.  In short, neither the "relative merits of the claim" nor "the difficulty of establishing those merits" should serve as the basis for multiplying a fee award, thus "no contingency enhancement whatever is compatible with the feeshifting statutes at issue." *Id*. at 562-63, 565.

While the Ninth Circuit has held that *Dague* does not apply to common fund cases, *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1301 (9th Cir. 1994), the Court cannot find both that this is a common-fund case and that the settlement is fair. If the fee award did come from a common fund, it would run afoul of the Ninth Circuit's command that it is inappropriate in a class action settlement for the fee award to exceed more than 25% of the common fund.  *Torrisi v. Tucson Elec. Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (25% benchmark in common fund settlement).  *Cf. also Blum v. Stenson,* 465 U.S. 886, 889 n. 16 (1984) ("under the 'common fund doctrine,' [a] reasonable fee is based on a percentage of the fund bestowed on the class" [rather than on the lodestar]).

Moreover, as plaintiffs themselves argue, this is not a common-fund case: the plaintiffs have gerrymandered the settlement so that any reduction in attorneys' fees benefits Yahoo!, rather than the class, as in a typical common-fund case.  Plaintiffs make the absurd claim that this is somehow a ***benefit*** to the class, even though it has

unambiguously made the class worse off: in a common fund settlement, the district court may use its discretion to reduce fees requested by plaintiffs' counsel.  When fees are reduced, the class benefits from the surplus.  Under this settlement, should the Court award less than the $4.27 million that defendant Yahoo! has already agreed to pay, the only beneficiary is Yahoo!

The Court should not credit the plaintiffs' legal fiction, as it runs afoul of the fiduciary duty of class counsel to the entire class, under Rule 23(g)(4) to "fairly and adequately represent the interests of the class."  "Severable" attorneys' fees should be treated as bargained recovery from Yahoo! that parties have earmarked exclusively for the benefit of plaintiffs' counsel.

Therefore the agreed attorneys' fees must be scrutinized when evaluating whether the settlement is fair, reasonable, and adequate.  "There is no exception in Rule 23(e) for fee provisions contained in proposed class action settlement agreements.  Thus, to avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  Provisions for attorneys' fees are contained in the settlement agreement, so this Court has a responsibility to review them rather than "sever" these disproportionate fees from consideration.  There is good reason for this: "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Id.* at 964.

"That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award."  *Id.*  A "defendant is interested only in disposing of the total claim asserted against it."  *Id.*  "The rationale behind the percentage of recovery method also applies in situations where, although the parties claim that the fee and settlement are independent, they actually come from the same source."  *In re General*

*Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820-21 (3rd Cir. 1995).  "[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."  *Id.* at 821.

"[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal." *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996). This court should evaluate these supposedly separate payments as if they were part of a functionally-identical common fund recovery. "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees" then "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." *Manual for Complex Litigation* (4th ed. 2008), § 21.71, p. 525.  The attorneys' fees may be measured against this total fund to determine whether the allocation between attorneys and the class is reasonable. *See id.*

## CONCLUSION

Though Yahoo! is making about $4.3 million available to settle this case, the Putative Class Attorneys are asking that virtually all of it be provided to them.  As such, the settlement is not fair, not adequate, and not reasonable under Rule 23(e), and the breach of fiduciary duty of the attorneys to their putative clients further violates Rule 23(a)(4).  The Court has an affirmative responsibility to reject this settlement, and it would be an abuse of discretion to do otherwise.

Dated: January 5, 2010

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank

Attorney for Objector Eric Turkewitz

PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois.  I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On January 5, 2010, I served the attached:

OPPOSITION TO MOTIONS FOR FINAL APPROVAL AND FOR ATTORNEYS' FEES

_X_   By First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

| | |
|---|---|
| Michael J. Boni<br>Joshua D. Snyder<br>Boni and Zack LLC<br>15 St Asaphs Road<br>Bala Cynwyd , PA 19004 | Michael D. Donovan<br>Donovan Searles<br>1845 Walnut Street Suite 1100<br>Philadelphia , PA 19103 |
| Alexander Bagne<br>3286 Stockholm Road<br>Shaker Heights, OH 44120 | Larry W. McFarland<br>Dennis L. Wilson<br>Keats McFarland and Wilson<br>9720 Wilshire Boulevard<br>Penthouse Suite<br>Beverly Hills , CA 90212 |
| Steven F. Helfand, Esquire<br>HELFAND LAW OFFICES<br>582 Market Street, Suite 1400<br>San Francisco, CA 94101 | John William Davis, Esquire<br>LAW OFFICE OF JOHN W. DAVIS<br>501 W. Broadway, Suite 800<br>San Diego, CA 92101 |
| Daniel D. Haggerty, Esquire<br>WEIR & PARTNERS LLP<br>The Widener Building<br>1339 Chestnut Street Fifth Floor<br>Philadelphia, PA 19107 | Daniel Harris, Esquire<br>THE LAW OFFICES OF DANIEL HARRIS<br>150 N. Wacker Drive, Suite 3000<br>Chicago, IL 60606 |
| Randal S. Ford, Esquire<br>P.O. Box 20468<br>Tuscaloosa, AL 35402 | Dennis Barba<br>8699 Chase Drive<br>Chagrin Falls, OH 44023 |

| Barbara Mandell, Esquire<br>MANDELL & ASSOCIATES PC<br>6303 Owensmouth Ave., 10th FL<br>Woodland Hills, CA 91367 | Steve A. Miller, Esquire<br>STEVE A. MILLER, PC<br>1625 Larimer Street, No. 2905<br>Denver, CO 80202 |
|---|---|
| James Owen, Esquire<br>102 Guadalupe<br>Athens, TX 75751 | Sandra Pavelik<br>P.O. Box 54<br>Katamatite, Victoria 3649<br>Australia |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 5, 2010.

/s/ M. Frank Bednarz
M.Frank Bednarz